## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Fiskars Finland Oy Ab, and Fiskars Brands Inc., | |
| Plaintiffs, | |
| v. | Case No. 3:22-cv-00540-jdp |
| Woodland Tools Inc., Lumino, Inc., Ross Gundlach, Vance Koch, and Stephanie Cota, | JURY TRIAL DEMANDED |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiffs Fiskars Finland Oy Ab and Fiskars Brands Inc. (collectively, "Fiskars"), by and through their attorneys, Quarles & Brady, LLP, allege as follows for their First Amended Complaint against Defendants Woodland Tools Inc., Lumino, Inc., Ross Gundlach, Vance Koch, and Stephanie Cota:

### NATURE OF THE ACTION

1. This is an action at law and in equity for trade secret misappropriation, breach of contract, tortious interference, breach of duty, false advertising, and patent infringement arising under the laws of the United States, the State of Wisconsin, and the common law.   Fiskars is one of the oldest companies in the world and a leading manufacturer of durable consumer products, including gardening tools.   In spring of 2022, Fiskars noticed newcomer Woodland Tools, Inc. ("Woodland Tools") and, despite being new, Woodland Tools was able to place its garden tool products in large retail chains.  Upon investigation, however, Fiskars learned that Woodland Tools' success was not due to innovation or ingenuity, but instead due to Woodland Tools taking

advantage of Fiskars' prior success, innovation, and business practice.  Formed by a former Fiskars employee, Woodland Tools actively recruited Fiskars employees in order to acquire the knowledge and information they possessed related to Fiskars' business practices, confidential information, and trade secrets.  Woodland Tools used this information to gain an unfair competitive advantage, improperly exploiting Fiskars' success. In addition, Woodland Tools deliberately copied Fiskars' product designs and marketing strategy despite representing to consumers that it was responsible for its designs.

## THE PARTIES

2.      Fiskars Finland Oy Ab is a Finnish Joint Stock Company with its principal place of business located at Keilaniementie 10, P.O. Box 91, FI-02151 Espoo, Finland.

3.      Fiskars Brands Inc. is a Wisconsin corporation with its principal place of business located at 7800 Discovery Drive, Middleton, Wisconsin 53562.

4.      Woodland Tools Inc. is a Wisconsin corporation that, on information and belief, maintains its principal place of business at 709 Post Road, Madison, Wisconsin 53713. It was organized on May 15, 2020.

5.      Lumino, Inc. is a Wisconsin corporation with its principal place of business located at 713 Post Road, Madison, Wisconsin 53713.

6.      Ross Gundlach is a Wisconsin resident who resides at 17 Yarrow Circle, Madison, WI 53719.

7.      Vance Koch is a Wisconsin resident who resides at 9802 Sandhill Road, Middleton, WI 53562.

8.      Stephanie Cota is a Wisconsin resident who resides at 4309 Yuma Drive, Madison, WI 53711.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (federal question) as Fiskars' Complaint alleges claims related to the infringement of Fiskars' patents, Lanham Act, and Defend Trade Secrets Act, 18 U.S.C. § 1836, and 28 U.S.C. § 1367(a) (supplemental jurisdiction) in that Fiskars' other claims are so related to Fiskars' patent infringement claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Woodland Tools because Woodland Tools conducts business in the State of Wisconsin and within the Western District of Wisconsin. Woodland Tools is incorporated in Wisconsin, has its principal place of business in the Western District of Wisconsin and therefore has substantial and continuous ties with this District, and/or has committed acts of patent infringement in this District.  Woodland Tools makes, imports, sells, offers to sell, and/or induces the use and/or sale of various infringing products, directly or through intermediaries, in or into Wisconsin and this judicial District, thereby causing injury and damages in Wisconsin and this judicial District.

11.     This Court has personal jurisdiction over Lumino because Lumino conducts business in the State of Wisconsin and within the Western District of Wisconsin.  Lumino is incorporated in Wisconsin, has its principal place of business in the Western District of Wisconsin and therefore has substantial and continuous ties with this judicial District.

12.     This Court has personal jurisdiction over Messrs. Gundlach and Koch and Ms. Cota because all three defendants reside in this judicial District.

13.     Venue is proper in this district under 28 U.S.C. § 1391 and 28 U.S.C. § 1400 in that all Defendants reside and/or have established places of business in this District and/or are

incorporated in the State of Wisconsin.  Venue is also proper in this district under 28 U.S.C.

§ 1391(b)(2) in that a substantial part of the events that gave rise to Fiskars' claims occurred in

this district.

## ALLEGATIONS COMMON TO ALL CLAIMS

14.     As one of the oldest companies in the world, tracing its origins to 1649, Fiskars

has been and continues to be a leading manufacturer of a variety of durable consumer products

for nearly 375 years.  In the early years, Fiskars made nails, wire, hoes, and metal-reinforced

wheels from wrought iron.  In the nineteenth century, products expanded to include knives,

forks, and scissors.  By the early twentieth century, gardening tools were introduced and

ergonomic designs were incorporated into products.  The company's iconic orange-handled

ergonomic scissors are perhaps the best-known product, having sold over a billion units.

15.     Today, Fiskars is one of the largest hand powered gardening tool manufacturers

with products available in more than 100 countries and is among Finland's most valued brands.

Fiskars' gardening tools are often rated as best picks by consumer review organizations and

Fiskars' garden shears are currently the best seller for that product type on Amazon.  In addition,

Fiskars has held the top spot as Finland's most valued brand in Taloustutkimus' annual survey

for the past four years.

16.     In spring 2022, Fiskars became aware of a new competitor that seemingly came

out of nowhere: Woodland Tools. Despite its status as a newcomer in the garden tools market,

Woodland Tools was suddenly appearing on the shelves of major retailers like Blain's Farm &

Fleet. Indeed, Fiskars employees viewed and purchased Woodland Tools products in a store

prior to the date of Woodland Tools' press release announcing itself as a new company.

17.     Woodland Tools, however, achieved its sudden entrance illicitly. Its business model is simple: cheat and steal to falsely position itself as an innovative newcomer to the consumer hand tools market.  Woodland Tools was formed not to compete through innovation, but to copy Fiskars and free ride on Fiskars' investments in its products, customers, and business.  A former Fiskars employee organized Woodland Tools in May 2020, partnering up with a director and officer of defendant Lumino, Inc. ("Lumino").

18.     Then, while keeping and hiding behind their "day" jobs, these two individuals built Woodland Tools into a Fiskars' copycat. They recruited Fiskars' employees to work for Woodland Tools (under the guise of employing them at Lumino), stole Fiskars' confidential information through at least one of those employees, and willfully copied Fiskars product designs, photographic images, and go to market strategy even as they falsely told the public that Woodland Tools' "team of experts" were responsible for design.

## FACTUAL BACKGROUND

### Woodland Tools

19.     According to its website, Woodland Tools "was born when two guys met with a shared vision."

20.     Upon information and belief, these two people are Michael Kollman and Keegan Nesvacil, both of whom currently serve as Woodland Tools' two directors and officers.

21.     Prior to becoming a director and officer for Woodland Tools, Keegan Nesvacil worked at Fiskars between 2011 and 2018.

22.     While at Fiskars, Keegan Nesvacil was the National Account Manager for a Fiskars large account.

23.     As National Account Manager, Keegan Nesvacil gained a wealth of information about Fiskars including, but not limited to, its operations, its relationship, and its contacts with major retail partners and supply chain and logistical methods for meeting retail partner requirements.

### Lumino

24.     Lumino was organized in January 2001.

25.     Upon information and belief, Lumino imports and sells window treatments.

26.     Upon information and belief, Lumino operates as the United States distributor for Intercrown, a Chinese-based company that sells window treatments.

27.     The sign outside of Lumino's principal office refers to the office's tenant as "Intercrown/Lumino."

28.     Lumino and/or Intercrown's Vice President of Sales, Marketing, & Product Development is Michael Kollman.

29.     Upon information and belief, Michael Kollman is an officer and director of Lumino.

### Connections Between Woodland Tools and Lumino

30.     Michael Kollman is in high-level/director/officer positions at both Woodland Tools and Lumino.

31.     In addition, on information and belief, Woodland Tools and Lumino share office space.

32.     Kollman's Lumino is located at 713 Post Road, Madison, Wisconsin 53173.

33.     713 Post Road is Unit 4 of a 4-unit business condominium.

34.     Kollman's Woodland Tools is located at 709 Post Road, Madison, Wisconsin 53173.

35.     709 Post Road is Unit 3 of the same 4-unit business condominium that houses Lumino.

36.     Kollman, through a limited liability company named Kalena Ventures LLC, ultimately owns and/or controls the business condominium that houses 713 Post Road.

**Lumino/Woodland Tools' Hiring Of Ex-Fiskars Employees**

37.     In the last 18 months, Lumino has hired at least three ex-Fiskars employees: Ross Gundlach, Stephanie Cota, and Vance Koch (the "Ex-Fiskars Employees").

38.     As part of their employment with Fiskars, the Ex-Fiskars Employees all signed a Confidentiality and Non-Compete Agreement (the "Fiskars Non-Compete Agreement").

39.     Ross Gundlach executed his Fiskars Non-Compete Agreement on July 11, 2011. A true and correct copy of Ross Gundlach's Fiskars Non-Compete Agreement is attached as **Exhibit A**.

40.     Vance Koch executed his Fiskars Non-Compete Agreement on June 4, 2018.  A true and correct copy of Vance Koch's Fiskars Non-Compete Agreement is attached as **Exhibit B**.

41.     Stephanie Cota executed her Fiskars Non-Compete Agreement on September 25, 2013.  A true and correct copy of Stephanie Cota's Fiskars Non-Compete Agreement is attached as **Exhibit C**.

42.     As part of the Fiskars Non-Compete Agreement the Ex-Fiskars Employees agreed to a confidentiality provision which states their confidentiality obligations under Fiskars Non-Compete Agreement "[s]hall continue for two (2) years after the end of Employee's employment

with Fiskars Brands, except that with respect to any Confidential Information that constitutes a trade secret under applicable law, Employee shall not disclose or use the information for long as it remains a trade secret."  (Exhibits A–C, Fiskars Non-Compete Agreement, § 1.)

43.     In the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees also acknowledged that as part of their employment with Fiskars they would "acquire knowledge of and have access to trade secrets and other Confidential Information of Fiskars Brands, and its respective products and product lines."  (Exhibits A–C, Fiskars Non-Compete Agreement, § 3. 3.)

44.     As part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees agreed to the following:

> Employee shall not, for a period of two years following termination of his/her employment with Fiskars Brands for any reason, directly or indirectly, assist, render services to, participate in the affairs of, any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands within two (2) years prior to the termination of his/her employment, in any capacity which either (i) would utilize Employee's services with respect to such manufacture or sale, or (ii) would reasonably be expected to utilize any of the trade secrets or other Confidential Information referenced in this paragraph, with respect to such manufacture or sale, within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment.

(Exhibits A–C, Fiskars Non-Compete Agreement, § 3.)

45.     As part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees further agreed to the following:

> During this period of non-competition, Employee agrees not to directly or indirectly, (i) solicit, induce, or influence any customer, supplier, or any other person which has a business relationship with Fiskars Brands to reduce or discontinue such relationship with Fiskars Brands, or (ii) recruit, solicit, or otherwise influence any employee or agent of Fiskars Brands to change their employment relationship with Fiskars Brands.  Further recognizing the specialized nature of the of the business and the product lines of Fiskars Brands and the national

8

and international scope of competition, Employee acknowledges the geographic scope of his covenant not to compete to be reasonable.

(Exhibits A–C, Fiskars Non-Compete Agreement, § 3.)

46.    Finally, as part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees agreed that:

> Upon termination of employment, the Employee shall deliver to Fiskars Brands the original and all copies of all documents, records and property of any nature whatsoever which are in the Employee's possession or control and which are the property of Fiskars Brands or which relate to the business activities, facilities, or customers of Fiskars Brands, including any records, documents or property created by the Employee in said capacity.

(Exhibits A–C, Fiskars Non-Compete Agreement, § 4.)

47.    Additionally, in connection with her departure from Fiskars, Stephanie Cota also signed and executed a Separation Agreement and General Release (the "Cota Separation Agreement").

48.    As part of the Cota Separation Agreement, Stephanie Cota agreed to certain post-employment obligations.  Specifically, Stephanie Cota acknowledged and agreed that customers, business connections, customers lists and other similar sensitive information that was generated by Fiskars was done so at great expense to Fiskars and protected by Fiskars as confidential information.  (Cota Separation Agreement, § 8.)

49.    Stephanie Cota also agreed in the Cota Separation Agreement that for twenty-four months after her separation from Fiskars she would not directly or indirectly in any capacity use or disclose or cause to be disclosed such confidential information in a manner that could harm Fiskars' existing or potential business interests.  (Cota Separation Agreement, § 8.)

50.     The Ex-Fiskars Employees purported departures for Lumino did not suggest any breach of the Fiskars Noncompete Agreement or the Cota Separation Agreement because Lumino is a window treatment company.

51.     On information and belief, however, all three of the Ex-Fiskars Employees were recruited away from Fiskars to work not only publicly for Lumino, but secretly for Woodland Tools as well.

<u>Ross Gundlach</u>

52.     Ross Gundlach left his position as a Category Manager at Fiskars and purportedly joined Lumino in April 2021 as its Director of Business Analytics.

53.     As a Category Manager at Fiskars, Ross Gundlach was privy to sensitive and confidential information about Fiskars' customers and their data, pricelists, product offerings, product assortments, pricing, costs margins, and customer relationships.

<u>Vance Koch</u>

54.     Vance Koch worked under Ross Gundlach at Fiskars until Gundlach left Fiskars in April 2021.

55.     In September 2021, Vance Koch left Fiskars to rejoin Gundlach, his former boss, purportedly at Lumino.

56.     Like Gundlach, Vance Koch was privy to confidential and sensitive information such as customer lists, customer-related data, pricelists, product offerings, product assortments, product pricing, cost margins, and customer relationships as he worked under Ross Gundlach and was privy to such information in his role.

57.     As alleged below, shortly before leaving Fiskars, Vance Koch illicitly copied highly sensitive sales information and computer code that may have limited use to his purported

new employer Lumino—but was tremendously useful to his secret new employer, Woodland Tools.

<u>Stephanie Cota</u>

58.     Stephanie Cota left her position as Global Director, Business & Offering, at Fiskars and joined Lumino in February 2022 as a Director.

59.     As a Global Director, Business & Offering, Stephanie Cota was privy to sensitive and confidential Fiskars strategic, competitive, and customer information.

60.     Before leaving Fiskars, Stephanie Cota deliberately deleted virtually all February 2021-January 2022 sent email messages from her Fiskars email account. Notably, she did not delete any sent email messages before this period.

**Woodland Tools' Use of Lumino As A Shell Company
To Hire Ex-Fiskars Employees**

61.     As described above there is a pattern of Lumino hiring Ex-Fiskars Employees to purportedly work for Lumino.

62.     Upon information and belief, in actuality these Ex-Fiskars Employees also are working to the benefit of Woodland Tools even though they are not publicly listed as Woodland Tools' employees.

63.     Essentially, Woodland Tools is using Lumino to launder Ex-Fiskars Employees and misdirect any suspicions that the Ex-Fiskars employees are going to a competitor in violation of their separation agreements or cause concern at Fiskars.

64.     Upon information and belief, Woodland Tools, through Lumino, has used Ex-Fiskars Employees to, among other things:

        a.     Set up its manufacturing operations in Asia with the exact same factories
               Fiskars utilizes to manufacture its garden tools;

      b.      Leverage Fiskars developed relationships to approach Fiskars key customer account decision-makers in an effort to divert sales from Fiskars to Woodland Tools;

      c.      Utilize Fiskars trade secrets to gain a competitive advantage; and

      d.      Copy Fiskars' patented tools to offer near-identical garden products as Fiskars.

65.     Woodland Tools also employs a former Fiskars employee who was an inventor of Fiskars' patented herb snips design (Design Patent Number D720,969).

66.     Woodland Tools has a pattern of targeting former Fiskars' employees.

67.     Woodland Tools' use of Ex-Fiskars Employees and the information they possess to the benefit of Woodland Tools is evident by Woodland Tools' product offerings, its fast entry into the market, and the nature of the confidential information that one of the Ex-Fiskars' Employees illicitly copied and took with him to his new employment.

**Woodland Tools' Use Of Fiskars Trade Secrets Obtained By Vance Koch**

68.     On information and belief, Woodland Tools also took advantage of Fiskars' confidential and sensitive trade secret information that it obtained via Vance Koch.

69.     On or around September 7, 2021, September 13, 2021, and September 16, 2021 Vance Koch, while still a Fiskars employee, accessed Fiskars' confidential and sensitive point-of-sale ("POS") data and source code, and emailed this data and source code to his personal email address.

70.     Fiskars' POS data is a snapshot in time of the unit and dollar sales by item of Fiskars product that generally shows what Fiskars products are in high demand, how much of Fiskars products are being sold, and at what price those sales occurred.

71.     Fiskars' POS data is specific only to Fiskars' products and is information that Fiskars' treats as highly confidential and sensitive and has safeguards in place to restrict access to a need-to-know basis.

72.     Indeed, given the sensitive nature of this information, the POS data for a given retailer is only shared with the specific Fiskars' Sales Account Managers for that retailer and a small data analytics team.

73.     Vance Koch was a part of Fiskars' data analytics team, the team responsible for translating data from various customers/retailers into usable go to market strategy.

74.     Part of Vance Koch's job was to write code to download the POS data from each retailer into a usable format by Fiskars and its systems.

75.     As a result, although Fiskars only shares the POS data for a given retailer with those Fiskars employees associated with that retailer, Vance Koch had access to the POS data for all Fiskars retailers because he was tasked with creating code for all POS data uploaded at Fiskars.

76.     Fiskars' POS data would provide a competitor a significant competitive advantage because it would allow a competitor to know, among other things, the size of the market for a retailer, the operating margins for a given retailer, and information regarding which products perform strongest for a given retailer.

77.     Any competitor, not only direct competitors, whose product is sold in the same retailers as Fiskars would find this knowledge valuable.  Knowledge of Fiskars POS data, even for a small timeframe, would enable any competitor to obtain information on what products sell well, the speed at which they sell, their pricing, and where they sell well.

78.     If a direct competitor of Fiskars were to have access to this information it would provide a roadmap for trying to get into the very same retailer, knowing what sells well, what sells fast, what assortment of products to target, and how to price each product to underbid Fiskars to a particular retailer.

79.     Moreover, the cache of data that Vance Koch emailed himself included the Fiskars proprietary code to certain retail customers' vendor portals to make the downloading and use of the information on the Fiskars system easier and less time-consuming.

80.     By sending himself the proprietary Fiskars code, Vance Koch would be able to easily replicate it again elsewhere and use it to download POS data from those certain retail customers' portals for which the code was written.

81.     By not having to start fresh, Vance Koch, or a company using Vance Koch's stolen code would be at an advantage in at least development costs and time to get there.  It would also have a proven code that works for those certain retail customers.

82.     The code and POS data that Vance Koch sent to himself could have had limited use to Lumino, a window treatment company, and only where its customers overlap with Fiskars.

83.     The code and data, however, would have been extremely helpful and have much broader application to Woodland Tools.  In fact, 21 of 22 known Woodland Tools' customers overlap with Fiskars.

84.     On information and belief, Koch illicitly copied and sent himself the code and POS data for the benefit of Woodland Tools, and at Woodland Tools' direction.

**Woodland Tools' False Advertising**

85.     On Woodland Tools' website it represents that each of its products is "designed right here in the US:"

14

> Our no-nonsense approach to innovation blends a lifetime of practical know how with modern insights and manufacturing techniques to create products that are as efficient, versatile, and tough as you. Every Woodland Tool is designed right here in the US and Guaranteed Forever to work as long as you do.

Attached as **Exhibit D** is a true and correct screen capture of Woodland Tools' "About Us" page taken on September 13, 2022.

86.     Woodland Tools further clarifies on its website what it means by "designed in the USA:"

> **What do you mean by designed in the USA?**
> All Woodland Tools are designed in the USA by our team of experts and developed with ingenuity in mind at every step of the design and manufacturing process.

Attached as **Exhibit E** is a true and correct screen capture of Woodland Tools' "FAQ's" page taken on September 13, 2022.

87.     These representations, however, are false and/or misleading.

88.     For example, depicted below are two garden pruners, with the one on the right with the orange trim offered by Fiskars and the one on the left with the yellow trim offered by Woodland Tools.

15



89.     The products above are identical in design.

90.     Similarly, other product offerings by Woodland Tools are identical to those first offered by Fiskars, like another set of pruners below with the one on the right with the orange trim offered by Fiskars and the one on the left with the yellow trim offered by Woodland Tools.



91.     These designs are also identical.

92.     The reflection on the pivot point in these images is identical.

93.     Aside from the color, the above images are identical.

94.     Despite this, Woodland Tools touts on its website that "[e]very Woodland Tool is designed right here in the US."

95.     Woodland Tools' statement is false since these tools were designed by entities other than Woodland Tools.

96.     Woodland Tools also touts on its website that its tools are designed by its "team of experts and developed with ingenuity in mind at every step of the design and manufacturing process."

97.     This statement from Woodland Tools is also false.  As shown above, at least the products pictured existed years before Woodland Tools existed.

98.     Given that Woodland Tools' products incorporate designs identical to and created by others, Woodland Tools' representation that it has designed its tools is false.

**Woodland Tools' Infringement of Fiskars' Patents**

99.     In addition to the above, and staying with its pattern of copying, stealing, and lying to launch its brand, Woodland Tools has also copied a number of Fiskars' patented designs with current subsisting issued patents.

100.     Fiskars has many patents, both utility and design, to protect its designs and its innovation.

101.     Fiskars recognizes that minimalist designs are attractive to its customers and sets them apart from competitors.

102.     Relevant to its allegations against Defendants, Fiskars' is the owner of three design patents, United States Design Patent Numbers D720,969 (the "'969 Patent"), D684,828 (the "'828 Patent"), and D764,882 (the "'882 Patent"), and one utility patent, United States Patent Number 10,321,635 (the "'635 Patent," and, collectively with the '969 Patent, '828 Patent, and '882 Patent, the "Asserted Fiskars Patents").

103.     In design patents, solid lines are used to claim the patented features of the design, while broken or dashed lines are used to show what the rest of the product may look like.

104.     To determine infringement of a design patent, it is only necessary to consider the solid lines in the patent's claims. The broken lines do not count for infringement.

<u>The '969 Patent</u>

105.     Fiskars designed a unique look to a pair of herb snips.

106.     Fiskars received a design patent on its herb snips design.  On January 13, 2015, United States Design Patent No. D720,969, entitled "Cutting Tool," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '969 Patent is attached as **Exhibit F**.

107.     Fiskars Finland Oy Ab owns the entire right, title, and interest in the '969 Patent by assignment.

108.     The '969 Patent claims the ornamental design as shown and described in the patent.

<u>Woodland Tools Infringes the '969 Patent</u>

109.     Woodland Tools is engaged in the business of selling garden tool products to consumers, including herb snips, and is a competitor of Fiskars in the consumer market.

110.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

111.    After Fiskars was issued the '969 Patent, Woodland Tools began selling its Regular Duty Herb Snips, which is depicted below.



112.    Woodland Tools' infringing Regular Duty Herb Snips have adopted every aspect of the claimed design in Fiskars' '969 Patent and has an overall appearance that is confusingly similar and substantially the same, in view of the prior art and in the eyes of the ordinary observer:



**FIG. 3**



The '828 Patent

113.    Fiskars designed a unique look to a pair of loppers.

114.    Fiskars received a design patent on its lopper design.  On June 25, 2013, United States Design Patent No. D684,828, entitled "Cutting Tool," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '828 Patent is attached as **Exhibit G**.

115.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '828 Patent by assignment.

116.    The '828 Patent claims the ornamental design as shown and described in the patent.

Woodland Tools Infringes the '828 Patent

117.    Woodland Tools is engaged in the business of selling garden tool products to consumers, including loppers, and is a competitor of Fiskars in the consumer market.

118.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

119.    After Fiskars was issued the '828 Patent, Woodland Tools began selling its Super Duty Lopper, which is depicted below.



120.    Woodland Tools' infringing Super Duty Lopper has adopted every aspect of the claimed design in Fiskars' '828 Patent and has an overall appearance that is confusingly similar and substantially the same, in view of the prior art and in the eyes of the ordinary observer:



<u>The '882 Patent</u>

121.     Fiskars designed a unique pair of hedge shears.

122.     Fiskars received a design patent on its hedge shear design.  On August 30, 2016, United States Design Patent No. D764,882, entitled "Hedge Shears," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '882 Patent is attached as **Exhibit H**.

123.     Fiskars Finland Oy Ab owns the entire right, title, and interest in the '882 Patent by assignment.

124.     The '882 Patent claims the ornamental design as shown and described in the patent.

<u>Woodland Tools Infringes the '882 Patent</u>

125.     Woodland Tools is engaged in the business of selling garden tool products to consumers, including hedge shears, and is a competitor of Fiskars in the consumer market.

126.     Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

127.     After Fiskars was issued the '882 Patent, Woodland Tools began selling its Regular Duty Hedge Shear, which is depicted below.



128.    Woodland Tools' infringing Regular Duty Hedge Shear has adopted every aspect of the claimed design in Fiskars' '882 Patent and has an overall appearance that is confusingly similar and substantially the same, in view of the prior art and in the eyes of the ordinary observer:



FIG. 3

The '635 Patent

129.    Fiskars has also innovated heavily in the hand tools space and has a number of utility patents directed at hand tools.

130.    Fiskars received a utility patent on one such invention.  On June 18, 2019, United States Patent No. 10,321,635, entitled "Cutting Tool with Variable Pivot System," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '635 Patent is attached as **Exhibit I**.

131.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '635 Patent by assignment.

132.    The '635 Patent claims a hand operated cutting tool including a pivot system.

**Woodland Tools Infringes the '635 Patent**

133.    Woodland Tools is engaged in the business of selling garden tool products to consumers, and is a competitor of Fiskars in the consumer market.

134.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

135.    After Fiskars was issued the '635 Patent, Woodland began selling its Super Duty Bypass Pruners, which are depicted below.

136.    At a minimum, Woodland Tools' Super Duty Pruners meet every limitation in claim 1 of the '635 Patent.  Claim 1 of the '635 Patent recites:

>   A hand operated cutting tool, comprising:

>   a first handle rotatably coupled to a first cutting member, the first handle having a first set of projections; and

>   a second handle coupled to a second cutting member and movably coupled to the first handle, the second handle having a second set of projections;

>   wherein the handles are movable between a full open position and a full closed position, wherein a first region of movement is defined by the first and second sets of projections being at least partly engaged such that the first handle rotates relative to the first cutting member, and wherein a second region of movement is defined by the first and second sets of projections being disengaged.

137.    A claim chart showing Woodland Tools' infringement is attached as **Exhibit J**.

**Woodland's Knowledge Of Fiskars' Asserted Patents**

138.    On information and belief, Woodland Tools has actual knowledge of Fiskars' Asserted Patents through competitive analysis and through the hiring of ex-Fiskars employees who were knowledgeable about them.

139.    Woodland Tools' copying of Fiskars' patented designs, specifically, the Fiskars Asserted Patents, was and is willful.

25

140.    Failed attempts at design arounds do not avoid infringement and are evidence of willful infringement.

## CLAIMS

### COUNT I - Infringement of the '969 Patent
### (Against Defendant Woodland Tools)

141.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

142.    Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe the '969 Patent by making, using, selling, and offering for sale in the United States, or importing into the United States, herb snips that embody the design covered by the '969 Patent.

143.    Upon information and belief, Woodland Tools has profited from its infringement of the '969 Patent.

144.    Fiskars has sustained damages as a direct and proximate result of Woodland's infringement of the '969 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289 in an amount to be determined at trial.

145.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' patent rights.

### COUNT II - Infringement of the '828 Patent
### (Against Defendant Woodland Tools)

146.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

147.    Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe the '828 Patent by making, using, selling, and offering for sale in the United States, or importing into the United States, loppers that embody the design covered by the '828 Patent.

148.    Upon information and belief, Woodland Tools has profited from its infringement of the '828 Patent.

149.     Fiskars has sustained damages as a direct and proximate result of Woodland Tools'
infringement of the '828 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289
in an amount to be determined at trial.

150.     Upon information and belief, Woodland Tools' infringement has been intentional,
willful, and in reckless disregard of Fiskars' patent rights.

### COUNT III - Infringement of the '882 Patent
### (Against Defendant Woodland Tools)

151.     Fiskars incorporates by reference the allegations above as if fully set forth herein.

152.     Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe
the '882 Patent by making, using, selling, and offering for sale in the United States, or importing
into the United States, hedge shears that embody the design covered by the '882 Patent.

153.     Upon information and belief, Woodland Tools has profited from its infringement
of the '882 Patent.

154.     Fiskars has sustained damages as a direct and proximate result of Woodland Tools'
infringement of the '882 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289
in an amount to be determined at trial.

155.     Upon information and belief, Woodland Tools' infringement has been intentional,
willful, and in reckless disregard of Fiskars' patent rights.

### COUNT IV - Infringement of the '635 Patent
### (Against Defendant Woodland Tools)

156.     Fiskars incorporates by reference the allegations above as if fully set forth herein.

157.     Upon information and belief, Woodland Tools has been, and continues to be,
directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the

'635 Patent by making, selling, importing, and/or offering for sale within the United States at least the Woodland Tools Super Duty Bypass Pruners.

158.    A claim chart detailing Woodland Tools Super Duty Bypass Pruners infringes at least claim 1 of the '635 Patent is attached as **Exhibit J**.

159.    Woodland Tools' actions constitute infringement under 35 U.S.C. § 271(a).

160.    Additionally, or in the alternative, Woodland Tools has been, and continues to be, indirectly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '635 Patent by inducing third-party infringement of the '635 Patent.

161.    Third-party manufacturers are and continue to directly infringe the '635 Patent by manufacturing the Super Duty Bypass Pruners and exporting into the United States.

162.    Woodland Tools has intentionally induced others to infringe the '635 Patent by directing and contracting with third-parties to manufacture and export the Super Duty Bypass Pruners.  Woodland has induced such infringement with knowledge of the '635 Patent and disregard for the '635 Patent.

163.    Woodland Tools had and has actual knowledge of the '635 Patent as, upon information and belief, Woodland Tools tracks Fiskars patents and it is in contact with Ex-Fiskars Employees who are aware and knowledgeable of Fiskars supply chain and intellectual property.

164.    Woodland Tools' actions indicate an intent to actively induce infringement, and constitutes active inducement under 35 U.S.C. § 271(b).

165.    Additionally, or in the alternative, Woodland Tools has been, and continues to be, indirectly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '635 Patent by contributing to third-party infringement of the '635 Patent.

166.    Woodland Tools has contributed toward third-party infringement by providing third-party manufacturers with infringing designs and schematics to manufacture the infringing Super Duty Bypass Pruner.  Such third-party manufacturer(s) has made the infringing tool and exported it to the United States.

167.    Woodland Tools' actions constitute contributory infringement under 35 U.S.C. § 271(c).

168.    Woodland Tools' infringement of the '635 Patent has caused and continues to cause, damage to Fiskars in an amount to be proven at trial.

169.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' rights.

### COUNT V - Misappropriation of Trade Secrets, 18 U.S.C. § 1836
### (Against Defendants Woodland Tools, Lumino, and Koch)

170.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

171.    Fiskars POS data constitutes protectable trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) and such data is proprietary and confidential to Fiskars.

172.    Fiskars source code also constitutes protectable trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and such source code is proprietary and confidential to Fiskars.

173.    Fiskars has taken reasonable measures to protect and maintain the secrecy and confidentiality of its trade secrets.

174.    Fiskars' trade secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to Fiskars.

175.    Knowledge of the information would also confer a substantial economic benefit to Fiskars' competitors, including Woodland Tools.

176.    The circumstances of Koch's employment with Fiskars gave rise to fiduciary duties and obligations to maintain the secrecy of Fiskars' trade secrets and to strictly limit the use of such trade secrets to Fiskars' business activities and for Fiskars' exclusive benefit.

177.    Woodland Tools, Lumino, and Koch, through improper means and without authorization, either directly or indirectly misappropriated, misused, and/or disclosed Fiskars' trade secrets to and for their own benefit.

178.    Upon information and belief, Woodland Tools and Lumino have been systematically targeting and soliciting Fiskars employees to work for them, knowing that they possess specific knowledge of Fiskars' trade secrets and that such trade secrets would provide immediate benefit to Woodland Tools and Lumino.

179.    As a direct and proximate cause of Woodland Tools, Lumino, and Koch's deliberate, willful, and malicious misappropriation of Fiskars' trade secrets, Fiskars has sustained and will continue to sustain severe, immediate, and irreparable harm, damage, and injury to the value of its trade secrets and competitive advantage, which Fiskars has expended significant time, effort, and money to secure.

180.    Woodland Tools, Lumino, and Koch's misappropriation of Fiskars' trade secrets entitle Fiskars' to injunctive relief, damages, and attorneys' fees under 18 U.S.C. § 1836(b)(3).

### COUNT VI - Misappropriation of Trade Secrets, § 134.90 Wis. Stats. (Against Defendants Woodland Tools, Lumino, and Koch)

181.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

182.    Fiskars confidential, proprietary, and trade secret information related to its sales, customers, pricing structures, sales, and other information contained in its POS data are sufficiently secret to derive economic value for Fiskars.  This information is not generally known

to others who can obtain economic value from its disclosure or use, including Fiskars competitors like Woodland Tools.

183.    During his employment with Fiskars, Koch had access to Fiskars' trade secrets and other nonpublic confidential information that was of significant value to Fiskars.

184.    Fiskars has taken extensive efforts to maintain the secrecy and confidentiality of its trade secrets both within its internal operation and its business dealings, so that its competitors cannot obtain economic value from this information.  The value of its trade secrets to Fiskars' competitors, like Woodland Tools, is substantial.  The information cannot be easily acquired by individuals outside of Fiskars.

185.    Koch had an absolute obligation and duty to maintain the secrecy of Fiskars' trade secret information and to use that information solely for the purpose of supporting Fiskars' business.

186.    At the time Woodland Tools, Lumino, and Koch acquired Fiskars' trade secrets, either directly or indirectly, they knew or should have known that the trade secret information had been acquired through improper means and under circumstances giving rise to a duty to maintain the secrecy of the information and that the information was not to be used to Fiskars' detriment.

187.    Notwithstanding the foregoing, Woodland Tools, Lumino, and Koch have willfully and maliciously breached their duties to Fiskars and/or have willfully and maliciously misappropriated and will continue to misappropriate Fiskars' trade secret and confidential information that was acquired during Koch's employment with Fiskars.

188.    Woodland Tools, Lumino, and Koch's misappropriation and use of Fiskars' trade secrets for their own purposes and to their own benefit and to the detriment of Fiskars is intended to prejudice and hurt Fiskars and its business, which is in violation of § 134.90, Wis. Stats.

189.    The trade secrets, confidential, and proprietary information that Woodland Tools, Lumino, and Koch misappropriated and will continue to misappropriate include information related to Fiskars' sales, customers, pricing structures, financial performance, sales and analysis comparison, and competitive advantage in the industry.  The full extent of the misappropriation will be ascertained during discovery and ongoing forensic review.

190.    The trade secrets identified herein derive independent economic value from not being generally known to, and not readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use, and Fiskars engaged in reasonable efforts to maintain their secrecy.

191.    Woodland Tools, Lumino, and Koch have and will continue to use Fiskars' trade secrets and confidential information to compete directly with Fiskars.

192.    Because Woodland Tools, Lumino, and Koch are competing directly with Fiskars business, Fiskars has and will continue to be damaged by their misappropriation of its trade secrets and confidential information.

193.    Woodland Tools, Lumino, and Koch's conduct, as alleged, violates § 134.90, Wis. Stats., and is outrageous, egregious, malicious, intentional, willful and in reckless disregard of the rights of Fiskars and entitles Fiskars to punitive damages.

194.    Woodland Tools, Lumino, and Koch's misappropriation and continued misappropriation of Fiskars' trade secrets and confidential information has and will result in damage to Fiskars business and business interest, and has and will continue to result in their

unjust enrichment, and unless restrained, they will continue to be unjustly enriched to Fiskars'
prejudice and damage.

### COUNT VIII - False Advertising
### (Against Woodland Tools)

195.     Fiskars incorporates by reference the allegations above as if fully set forth herein.

196.     As outlined in part above, Woodland Tools made false and misleading statements in
commercial advertisements about at least the design and origins of the Woodland Tools Regular
Duty Bypass Pruner (with straight and angled handles). These statements misrepresent the nature,
characteristics, and/or qualities of the design and origins the Woodland Tools Regular Duty Bypass
Pruner (with straight and angled handles) and are expressly false, impliedly false, or both.

197.     The nature, characteristics, and qualities of the design and origins of the Woodland
Tools Regular Duty Bypass Pruner (with straight and angled handles) are material factors that impact
consumer purchasing decisions.

198.     Woodland Tools' false and misleading statements constitute false advertising in
violation of 15 U.S.C. § 1125(a).

199.     Woodland Tools has knowingly induced and/or caused third parties, including
retailers, to engage in additional acts of false advertising by repeating Woodland Tools' false
statements.

200.     Woodland Tools knew or should have known that its advertising activities were false,
misleading, and deceptive.

201.     These statements were made in interstate commerce, appeared in commercial
advertising or promotion by Woodland Tools, and have a tendency to deceive a substantial segment
of Woodland Tools' audience. The statements are also likely to influence the purchasing decision of
the consumer.

202.    Fiskars has been damaged, continues to be damaged, and is likely to be damaged in the future by Woodland Tools' false advertising by reason of diversion of prospective purchasers.

203.    Woodland Tools has unfairly profited from the false advertising alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

204.    Fiskars is likely to succeed on the merits of its false advertising claim pursuant to 15 U.S.C. § 1125(a).

205.    Fiskars has been, and continues to be, irreparably harmed as a result of Woodland Tools' false advertising.  Fiskars' immediate, irreparable injuries have no adequate remedy at law, and Fiskars is entitled to injunctive relief and up to three times its actual damages and/or an award of Woodland Tools' profits, as well as costs and Fiskars' reasonable attorney fees under 15 U.S.C. §§ 1116–17.

206.    The public interest lies in truthful advertising.

### COUNT IX - Breach of the Duty of Loyalty/Fiduciary Duty
### (Against Koch)

207.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

208.    Koch owed Fiskars a duty of loyalty while an employee of Fiskars as he was a key employee of Fiskars.

209.    Koch possess control over and knowledge of various key aspects of Fiskars' business including, but not limited to Fiskars' trade secret and other confidential and proprietary information, including the POS data and code.

210.    Given the information that Koch was entrusted with as a key employee of Fiskars, Koch held a position of trust within Fiskars wherein he was provided with confidential and sensitive information which if disclosed had the capacity to harm Fiskars.

211.     Koch breached his duty of loyalty to Fiskars by acting directly in opposition of Fiskars' interest when he emailed copies of Fiskars POS system to his personal email address while still employed by Fiskars.

212.     Further, Koch breached his duty of loyalty when he used Fiskars' trade secret and other confidential and proprietary information to the benefit of Woodland Tools and Lumino and to the detriment of Fiskars.

213.     Koch was aware that he was forbidden from disclosing Fiskars' trade secret and other confidential and proprietary information.

214.     Koch used the knowledge imparted to him through his position at Fiskars to steal business, or attempt to steal business, from Fiskars to the benefit of Woodland Tools and Lumino and to the detriment of Fiskars.

215.     In doing so, Koch took actions directly contrary to Fiskars' interest in breach of Koch's duty of loyalty and/or fiduciary duty to Fiskars.

216.     As a result of Koch's actions, Fiskars has suffered and will continue to suffer irreparable harm and other damages as a result of Koch's actions.

### COUNT X - Breach of Contract
### (Against Gundlach)

217.     Fiskars incorporates by reference the allegations above as if fully set forth herein.

218.     On July 11, 2011, Gundlach entered into the Fiskars Non-Compete Agreement with Fiskars.

219.     A true and correct copy of the Gundlach Fiskars Non-Compete Agreement is attached as **Exhibit A**.

220.     As part of the Gundlach Fiskars Non-Compete Agreement, Gundlach agreed to the terms set forth in Paragraphs 44–46 of the Complaint.

221.   In April 2021, Gundlach left Fiskars and purportedly began working at Lumino.

222.   Upon information and belief, Gundlach was actually working for or to the benefit of Woodland Tools.

223.   Upon information and belief, Gundlach assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Gundlach obtained while employed by Fiskars.

224.   As a result, upon information and belief, Gundlach breached the terms of the Gundlach Fiskars Non-Compete Agreement.

225.   Upon information and belief, Gundlach's breach resulted in harm to Fiskars.

## COUNT XI - Breach of Contract
### (Against Koch)

226.   Fiskars incorporates by reference the allegations above as if fully set forth herein.

227.   On June 4, 2018, Koch entered into the Fiskars Non-Compete Agreement with Fiskars.

228.   A true and correct copy of the Koch Fiskars Non-Compete Agreement is attached as **Exhibit B**.

229.   As part of the Koch Fiskars Non-Compete Agreement, Koch agreed to the terms set forth in Paragraphs 44–46 of the Complaint.

230.   In September 2021, Koch left Fiskars and purportedly began working at Lumino.

231.   Upon information and belief, Koch was actually working for or to the benefit of Woodland Tools.

36

232.    Upon information and belief, Koch assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Koch obtained while employed by Fiskars including, but not limited to, the POS data.

233.    As a result, upon information and belief, Koch breached the terms of the Koch Fiskars Non-Compete Agreement.

234.    Upon information and belief, Koch's breach resulted in harm to Fiskars.

### COUNT XII - Breach of Contract
### (Against Cota)

235.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

236.    On June 4, 2018, Cota entered into the Fiskars Non-Compete Agreement with Fiskars.

237.    A true and correct copy of the Cota Fiskars Non-Compete Agreement is attached as **Exhibit C**.

238.    As part of the Cota Fiskars Non-Compete Agreement, Cota agreed to the terms set forth in Paragraphs 44–46 of the Complaint.

239.    In February 2022, Cota left Fiskars and purportedly began working at Lumino.

240.    Upon information and belief, Cota was actually working for or to the benefit of Woodland Tools.

241.    Upon information and belief, Cota assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Cota obtained while employed by Fiskars.

242.    As a result, upon information and belief, Cota breached the terms of the Cota Fiskars Non-Compete Agreement.

243.    Upon information and belief, Cota's breach resulted in harm to Fiskars.

## COUNT XIII - Breach of Contract
### (Against Cota)

244.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

245.    In February 2022, Cota entered into a Separation Agreement and General Release with Fiskars.

246.    As part of the Cota Separation Agreement, Cota agreed to certain post-employment obligations.  Specifically, Cota acknowledged and agreed that customers, business connections, customers lists and other similar sensitive information that was generated by Fiskars was done so at great expense to Fiskars and protected by Fiskars as confidential information.

247.    Cota also agreed in the Cota Separation Agreement that for twenty-four months after her separation from Fiskars she would not directly or indirectly in any capacity use or disclose or cause to be disclosed such confidential information in a manner that could harm Fiskars' existing or potential business interests.

248.    In February 2022, Cota left Fiskars and purportedly began working at Lumino.

249.    Upon information and belief, Cota was actually working for or to the benefit of Woodland Tools.

250.    Upon information and belief, Cota assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Cota obtained while employed by Fiskars.

251.    As a result, upon information and belief, Cota breached the terms of the Cota Fiskars Non-Compete Agreement.

252.    Upon information and belief, Cota's breach resulted in harm to Fiskars.

**COUNT XIV - Tortious Interference With Contract And Business Relationship**
**(Against Woodland Tools and Lumino)**

253.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

254.    Fiskars had contractual relationships with Ex-Fiskars Employees.

255.    Woodland Tools and Lumino interfered with Fiskars contractual relationships by targeting and hiring the Ex-Fiskars Employees to perform work in contravention of the Fiskars' Ex-Employees obligations under the terms of the Fiskars Non-Compete Agreements.

256.    Woodland Tools and Lumino intended to interfere with Fiskars contractual relationship by its hiring of the Ex-Fiskars Employees so that they could benefit from the Ex-Fiskars Employees knowledge and information that they are obligated not to share under the terms of the Fiskars Non-Compete Agreements.

257.    As a result of Woodland Tools and Lumino's hiring of the Ex-Fiskars Employees, Fiskars has been damaged in an amount to be proven with specificity at trial. because they have been deprived the benefits of the Fiskars Non-Compete Agreements with the Ex-Fiskars Employees.

258.    Woodland Tools and Lumino are not justified or privileged to interfere with Fiskars agreements with the Ex-Fiskars Employees.

**WHEREFORE**, Fiskars requests judgment against Defendants as follows:

a.    That the Court enter judgment that Woodland Tools has infringed one or more of the Asserted Fiskars Patents directly, indirectly, or contributorily;

b.    That the Court enter an order preliminarily and permanently enjoining Woodland Tools and its officers, agents, employees, attorneys, and all personnel in active concern or participation with any of them from infringing the Asserted Fiskars Patents;

c.    That the Court award Fiskars damages in an amount to compensate it for Woodland Tools' infringement of the Asserted Fiskars Patents, together with pre-judgment interest and costs, and all other damages permitted under 35 U.S.C. § 284;

d.    That the Court award Fiskars an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

e.    That the Court treble the damages awarded to Fiskars under 35 U.S.C. § 284 by reason of Woodland Tools' willful infringement of the Asserted Fiskars Patents;

f.    That the Court declare this case to be "exceptional" under 35 U.S.C. § 285 and award Fiskars its attorneys' fees, expenses, and costs incurred in this action;

g.    That the Court award Woodland Tools' total profits for the tools infringing Fiskars' design patents under 35 U.S.C. § 289;

h.    A preliminary and permanent injunction prohibiting Woodland Tools, Lumino, and Koch, as well as every person or entity acting in concert with them, from directly or indirectly misappropriating, disclosing, and/or using Fiskars' trade secrets;

i.    An injunction compelling Woodland Tools, Lumino, and Koch, as well as every person or entity acting in concert with them, to return all documents and other materials containing or constituting Fiskars' trade secrets;

j.    That the Court award compensatory damages for the harm Fiskars suffered as a result of the theft of its trade secrets in an amount to be determined at trial;

k.    That the Court award Fiskars exemplary and other damages as a result of the theft of Fiskars' trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(C);

l.    That the Court award Fiskars exemplary and other damages pursuant to § 134.90(4), Wis. Stats.;

m.    That the Court award Fiskars its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D);

40

n.      That the Court award Fiskars its reasonable attorneys' fees pursuant to § 134.90(4), Wis. Stats.;

o.      A preliminary and permanent injunction prohibiting Woodland Tools and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from falsely advertising the design of its tools;

p.      A preliminary and permanent injunction requiring Woodland Tools to engage in corrective advertising to advise all customers who have purchased the Regular Duty Pruners (with straight of angled handles) that those products were not designed by Woodland Tools;

q.      That the Court award Fiskars damages to compensate it for the harm it suffered as a result of Vance Koch's breach of fiduciary duty;

r.      That the Court award Fiskars damages to compensate it for the harm it suffered as a result of Gundlach's breach of contract;

s.      That the Court award Fiskars damages to compensate it for the harm it suffered as a result of Koch's breach of contract;

t.      That the Court award Fiskars damages to compensate it for the harm it suffered as a result of Cota's multiple breaches of contract;

u.      That the Court award Fiskars damages to compensate it for the harm it suffered as a result of Woodland Tools and Lumino's tortious interference with Fiskars' contracts and business relationships; and

v.      That the Court award such other and further relief as the Court may deem just and proper including Fiskars' reasonable attorneys' fees.

**<u>JURY TRIAL DEMANDED</u>**

Dated this <u>6th</u> day of January, 2023.

/s/ Johanna M. Wilbert

Matthew Splitek
Lori S. Meddings
QUARLES & BRADY LLP
33 East Main Street
Suite 900
Madison, WI 53703
(608) 251-5000
matthew.splitek@quarles.com
lori.meddings@quarles.com

Johanna M. Wilbert
Christian G. Stahl
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2400
Milwaukee, Wisconsin 53202
(414) 277-5000
johanna.wilbert@quarles.com
christian.stahl@quarles.com

*Attorneys for Plaintiffs Fiskars Finland Oy Ab, and Fiskars Brands Inc.*