UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Fiskars Finland Oy Ab, and Fiskars Brands Inc., | |
| Plaintiffs, | |
| v. | Case No. 3:22-cv-540 |
| Woodland Tools Inc., Lumino, Inc., Ross Gundlach, Vance Koch, and Stephanie Cota, | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANT WOODLAND TOOLS INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Woodland Tools, Inc. ("Defendant"), by its attorneys, DeWitt LLP, hereby responds to the First Amended Complaint [Dkt. 33] filed by Plaintiffs Fiskars Finland Oy Ab ("Fiskars Finland") and Fiskars Brands, Inc. ("Fiskars Brands") (collectively, "Plaintiffs") as follows:

### NATURE OF THE ACTION

1.     This is an action at law and in equity for trade secret misappropriation, breach of contract, tortious interference, breach of duty, false advertising, and patent infringement arising under the laws of the United States, the State of Wisconsin, and the common law. Fiskars is one of the oldest companies in the world and a leading manufacturer of durable consumer products, including gardening tools. In spring of 2022, Fiskars noticed newcomer Woodland Tools, Inc. ("Woodland Tools") and, despite being new, Woodland Tools was able to place its garden tool products in large retail chains. Upon investigation, however, Fiskars learned that Woodland Tools' success was not due to innovation or ingenuity, but instead due to Woodland Tools taking advantage of Fiskars' prior success, innovation, and business practice. Formed by a former Fiskars employee, Woodland Tools actively recruited Fiskars employees in order to acquire the knowledge and information they possessed related to Fiskars' business practices, confidential information, and trade secrets. Woodland Tools used this information to gain an unfair competitive advantage, improperly exploiting Fiskars' success. In addition, Woodland Tools deliberately copied Fiskars' product designs and marketing strategy despite representing to consumers that it was responsible for its designs.

1

**RESPONSE:** Defendant admits that Plaintiff filed the Complaint, refers to the Complaint for a statement of its contents, and denies that Plaintiffs have in fact stated a claim for any of the listed causes of action. Defendant admits that the Complaint appears to make allegations relating to the purported causes of action listed in Paragraph 1. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 and therefore denies those allegations. Defendant denies that Defendant has committed any act of infringement in this district or elsewhere. Defendant denies any remaining allegations set forth in Paragraph 1.

## THE PARTIES

2.      Fiskars Finland Oy Ab is a Finnish Joint Stock Company with its principal place of business located at Keilaniementie 10, P.O. Box 91, FI-02151 Espoo, Finland.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 and therefore denies those allegations.

3.      Fiskars Brands Inc. is a Wisconsin corporation with its principal place of business located at 7800 Discovery Drive, Middleton, Wisconsin 53562.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 and therefore denies those allegations.

4.      Woodland Tools Inc. is a Wisconsin corporation that, on information and belief, maintains its principal place of business at 709 Post Road, Madison, Wisconsin 53713. It was organized on May 15, 2020.

**RESPONSE:** Defendant admits.

5.      Lumino, Inc. is a Wisconsin corporation with its principal place of business located at 713 Post Road, Madison, Wisconsin 53713.

**RESPONSE:** Defendant admits.

6.      Ross Gundlach is a Wisconsin resident who resides at 17 Yarrow Circle, Madison, WI 53719.

**RESPONSE:** Upon information and belief, Defendant admits that Mr. Gundlach is a resident of Wisconsin.

7.      Vance Koch is a Wisconsin resident who resides at 9802 Sandhill Road, Middleton, WI 53562.

**RESPONSE:** Upon information and belief, Defendant admits that Mr. Koch is a resident of Wisconsin.

8.      Stephanie Cota is a Wisconsin resident who resides at 4309 Yuma Drive, Madison, WI 53711.

**RESPONSE:** Upon information and belief, Defendant admits that Ms. Cota is a resident of Wisconsin.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (federal question) as Fiskars' Complaint alleges claims related to the infringement of Fiskars' patents, Lanham Act, and Defend Trade Secrets Act, 18 U.S.C. § 1836, and 28 U.S.C. § 1367(a) (supplemental jurisdiction) in that Fiskars' other claims are so related to Fiskars' patent infringement claims that they form part of the same case or controversy under Article III of the United States Constitution.

**RESPONSE:** Defendant admits that the Complaint purports to be an action for patent infringement that arises under 35 U.S.C. § 1 *et seq.*, and that this Court would have subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, but denies that Defendants committed any act of infringement in this district or elsewhere. Defendant admits that the Complaint purports to make claims under the Lanham Act and the Defend Trade Secrets Act, and that this Court would have subject matter jurisdiction over such claims, but denies that Defendant committed any violation of either the Lanham Act or the Defend Trade Secrets Act. Deny that Plaintiffs' "other claims are so related to Fiskars' patent infringement claims that they form part of the same case or controversy under Article III of the United States Constitution." Defendant denies any remaining allegations set forth in Paragraph 9.

10.      This Court has personal jurisdiction over Woodland Tools because Woodland Tools conducts business in the State of Wisconsin and within the Western District of Wisconsin. Woodland Tools is incorporated in Wisconsin, has its principal place of business in the Western District of Wisconsin and therefore has substantial and continuous ties with this District, and/or has

committed acts of patent infringement in this District. Woodland Tools makes, imports, sells, offers to sell, and/or induces the use and/or sale of various infringing products, directly or through intermediaries, in or into Wisconsin and this judicial District, thereby causing injury and damages in Wisconsin and this judicial District.

**RESPONSE:** Defendant admits that it conducts business in Wisconsin, is incorporated in Wisconsin, and has its principal place of business within this District. Defendant denies that it has committed any acts of patent infringement in this District or elsewhere. Defendant denies any remaining allegations set forth in Paragraph 10.

11.    This Court has personal jurisdiction over Lumino because Lumino conducts business in the State of Wisconsin and within the Western District of Wisconsin. Lumino is incorporated in Wisconsin, has its principal place of business in the Western District of Wisconsin and therefore has substantial and continuous ties with this judicial District.

**RESPONSE:** Paragraph 11 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant denies.

12.    This Court has personal jurisdiction over Messrs. Gundlach and Koch and Ms. Cota because all three defendants reside in this judicial District.

**RESPONSE:** Paragraph 12 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant denies.

13.    Venue is proper in this district under 28 U.S.C. § 1391 and 28 U.S.C. § 1400 in that all Defendants reside and/or have established places of business in this District and/or are incorporated in the State of Wisconsin. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events that gave rise to Fiskars' claims occurred in this district.

**RESPONSE:** Defendant admits that venue is proper as to the claims against Defendant. The remaining allegations call for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant denies.

## ALLEGATIONS COMMON TO ALL CLAIMS

14.    As one of the oldest companies in the world, tracing its origins to 1649, Fiskars has been and continues to be a leading manufacturer of a variety of durable consumer products for nearly 375 years. In the early years, Fiskars made nails, wire, hoes, and metal-reinforced wheels from wrought iron. In the nineteenth century, products expanded to include knives, forks, and scissors. By the early twentieth century, gardening tools were introduced, and ergonomic designs

were incorporated into products. The company's iconic, orange-handled ergonomic scissors are perhaps the best-known product, having sold over a billion units.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

15.    Today, Fiskars is one of the largest hand powered gardening tool manufacturers with products available in more than 100 countries and is among Finland's most valued brands. Fiskars' gardening tools are often rated as best picks by consumer review organizations and Fiskars' garden shears are currently the best seller for that product type on Amazon. In addition, Fiskars has held the top spot as Finland's most valued brand in Taloustutkimus' annual survey for the past four years.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

16.    In spring 2022, Fiskars became aware of a new competitor that seemingly came out of nowhere: Woodland Tools. Despite its status as a newcomer in the garden tools market, Woodland Tools was suddenly appearing on the shelves of major retailers like Blain's Farm & Fleet. Indeed, Fiskars employees viewed and purchased Woodland Tools products in a store prior to the date of Woodland Tools' press release announcing itself as a new company.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

17.    Woodland Tools, however, achieved its sudden entrance illicitly. Its business model is simple: cheat and steal to falsely position itself as an innovative newcomer to the consumer hand tools market. Woodland Tools was formed not to compete through innovation, but to copy Fiskars and free ride on Fiskars' investments in its products, customers, and business. A former Fiskars employee organized Woodland Tools in May 2020, partnering up with a director and officer of defendant Lumino, Inc. ("Lumino").

**RESPONSE:** Defendant denies.

18.    Then, while keeping and hiding behind their "day" jobs, these two individuals built Woodland Tools into a Fiskars' copycat. They recruited Fiskars' employees to work for Woodland Tools (under the guise of employing them at Lumino), stole Fiskars' confidential information through at least one of those employees, and willfully copied Fiskars product designs, photographic images, and go to market strategy even as they falsely told the public that Woodland Tools' "team of experts" were responsible for design.

**RESPONSE:** Defendant denies.

## FACTUAL BACKGROUND

### Woodland Tools

19.     According to its website, Woodland Tools "was born when two guys met with a shared vision."

**RESPONSE:** Defendant admits that its website contains the quoted text.

20.     Upon information and belief, these two people are Michael Kollman and Keegan Nesvacil, both of whom currently serve as Woodland Tools' two directors and officers.

**RESPONSE:** Defendant admits.

21.     Prior to becoming a director and officer for Woodland Tools, Keegan Nesvacil worked at Fiskars between 2011 and 2018.

**RESPONSE:** Defendant admits.

22.     While at Fiskars, Keegan Nesvacil was the National Account Manager for a Fiskars large account.

**RESPONSE:** Defendant admits Keegan Nesvacil was a national account manager for Fiskars' pottery division, which Defendant understands is no longer part of Fiskars. Paragraph 22 is otherwise denied.

23.     As National Account Manager, Keegan Nesvacil gained a wealth of information about Fiskars including, but not limited to, its operations, its relationship, and its contacts with major retail partners and supply chain and logistical methods for meeting retail partner requirements.

**RESPONSE:** Defendant admits that Mr. Nesvacil was a National Account Manager, who had access to the information made available by Fiskars to a person in this role. Paragraph 23 is otherwise denied as stated and phrased by Plaintiffs.

24.     Lumino was organized in January 2001.

**RESPONSE:** Defendant admits.

25.     Upon information and belief, Lumino imports and sells window treatments.

**RESPONSE:** Defendant admits.

26.     Upon information and belief, Lumino operates as the United States distributor for Intercrown, a Chinese-based company that sells window treatments.

**RESPONSE:** Defendant admits.

27.     The sign outside of Lumino's principal office refers to the office's tenant as "Intercrown/Lumino."

**RESPONSE:** Defendant admits.

28.     Lumino and/or Intercrown's Vice President of Sales, Marketing, & Product Development is Michael Kollman.

**RESPONSE:** Defendant denies the allegations of Paragraph 28 as stated and phrased by Plaintiffs.

29.     Upon information and belief, Michael Kollman is an officer and director of Lumino.

**RESPONSE:** Upon information and belief, Defendant admits

30.     Michael Kollman is in high-level/director/officer positions at both Woodland Tools and Lumino.

**RESPONSE:** Defendant admits only that Mr. Kollman is an officer at Woodland Tools and an officer at Lumino.

31.     In addition, on information and belief, Woodland Tools and Lumino share office space.

**RESPONSE:** Defendant denies, as stated and phrased by Plaintiffs.

32.     Kollman's Lumino is located at 713 Post Road, Madison, Wisconsin 53173.

**RESPONSE:** Defendant admits that Lumino is located at 713 Post Road, Madison, Wisconsin 53173.

33.     713 Post Road is Unit 4 of a 4-unit business condominium.

**RESPONSE:** Defendant admits only that Lumino is located at 713 Post Road, Madison, Wisconsin 53173 and that Woodland Tools is located at 709 Post Road, Madison, Wisconsin 53173.

34.     Kollman's Woodland Tools is located at 709 Post Road, Madison, Wisconsin 53173.

**RESPONSE:** Defendant admits that Woodland Tools is located at 709 Post Road, Madison, Wisconsin 53173.

35.     709 Post Road is Unit 3 of the same 4-unit business condominium that houses Lumino.

**RESPONSE:** Defendant admits only that Woodland Tools is located at 709 Post Road, Madison, Wisconsin 53173, and that Lumino has an office in the same building.

36.     Kollman, through a limited liability company named Kalena Ventures LLC, ultimately owns and/or controls the business condominium that houses 713 Post Road.

**RESPONSE:** Upon information and belief, Defendant admits that Kalena Ventures LLC owns the building located at 713 Post Road.

37.     In the last 18 months, Lumino has hired at least three ex-Fiskars employees: Ross Gundlach, Stephanie Cota, and Vance Koch (the "Ex-Fiskars Employees").

**RESPONSE:** Upon information and belief, Defendant admits.

38.     As part of their employment with Fiskars, the Ex-Fiskars Employees all signed a Confidentiality and Non-Compete Agreement (the "Fiskars Non-Compete Agreement").

**RESPONSE:** Upon information and belief: Defendant admits.

39.     Ross Gundlach executed his Fiskars Non-Compete Agreement on July 11, 2011. A true and correct copy of Ross Gundlach's Fiskars Non-Compete Agreement is attached as **Exhibit A.**

**RESPONSE:** Defendant admits that Exhibit A appears to be a Non-Compete Agreement between Fiskars Brands, Inc. and Ross Gundlach dated July 11, 2011.

40.     Vance Koch executed his Fiskars Non-Compete Agreement on June 4, 2018. A true and correct copy of Vance Koch's Fiskars Non-Compete Agreement is attached as **Exhibit B.**

**RESPONSE:** Defendant admits that Exhibit B appears to be a Non-Compete Agreement between Fiskars Brands, Inc. and Vance Koch dated June 4, 2018.

8

41.     Stephanie Cota executed her Fiskars Non-Compete Agreement on September 25, 2013. A true and correct copy of Stephanie Cota's Fiskars Non-Compete Agreement is attached as **Exhibit C.**

**RESPONSE:** Defendant admits that Exhibit C appears to be a Non-Compete Agreement

between Fiskars Brands, Inc. and Stephanie Cota dated September 25, 2013.

42.     As part of the Fiskars Non-Compete Agreement the Ex-Fiskars Employees agreed to a confidentiality provision which states their confidentiality obligations under Fiskars Non-Compete Agreement "[s]hall continue for two (2) years after the end of Employee's employment with Fiskars Brands, except that with respect to any Confidential Information that constitutes a trade secret under applicable law, Employee shall not disclose or use the information for long as it remains a trade secret." (Exhibits A-C, Fiskars Non-Compete Agreement, § 1).

**RESPONSE:** Defendant refers to Exhibits A, B, and C for the full text of the provisions in

each document and denies any allegations inconsistent therewith.

43.     In the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees also acknowledged that as part of their employment with Fiskars they would "acquire knowledge of and have access to trade secrets and other Confidential Information of Fiskars Brands, and its respective products and product lines."

**RESPONSE:** Defendant refers to Exhibits A, B, and C for the full text of the provisions in

each document and denies any allegations inconsistent therewith.

44.     As part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees agreed to the following:

> Employee shall not, for a period of two years following termination of his/her employment with Fiskars Brands for any reason, directly or indirectly, assist, render services to, participate in the affairs of, any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands within two (2) years prior to the termination of his/her employment, in any capacity which either (i) would utilize Employee's services with respect to such manufacture or sale, or (ii) would reasonably be expected to utilize any of the trade secrets or other Confidential Information referenced in this paragraph, with respect to such manufacture or sale, within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment.

(Exhibits A-C, Fiskars Non-Compete Agreement, § 3.)

9

**RESPONSE:** Defendant refers to Exhibits A, B, and C for the full text of the provisions in each document and denies any allegations inconsistent therewith.

45.     As part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees further agreed to the following:

> During this period of non-competition, Employee agrees not to directly or indirectly, (i) solicit, induce, or influence any customer, supplier, or any other person which has a business relationship with Fiskars Brands to reduce or discontinue such relationship with Fiskars Brands, or (ii) recruit, solicit, or otherwise influence any employee or agent of Fiskars Brands to change their employment relationship with Fiskars Brands. Further recognizing the specialized nature of the of the business and the product lines of Fiskars Brands and the national and international scope of competition, Employee acknowledges the geographic scope of his covenant not to compete to be reasonable.

(Exhibits A-C, Fiskars Non-Compete Agreement, § 3.)

**RESPONSE:** Defendant refers to Exhibits A, B, and C for the full text of the provisions in each document and denies any allegations inconsistent therewith.

46.     Finally, as part of the Fiskars Non-Compete Agreement, the Ex-Fiskars Employees agreed that:

> Upon termination of employment, the Employee shall deliver to Fiskars Brands the original and all copies of all documents, records and property of any nature whatsoever which are in the Employee's possession or control, and which are the property of Fiskars Brands or which relate to the business activities, facilities, or customers of Fiskars Brands, including any records, documents or property created by the Employee in said capacity.

(Exhibits A-C, Fiskars Non-Compete Agreement, § 4.)

**RESPONSE:** Defendant refers to Exhibits A, B, and C for the full text of the provisions in each document and denies any allegations inconsistent therewith.

47.     Additionally, in connection with her departure from Fiskars, Stephanie Cota also signed and executed a Separation Agreement and General Release (the "Cota Separation Agreement").

10

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations; unlike Exhibits

A, B, and C, the purported "Separation Agreement" is not attached as an exhibit to the Complaint.

48.    As part of the Cota Separation Agreement, Stephanie Cota agreed to certain post-employment obligations. Specifically, Stephanie Cota acknowledged and agreed that customers, business connections, customers lists and other similar sensitive information that was generated by Fiskars was done so at great expense to Fiskars and protected by Fiskars as confidential information. (Cota Separation Agreement, § 8.)

**RESPONSE:** Defendant refers to the purported "Separation Agreement" for the full text of

its provisions and denies any allegations inconsistent therewith.

49.    Stephanie Cota also agreed in the Cota Separation Agreement that for twenty-four months after her separation from Fiskars she would not directly or indirectly in any capacity use or disclose or cause to be disclosed such confidential information in a manner that could harm Fiskars' existing or potential business interests. (Cota Separation Agreement, § 8.)

**RESPONSE:** Defendant refers to the purported "Separation Agreement" for the full text of

its provisions and denies any allegations inconsistent therewith.

50.    The Ex-Fiskars Employees purported departures for Lumino did not suggest any breach of the Fiskars Noncompete Agreement or the Cota Separation Agreement because Lumino is a window treatment company.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

51.    On information and belief, however, all three of the Ex-Fiskars Employees were recruited away from Fiskars to work not only publicly for Lumino, but secretly for Woodland Tools as well.

**RESPONSE:** Defendant denies.

<u>Ross Gundlach</u>

52.    Ross Gundlach left his position as a Category Manager at Fiskars and purportedly joined Lumino in April 2021 as its Director of Business Analytics.

**RESPONSE:** Upon information and belief, Defendant admits.

53.    As a Category Manager at Fiskars, Ross Gundlach was privy to sensitive and confidential information about Fiskars' customers and their data, pricelists, product offerings, product assortments, pricing, costs margins, and customer relationships.

11

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in this paragraph and therefore denies those allegations.

<u>Vance Koch</u>

54.     Vance Koch worked under Ross Gundlach at Fiskars until Gundlach left Fiskars in April 2021.

**RESPONSE:** Upon information and belief, Defendant admits.

55.     In September 2021, Vance Koch left Fiskars to rejoin Gundlach, his former boss, purportedly at Lumino.

**RESPONSE:** Upon information and belief, Defendant admits.

56.     Like Gundlach, Vance Koch was privy to confidential and sensitive information such as customer lists, customer-related data, pricelists, product offerings, product assortments, product pricing, cost margins, and customer relationships as he worked under Ross Gundlach and was privy to such information in his role.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

57.     As alleged below, shortly before leaving Fiskars, Vance Koch illicitly copied highly sensitive sales information and computer code that may have limited use to his purported new employer Lumino—but was tremendously useful to his secret new employer, Woodland Tools.

**RESPONSE:** Defendant denies.

<u>Stephanie Cota</u>

58.     Stephanie Cota left her position as Global Director, Business & Offering, at Fiskars and joined Lumino in February 2022 as a Director.

**RESPONSE:** Defendant admits.

59.     As a Global Director, Business & Offering, Stephanie Cota was privy to sensitive and confidential Fiskars strategic, competitive, and customer information.

**RESPONSE:** Upon information and belief, Defendant admits Stephanie Cota had access

to information that Plaintiff made available to the position of Global Director, Business & Offering.

60. Before leaving Fiskars, Stephanie Cota deliberately deleted virtually all February 2021-January 2022 sent email messages from her Fiskars email account. Notably, she did not delete any sent email messages before this period.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

61. As described above there is a pattern of Lumino hiring Ex-Fiskars Employees to purportedly work for Lumino.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

62. Upon information and belief, in actuality these Ex-Fiskars Employees also are working to the benefit of Woodland Tools even though they are not publicly listed as Woodland Tools' employees.

**RESPONSE:** Defendant denies.

63. Essentially, Woodland Tools is using Lumino to launder Ex-Fiskars Employees and misdirect any suspicions that the Ex-Fiskars employees are going to a competitor in violation of their separation agreements or cause concern at Fiskars.

**RESPONSE:** Defendant denies.

64. Upon information and belief, Woodland Tools, through Lumino, has used Ex-Fiskars Employees to, among other things:

    a. Set up its manufacturing operations in Asia with the exact same factories Fiskars utilizes to manufacture its garden tools

    b. Leverage Fiskars developed relationships to approach Fiskars key customer account decision-makers in an effort to divert sales from Fiskars to Woodland Tools;

    c. Utilize Fiskars trade secrets to gain a competitive advantage; and

    d. Copy Fiskars' patented tools to offer near-identical garden products as Fiskars.

**RESPONSE:** Defendant denies.

65. Woodland Tools also employs a former Fiskars employee who was an inventor of Fiskars' patented herb snips design (Design Patent Number D720,969).

**RESPONSE:** Upon information and belief, Defendant admits.

66. Woodland Tools has a pattern of targeting former Fiskars' employees.

**RESPONSE:** Defendant denies.

67.     Woodland Tools' use of Ex-Fiskars Employees and the information they possess to the benefit of Woodland Tools is evident by Woodland Tools' product offerings, its fast entry into the market, and the nature of the confidential information that one of the Ex-Fiskars' Employees illicitly copied and took with him to his new employment.

**RESPONSE:** Denied as stated and phrased by Plaintiffs.

68.     On information and belief, Woodland Tools also took advantage of Fiskars' confidential and sensitive trade secret information that it obtained via Vance Koch.

**RESPONSE:** Defendant denies.

69.     On or around September 7, 2021, September 13, 2021, and September 16, 2021 Vance Koch, while still a Fiskars employee, accessed Fiskars' confidential and sensitive point- of-sale ("POS") data and source code, and emailed this data and source code to his personal email address.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

70.     Fiskars' POS data is a snapshot in time of the unit and dollar sales by item of Fiskars product that generally shows what Fiskars products are in high demand, how much of Fiskars products are being sold, and at what price those sales occurred.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

71.     Fiskars' POS data is specific only to Fiskars' products and is information that Fiskars' treats as highly confidential and sensitive and has safeguards in place to restrict access to a need-to-know basis.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

72.     Indeed, given the sensitive nature of this information, the POS data for a given retailer is only shared with the specific Fiskars' Sales Account Managers for that retailer and a small data analytics team.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

73.     Vance Koch was a part of Fiskars' data analytics team, the team responsible for translating data from various customers/retailers into usable go to market strategy.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

74.     Part of Vance Koch's job was to write code to download the POS data from each retailer into a usable format by Fiskars and its systems.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

75.     As a result, although Fiskars only shares the POS data for a given retailer with those Fiskars employees associated with that retailer, Vance Koch had access to the POS data for all Fiskars retailers because he was tasked with creating code for all POS data uploaded at Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

76.     Fiskars' POS data would provide a competitor a significant competitive advantage because it would allow a competitor to know, among other things, the size of the market for a retailer, the operating margins for a given retailer, and information regarding which products perform strongest for a given retailer.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

77.     Any competitor, not only direct competitors, whose product is sold in the same retailers as Fiskars would find this knowledge valuable. Knowledge of Fiskars POS data, even for a small timeframe, would enable any competitor to obtain information on what products sell well, the speed at which they sell, their pricing, and where they sell well.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

78.     If a direct competitor of Fiskars were to have access to this information it would provide a roadmap for trying to get into the very same retailer, knowing what sells well, what sells fast, what assortment of products to target, and how to price each product to underbid Fiskars to a particular retailer.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

79.     Moreover, the cache of data that Vance Koch emailed himself included the Fiskars proprietary code to certain retail customers' vendor portals to make the downloading and use of the information on the Fiskars system easier and less time-consuming.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

80.     By sending himself the proprietary Fiskars code, Vance Koch would be able to easily replicate it again elsewhere and use it to download POS data from those certain retail customers' portals for which the code was written.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

81.     By not having to start fresh, Vance Koch, or a company using Vance Koch's stolen code would be at an advantage in at least development costs and time to get there. It would also have a proven code that works for those certain retail customers.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

82.     The code and POS data that Vance Koch sent to himself could have had limited use to Lumino, a window treatment company, and only where its customers overlap with Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

83.     The code and data, however, would have been extremely helpful and have much broader application to Woodland Tools. In fact, 21 of 22 known Woodland Tools' customers overlap with Fiskars.

**RESPONSE:** Denied as stated and phrased by Plaintiffs.

84.     On information and belief, Koch illicitly copied and sent himself the code and POS data for the benefit of Woodland Tools, and at Woodland Tools' direction.

**RESPONSE:** Defendant denies.

85.    On Woodland Tools' website it represents that each of its products is "designed right here in the US:"

Our no-nonsense approach to innovation blends a lifetime of practical know how with modern insights and manufacturing techniques to create products that are as efficient, versatile, and tough as you. Every Woodland Tool is designed right here in the US and Guaranteed Forever to work as long as you do.

Attached as **Exhibit D** is a true and correct screen capture of Woodland Tools' "About Us" page taken on September 13, 2022.

**RESPONSE:** Defendant admits only that the excerpted text appears to be an accurate excerpt of a portion of Defendant's website and that Exhibit D appears to be an accurate excerpt of a portion of Defendant's website.

86.    Woodland Tools further clarifies on its website what it means by "designed in the USA:

What do you mean by designed in the USA?

All Woodland Tools are designed in the USA by our team of experts and developed with ingenuity in mind at every step of the design and manufacturing process.

Attached as **Exhibit E** is a true and correct screen capture of Woodland Tools' "FAQ's" page taken on September 13, 2022.

**RESPONSE:** Defendant admits only that the excerpted text appears to be an accurate excerpt of a portion of Defendant's website and that Exhibit E appears to be an accurate excerpt of a portion of Defendant's website.

87.    These representations, however, are false and/or misleading.

**RESPONSE:** Defendant denies.

88.    For example, depicted below are two garden pruners, with the one on the right with the orange trim offered by Fiskars and the one on the left with the yellow trim offered by Woodland Tools.

17



**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

89.     The products above are identical in design.

 **RESPONSE:** Defendant denies.

90.     Similarly, other product offerings by Woodland Tools are identical to those first offered by Fiskars, like another set of pruners below with the one on the right with the orange trim offered by Fiskars and the one on the left with the yellow trim offered by Woodland Tools.



**RESPONSE:** Defendant denies.

91.     These designs are also identical.

**RESPONSE:** Defendant denies.

92.     The reflection on the pivot point in these images is identical.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiff and Defendant denies to the extent Plaintiffs are alleging that Woodland Tools' products are identical to Fiskars' products.

93.     Aside from the color, the above images are identical.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiff and Defendant denies to the extent Plaintiffs are alleging that Woodland Tools' products are identical to Fiskars' products.

94.     Despite this, Woodland Tools touts on its website that "[e]very Woodland Tool is designed right here in the US."

**RESPONSE:** Denied to the extent this paragraph suggests or implies that Defendant's products are identical to or copied from Plaintiffs' products. Defendant admits only that Defendant's website contains the quoted text.

95.     Woodland Tools' statement is false since these tools were designed by entities other than Woodland Tools.

**RESPONSE:** Defendant denies.

96.     Woodland Tools also touts on its website that its tools are designed by its "team of experts and developed with ingenuity in mind at every step of the design and manufacturing process."

**RESPONSE:** Defendant admits that Defendant's website contains the quoted text.

97.     This statement from Woodland Tools is also false. As shown above, at least the products pictured existed years before Woodland Tools existed.

**RESPONSE:** Defendant denies.

98.     Given that Woodland Tools' products incorporate designs identical to and created by others, Woodland Tools' representation that it has designed its tools is false.

**RESPONSE:** Defendant denies.

99.     In addition to the above, and staying with its pattern of copying, stealing, and lying to launch its brand, Woodland Tools has also copied a number of Fiskars' patented designs with current subsisting issued patents.

**RESPONSE:** Defendant denies.

100.    Fiskars has many patents, both utility and design, to protect its designs and its innovation.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

101.    Fiskars recognizes that minimalist designs are attractive to its customers and sets them apart from competitors.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

102.    Relevant to its allegations against Defendants, Fiskars' is the owner of three design patents, United States Design Patent Numbers D720,969 (the "'969 Patent"), D684,828 (the "'828 Patent"), and D764,882 (the "'882 Patent"), and one utility patent, United States Patent Number 10,321,635 (the "'635 Patent," and, collectively with the '969 Patent, '828 Patent, and '882 Patent, the "Asserted Fiskars Patents").

**RESPONSE:** Upon information and belief, Defendant admits.

103.    In design patents, solid lines are used to claim the patented features of the design, while broken or dashed lines are used to show what the rest of the product may look like.

**RESPONSE:** This is a legal conclusion related to design patents to which no response is

required; to the extent a response is deemed to be required; Defendant denies.

104.    To determine infringement of a design patent, it is only necessary to consider the solid lines in the patent's claims. The broken lines do not count for infringement.

**RESPONSE:** This is a legal conclusion related to infringement to which no response is

required; to the extent a response is deemed to be required, Defendant denies.

<u>The '969 Patent</u>

105.    Fiskars designed a unique look to a pair of herb snips.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

106.    Fiskars received a design patent on its herb snips design. On January 13, 2015, United States Design Patent No. D720,969, entitled "Cutting Tool," was duly and legally issued by the United States Patent and Trademark Office. A copy of the '969 Patent is attached as **Exhibit F.**

**RESPONSE:** Defendant admits that Exhibit F appears to be an accurate copy of United States Design Patent No. D720,969, entitled "Cutting Tool," dated January 13, 2015.

107.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '969 Patent by assignment.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

108.    The '969 Patent claims the ornamental design as shown and described in the patent.

**RESPONSE:** Defendant refers to United States Design Patent No. D720,969, entitled "Cutting Tool," dated January 13, 2015, and denies any allegations inconsistent therewith.

<u>Woodland Tools Infringes the '969 Patent</u>

109.    Woodland Tools is engaged in the business of selling garden tool products to consumers, including herb snips, and is a competitor of Fiskars in the consumer market.

**RESPONSE:** Defendant admits only that it sells garden tool products, among other products, to consumers. Plaintiffs' allegation that Defendant "is a competitor of Fiskars in the consumer market" is vague and ambiguous as to its territorial scope and the meaning of "competitor," and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

110.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the knowledge (or lack thereof) that each of Defendant's "employees and/or affiliates" may have about Fiskars and all of its offerings, designs and patents, and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

111.    After Fiskars was issued the '969 Patent, Woodland Tools began selling its Regular Duty Herb Snips, which is depicted below.

21



**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

112.    Woodland Tools' infringing Regular Duty Herb Snips have adopted every aspect of the claimed design in Fiskars' '969 Patent and has an overall appearance that is confusingly similar and substantially the same, in view of the prior art and in the eyes of the ordinary observer:



FIG. 3



**RESPONSE:** Defendant denies.

<u>The '828 Patent</u>

113.    Fiskars designed a unique look to a pair of loppers.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

114.    Fiskars received a design patent on its lopper design. On June 25, 2013, United States Design Patent No. D684,828, entitled "Cutting Tool," was duly and legally issued by the United States Patent and Trademark Office. A copy of the '828 Patent is attached as **Exhibit G.**

**RESPONSE:** Defendant admits that Exhibit G appears to be an accurate copy of United States Design Patent No. D684,828, entitled "Cutting Tool," dated June 25, 2013.

115.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '828 Patent by assignment.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

116.    The '828 Patent claims the ornamental design as shown and described in the patent.

**RESPONSE:** Defendant refers to United States Design Patent No. D684,828, entitled "Cutting Tool," dated June 25, 2013, and denies any allegations inconsistent therewith.

117.    Woodland Tools is engaged in the business of selling garden tool products to consumers, including loppers, and is a competitor of Fiskars in the consumer market.

**RESPONSE:** Defendant admits only that it sells garden tool products, among other products, to consumers. Plaintiffs' allegation that Defendant "is a competitor of Fiskars in the consumer market" is vague and ambiguous as to its territorial scope and the meaning of "competitor," and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

118.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the knowledge (or lack thereof) that each of Defendant's "employees and/or affiliates" may have

about Fiskars and all of its offerings, designs and patents, and therefore Defendant denies the

allegations in this paragraph as stated and phrased by Plaintiffs.

119.    After Fiskars was issued the '828 Patent, Woodland Tools began selling its Super
Duty Lopper, which is depicted below.



**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

120.    Woodland Tools' infringing Super Duty Lopper has adopted every aspect of the
claimed design in Fiskars' '828 Patent and has an overall appearance that is confusingly similar
and substantially the same, in view of the prior art and in the eyes of the ordinary observer: and
substantially the same, in view of the prior art and in the eyes of the ordinary observer:

24



**RESPONSE:** Defendant denies.

<u>The '882 Patent</u>

121.    Fiskars designed a unique pair of hedge shears.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

122.    Fiskars received a design patent on its hedge shear design. On August 30, 2016, United States Design Patent No. D764,882, entitled "Hedge Shears," was duly and legally issued by the United States Patent and Trademark Office. A copy of the '882 Patent is attached as **Exhibit H.**

**RESPONSE:** Defendant admits that Exhibit H appears to be an accurate copy of United States Patent No. D764,882, titled "Hedge Shears," dated August 30, 2016.

123.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '882 Patent by assignment.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

124.    The '882 Patent claims the ornamental design as shown and described in the patent.

**RESPONSE:** Defendant refers to United States Patent No. D764,882, titled "Hedge Shears," dated August 30, 2016, and denies any allegations inconsistent therewith.

125.    Woodland Tools is engaged in the business of selling garden tool products to consumers, including hedge shears, and is a competitor of Fiskars in the consumer market.

**RESPONSE:** Defendant admits that it sells garden tool products, among other products, to consumers. Plaintiffs' allegation that Defendant "is a competitor of Fiskars in the consumer market" is vague and ambiguous as to its territorial scope and the meaning of "competitor," and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

126.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the knowledge (or lack thereof) that each of Defendant's "employees and/or affiliates" may have about Fiskars and all of its offerings, designs and patents, and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

127.     After Fiskars was issued the '882 Patent, Woodland Tools began selling its Regular Duty Hedge Shear, which is depicted below.



**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

128.     Woodland Tools' infringing Regular Duty Hedge Shear has adopted every aspect of the claimed design in Fiskars' '882 Patent and has an overall appearance that is confusingly similar and substantially the same, in view of the prior art and in the eyes of the ordinary observer:



**RESPONSE:** Defendant denies.

<u>The '635 Patent</u>

129.   Fiskars has also innovated heavily in the hand tools space and has a number of utility patents directed at hand tools.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph and therefore denies those allegations.

130.   Fiskars received a utility patent on one such invention. On June 18, 2019, United States Patent No. 10,321,635, entitled "Cutting Tool with Variable Pivot System," was duly and legally issued by the United States Patent and Trademark Office. A copy of the '635 Patent is attached as **Exhibit I.**

**RESPONSE:** Defendant admits that Exhibit I appears to be an accurate copy of United States Patent No. 10, 321,635, entitled, "Cutting Tool with Variable Pivot System," dated Jun 18, 2019.

131.    Fiskars Finland Oy Ab owns the entire right, title, and interest in the '635 Patent by assignment.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

132.    The '635 Patent claims a hand operated cutting tool including a pivot system.

**RESPONSE:** Defendant refers to United States Patent No. 10,321,635, entitled, "Cutting Tool with Variable Pivot System," dated Jun 18, 2019, and denies any allegations inconsistent therewith.

133.    Woodland Tools is engaged in the business of selling garden tool products to consumers and is a competitor of Fiskars in the consumer market.

**RESPONSE:** Defendant admits only that it sells garden tool products, among other products, to consumers. Plaintiffs' allegation that Defendant "is a competitor of Fiskars in the consumer market" is vague and ambiguous as to its territorial scope and the meaning of "competitor," and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

134.    Specifically, Woodland Tools employees and/or affiliates are aware of Fiskars, its offerings, its designs, and its patents.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the knowledge (or lack thereof) that each of Defendant's "employees and/or affiliates" may have about Fiskars and all of its offerings, designs and patents, and therefore Defendant denies the allegations in this paragraph as stated and phrased by Plaintiffs.

135.    After Fiskars was issued the '635 Patent, Woodland began selling its Super Duty Bypass Pruners, which are depicted below.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

136.    At a minimum, Woodland Tools' Super Duty Pruners meet every limitation in claim 1 of the '635 Patent. Claim 1 of the '635 Patent recites:

> A hand operated cutting tool, comprising:
>
> a first handle rotatably coupled to a first cutting member, the first handle having a first set of projections; and
>
> a second handle coupled to a second cutting member and movably coupled to the first handle, the second handle having a second set of projections;
>
> wherein the handles are movable between a full open position and a full closed position, wherein a first region of movement is defined by the first and second sets of projections being at least partly engaged such that the first handle rotates relative to the first cutting member, and wherein a second region of movement is defined by the first and second sets of projections being disengaged.

**RESPONSE:** Defendant denies.

137.    A claim chart showing Woodland Tools' infringement is attached as **Exhibit J.**

**RESPONSE:** Defendant admits that Exhibit J purports to be a claim chart but deny that Defendant committed any acts of infringement and deny that Exhibit J shows any infringement.

138.    On information and belief, Woodland Tools has actual knowledge of Fiskars' Asserted Patents through competitive analysis and through the hiring of ex-Fiskars employees who were knowledgeable about them.

 **RESPONSE:** Defendant denies.

139.    Woodland Tools' copying of Fiskars' patented designs, specifically, the Fiskars Asserted Patents, was and is willful.

 **RESPONSE:** Defendant denies.

140.    Failed attempts at design arounds do not avoid infringement and are evidence of willful infringement.

**RESPONSE:** This paragraph calls for a legal conclusion to which no response is required; to the extent a response is deemed to be required, Defendant denies.

30

## CLAIMS

### COUNT I - Infringement of the '969 Patent
### (Against Defendant Woodland Tools)

141.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

142.    Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe the '969 Patent by making, using, selling, and offering for sale in the United States, or importing into the United States, herb snips that embody the design covered by the '969 Patent.

**RESPONSE:** Defendant denies.

143.    Upon information and belief, Woodland Tools has profited from its infringement of the '969 Patent.

**RESPONSE:** Defendant denies.

144.    Fiskars has sustained damages as a direct and proximate result of Woodland's infringement of the '969 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289 in an amount to be determined at trial.

**RESPONSE:** Defendant denies.

145.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' patent rights.

**RESPONSE:** Defendant denies.

### COUNT II - Infringement of the '828 Patent
### (Against Defendant Woodland Tools)

146.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

147.    Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe the '828 Patent by making, using, selling, and offering for sale in the United States, or importing into the United States, loppers that embody the design covered by the '828 Patent.

**RESPONSE:** Defendant denies.

31

148.    Upon information and belief, Woodland Tools has profited from its infringement of the '828 Patent.

**RESPONSE:** Defendant denies.

149.    Fiskars has sustained damages as a direct and proximate result of Woodland Tools' infringement of the '828 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289 in an amount to be determined at trial.

**RESPONSE:** Defendant denies.

150.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' patent rights.

**RESPONSE:** Defendant denies.

## COUNT III - Infringement of the '882 Patent
## (Against Defendant Woodland Tools)

151.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

152.    Under 35 U.S.C. § 271(a), Woodland Tools has infringed and continues to infringe the '882 Patent by making, using, selling, and offering for sale in the United States, or importing into the United States, hedge shears that embody the design covered by the '882 Patent.

**RESPONSE:** Defendant denies.

153.    Upon information and belief, Woodland Tools has profited from its infringement of the '882 Patent.

**RESPONSE:** Defendant denies.

154.    Fiskars has sustained damages as a direct and proximate result of Woodland Tools' infringement of the '882 Patent and is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289 in an amount to be determined at trial.

**RESPONSE:** Defendant denies.

155.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' patent rights.

**RESPONSE:** Defendant denies.

## COUNT IV - Infringement of the '635 Patent
## (Against Defendant Woodland Tools)

156.     Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

157.     Upon information and belief, Woodland Tools has been, and continues to be, directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '635 Patent by making, selling, importing, and/or offering for sale within the United States at least the Woodland Tools Super Duty Bypass Pruners.

**RESPONSE:** Defendant denies.

158.     A claim chart detailing Woodland Tools Super Duty Bypass Pruners infringes at least claim 1 of the '635 Patent is attached as **Exhibit J.**

**RESPONSE:** Defendant denies.

159.     Woodland Tools' actions constitute infringement under 35 U.S.C. § 271(a).

**RESPONSE:** Defendant denies.

160.     Additionally, or in the alternative, Woodland Tools has been, and continues to be, indirectly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '635 Patent by inducing third-party infringement of the '635 Patent.

**RESPONSE:** Defendant denies.

161.     Third-party manufacturers are and continue to directly infringe the '635 Patent by manufacturing the Super Duty Bypass Pruners and exporting into the United States.

**RESPONSE:** Defendant denies.

162.     Woodland Tools has intentionally induced others to infringe the '635 Patent by directing and contracting with third-parties to manufacture and export the Super Duty Bypass Pruners. Woodland has induced such infringement with knowledge of the '635 Patent and disregard for the '635 Patent.

**RESPONSE:** Defendant denies.

163.     Woodland Tools had and has actual knowledge of the '635 Patent as, upon information and belief, Woodland Tools tracks Fiskars patents and it is in contact with Ex- Fiskars Employees who are aware and knowledgeable of Fiskars supply chain and intellectual property.

**RESPONSE:** Defendant denies.

164.    Woodland Tools' actions indicate an intent to actively induce infringement, and constitutes active inducement under 35 U.S.C. § 271(b).

**RESPONSE:** Defendant denies.

165.    Additionally, or in the alternative, Woodland Tools has been, and continues to be, indirectly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '635 Patent by contributing to third-party infringement of the '635 Patent.

**RESPONSE:** Defendant denies.

166.    Woodland Tools has contributed toward third-party infringement by providing third-party manufacturers with infringing designs and schematics to manufacture the infringing Super Duty Bypass Pruner. Such third-party manufacturer(s) has made the infringing tool and exported it to the United States.

**RESPONSE:** Defendant denies.

167.    Woodland Tools' actions constitute contributory infringement under 35 U.S.C. § 271(c).

**RESPONSE:** Defendant denies.

168.    Woodland Tools' infringement of the '635 Patent has caused and continues to cause, damage to Fiskars in an amount to be proven at trial.

**RESPONSE:** Defendant denies.

169.    Upon information and belief, Woodland Tools' infringement has been intentional, willful, and in reckless disregard of Fiskars' rights.

**RESPONSE:** Defendant denies.

### COUNT V - Misappropriation of Trade Secrets, 18 U.S.C. § 1836
### (Against Defendants Woodland Tools, Lumino, and Koch)

170.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

171.    Fiskars POS data constitutes protectable trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) and such data is proprietary and confidential to Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

172.    Fiskars source code also constitutes protectable trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and such source code is proprietary and confidential to Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

173.    Fiskars has taken reasonable measures to protect and maintain the secrecy and confidentiality of its trade secrets.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

174.    Fiskars' trade secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

175.    Knowledge of the information would also confer a substantial economic benefit to Fiskars' competitors, including Woodland Tools.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

176.    The circumstances of Koch's employment with Fiskars gave rise to fiduciary duties and obligations to maintain the secrecy of Fiskars' trade secrets and to strictly limit the use of such trade secrets to Fiskars' business activities and for Fiskars' exclusive benefit.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

177.    Woodland Tools, Lumino, and Koch, through improper means and without authorization, either directly or indirectly misappropriated, misused, and/or disclosed Fiskars' trade secrets to and for their own benefit.

**RESPONSE:** Defendant denies.

178.    Upon information and belief, Woodland Tools and Lumino have been systematically targeting and soliciting Fiskars employees to work for them, knowing that they possess specific knowledge of Fiskars' trade secrets and that such trade secrets would provide immediate benefit to Woodland Tools and Lumino.

**RESPONSE:** Defendant denies.

179.    As a direct and proximate cause of Woodland Tools, Lumino, and Koch's deliberate, willful, and malicious misappropriation of Fiskars' trade secrets, Fiskars has sustained and will continue to sustain severe, immediate, and irreparable harm, damage, and injury to the value of its trade secrets and competitive advantage, which Fiskars has expended significant time, effort, and money to secure.

**RESPONSE:** Defendant denies.

180.    Woodland Tools, Lumino, and Koch's misappropriation of Fiskars' trade secrets entitle Fiskars' to injunctive relief, damages, and attorneys' fees under 18 U.S.C. § 1836(b)(3).

**RESPONSE:** Defendant denies.

### COUNT VI - Misappropriation of Trade Secrets, § 134.90 Wis. Stats.
### (Against Defendants Woodland Tools, Lumino, and Koch)

181.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

182.    Fiskars confidential, proprietary, and trade secret information related to its sales, customers, pricing structures, sales, and other information contained in its POS data are sufficiently secret to derive economic value for Fiskars. This information is not generally known to others who can obtain economic value from its disclosure or use, including Fiskars competitors like Woodland Tools.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

183.    During his employment with Fiskars, Koch had access to Fiskars' trade secrets and other nonpublic confidential information that was of significant value to Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

184.    Fiskars has taken extensive efforts to maintain the secrecy and confidentiality of its trade secrets both within its internal operation and its business dealings, so that its competitors

cannot obtain economic value from this information. The value of its trade secrets to Fiskars' competitors, like Woodland Tools, is substantial. The information cannot be easily acquired by individuals outside of Fiskars.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

185.   Koch had an absolute obligation and duty to maintain the secrecy of Fiskars' trade secret information and to use that information solely for the purpose of supporting Fiskars' business.

**RESPONSE:** This paragraph contains allegations related to persons and/or entities other than Defendant, to which no response is required from Defendant. To the extent a response is deemed to be required, Defendant responds as follows: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

186.   At the time Woodland Tools, Lumino, and Koch acquired Fiskars' trade secrets, either directly or indirectly, they knew or should have known that the trade secret information had been acquired through improper means and under circumstances giving rise to a duty to maintain the secrecy of the information and that the information was not to be used to Fiskars' detriment.

**RESPONSE:** Defendant denies.

187.   Notwithstanding the foregoing, Woodland Tools, Lumino, and Koch have willfully and maliciously breached their duties to Fiskars and/or have willfully and maliciously misappropriated and will continue to misappropriate Fiskars' trade secret and confidential information that was acquired during Koch's employment with Fiskars.

**RESPONSE:** Defendant denies.

188.   Woodland Tools, Lumino, and Koch's misappropriation and use of Fiskars' trade secrets for their own purposes and to their own benefit and to the detriment of Fiskars is intended to prejudice and hurt Fiskars and its business, which is in violation of § 134.90, Wis. Stats.

**RESPONSE:** Defendant denies.

189.   The trade secrets, confidential, and proprietary information that Woodland Tools, Lumino, and Koch misappropriated and will continue to misappropriate include information related to Fiskars' sales, customers, pricing structures, financial performance, sales and analysis comparison, and competitive advantage in the industry. The full extent of the misappropriation will be ascertained during discovery and ongoing forensic review.

**RESPONSE:** Defendant denies.

190.    The trade secrets identified herein derive independent economic value from not being generally known to, and not readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use, and Fiskars engaged in reasonable efforts to maintain their secrecy.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

191.    Woodland Tools, Lumino, and Koch have and will continue to use Fiskars' trade secrets and confidential information to compete directly with Fiskars.

**RESPONSE:** Defendant denies.

192.    Because Woodland Tools, Lumino, and Koch are competing directly with Fiskars business, Fiskars has and will continue to be damaged by their misappropriation of its trade secrets and confidential information.

**RESPONSE:** Defendant denies.

193.    Woodland Tools, Lumino, and Koch's conduct, as alleged, violates § 134.90, Wis. Stats., and is outrageous, egregious, malicious, intentional, willful and in reckless disregard of the rights of Fiskars and entitles Fiskars to punitive damages.

**RESPONSE:** Defendant denies.

194.    Woodland Tools, Lumino, and Koch's misappropriation and continued misappropriation of Fiskars' trade secrets and confidential information has and will result in damage to Fiskars business and business interest, and has and will continue to result in their unjust enrichment, and unless restrained, they will continue to be unjustly enriched to Fiskars' prejudice and damage.

**RESPONSE:** Defendant denies.

## COUNT VIII - False Advertising
## (Against Woodland Tools)

195.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

196.    As outlined in part above, Woodland Tools made false and misleading statements in commercial advertisements about at least the design and origins of the Woodland Tools Regular Duty Bypass Pruner (with straight and angled handles). These statements misrepresent the nature

characteristics, and/or qualities of the design and origins the Woodland Tools Regular Duty Bypass Pruner (with straight and angled handles) and are expressly false, impliedly false, or both.

**RESPONSE:** Defendant denies.

197. The nature, characteristics, and qualities of the design and origins of the Woodland Tools Regular Duty Bypass Pruner (with straight and angled handles) are material factors that impact consumer purchasing decisions.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

198. Woodland Tools' false and misleading statements constitute false advertising in violation of 15 U.S.C. § 1125(a).

**RESPONSE:** Defendant denies.

199. Woodland Tools has knowingly induced and/or caused third parties, including retailers, to engage in additional acts of false advertising by repeating Woodland Tools' false statements.

**RESPONSE:** Defendant denies.

200. Woodland Tools knew or should have known that its advertising activities were false, misleading, and deceptive.

**RESPONSE:** Defendant denies.

201. These statements were made in interstate commerce, appeared in commercial advertising or promotion by Woodland Tools, and have a tendency to deceive a substantial segment of Woodland Tools' audience. The statements are also likely to influence the purchasing decision of the consumer.

**RESPONSE:** Defendant denies.

202. Fiskars has been damaged, continues to be damaged, and is likely to be damaged in the future by Woodland Tools' false advertising by reason of diversion of prospective purchasers.

**RESPONSE:** Defendant denies.

203. Woodland Tools has unfairly profited from the false advertising alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

**RESPONSE:** Defendant denies.

204. Fiskars is likely to succeed on the merits of its false advertising claim pursuant to 15 U.S.C. § 1125(a).

**RESPONSE:** Defendant denies.

205.    Fiskars has been, and continues to be, irreparably harmed as a result of Woodland Tools' false advertising. Fiskars' immediate, irreparable injuries have no adequate remedy at law, and Fiskars is entitled to injunctive relief and up to three times its actual damages and/or an award of Woodland Tools' profits, as well as costs and Fiskars' reasonable attorney fees under 15 U.S.C. §§ 1116-17.

**RESPONSE:** Defendant denies.

206.    The public interest lies in truthful advertising.

**RESPONSE:** Paragraph 206 asserts a legal conclusion to which no response is required.

### COUNT IX - Breach of the Duty of Loyalty/Fiduciary Duty
### (Against Koch)

207.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully

set forth herein.

208.    Koch owed Fiskars a duty of loyalty while an employee of Fiskars as he was a key employee of Fiskars.

**RESPONSE:** Paragraph 208 calls for a legal conclusion as to an entity other than

Defendant, to which no response is required.  To the extent a response is deemed required,

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations of this paragraph and therefore denies those allegations.

209.    Koch possess control over and knowledge of various key aspects of Fiskars' business including, but not limited to Fiskars' trade secret and other confidential and proprietary information, including the POS data and code.

**RESPONSE:** This claim is brought against a different Defendant and does not require a

response from Defendant. To the extent a response is deemed to be required: Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of this

paragraph and therefore denies those allegations.

210.    Given the information that Koch was entrusted with as a key employee of Fiskars, Koch held a position of trust within Fiskars wherein he was provided with confidential and sensitive information which if disclosed had the capacity to harm Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

211.    Koch breached his duty of loyalty to Fiskars by acting directly in opposition of Fiskars' interest when he emailed copies of Fiskars POS system to his personal email address while still employed by Fiskars.

**RESPONSE:** Paragraph 211 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

212.    Further, Koch breached his duty of loyalty when he used Fiskars' trade secret and other confidential and proprietary information to the benefit of Woodland Tools and Lumino and to the detriment of Fiskars.

**RESPONSE:** Paragraph 212 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant denies.

213.    Koch was aware that he was forbidden from disclosing Fiskars' trade secret and other confidential and proprietary information.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

41

214.   Koch used the knowledge imparted to him through his position at Fiskars to steal business, or attempt to steal business, from Fiskars to the benefit of Woodland Tools and Lumino and to the detriment of Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

215.   In doing so, Koch took actions directly contrary to Fiskars' interest in breach of Koch's duty of loyalty and/or fiduciary duty to Fiskars.

**RESPONSE:** Paragraph 215 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

216.   As a result of Koch's actions, Fiskars has suffered and will continue to suffer irreparable harm and other damages as a result of Koch's actions.

**RESPONSE:** Paragraph 216 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

### COUNT X - Breach of Contract
### (Against Gundlach)

217.   Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

218.   On July 11, 2011, Gundlach entered into the Fiskars Non-Compete Agreement with Fiskars.

**RESPONSE:** Paragraph 218 calls for a legal conclusion as to an entity other than Defendant, to which no response is required.  To the extent a response is deemed required, upon

information and belief, Defendant admits that the Non-Compete Agreement between Mr. Gundlach

and Fiskars Brands Inc. appears to be dated July 11, 2011.

219.   A true and correct copy of the Gundlach Fiskars Non-Compete Agreement is attached as **Exhibit A.**

**RESPONSE:** This claim is brought against a different Defendant and does not require a

response from Defendant. To the extent a response is deemed to be required: Upon information and

belief, Defendant admits that Exhibit A appears to be a Non-Compete Agreement between Mr.

Gundlach and Fiskars Brands Inc., dated July 11, 2011.

220.   As part of the Gundlach Fiskars Non-Compete Agreement, Gundlach agreed to the terms set forth in Paragraphs 44—46 of the Complaint.

**RESPONSE:** This claim is brought against a different Defendant and does not require a

response from Defendant. To the extent a response is deemed to be required: Defendant refers to a

copy of the agreement for its full terms, and denies any allegations inconsistent therewith.

221.   In April 2021, Gundlach left Fiskars and purportedly began working at Lumino.

**RESPONSE:** This claim is brought against a different Defendant and does not require a

response from Defendant. To the extent a response is deemed to be required: Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of this

paragraph and therefore denies those allegations.

222.   Upon information and belief, Gundlach was actually working for or to the benefit of Woodland Tools.

**RESPONSE:** This claim is brought against a different Defendant and does not require a

response from Defendant. To the extent a response is deemed to be required: Defendant denies.

223.   Upon information and belief, Gundlach assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Gundlach obtained while employed by Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

224.    As a result, upon information and belief, Gundlach breached the terms of the Gundlach Fiskars Non-Compete Agreement.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

225.    Upon information and belief, Gundlach's breach resulted in harm to Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

**COUNT XI - Breach of Contract**
**(Against Koch)**

226.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

227.    On June 4, 2018, Koch entered into the Fiskars Non-Compete Agreement with Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Upon information and belief, Defendant admits that the Non-Compete Agreement between Mr. Koch and Fiskars Brands Inc. appears to be dated June 4, 2018.

228.    A true and correct copy of the Koch Fiskars Non-Compete Agreement is attached **as Exhibit B.**

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Upon information and belief, Defendant admits that Exhibit B appears to be a Non-Compete Agreement between Mr. Koch and Fiskars Brands Inc., dated June 4, 2018.

229.    As part of the Koch Fiskars Non-Compete Agreement, Koch agreed to the terms set forth in Paragraphs 44-46 of the Complaint.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant refers to a copy of the agreement for its full terms, and denies any allegations inconsistent therewith.

230.    In September 2021, Koch left Fiskars and purportedly began working at Lumino.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

231.    Upon information and belief, Koch was actually working for or to the benefit of Woodland Tools.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

232.    Upon information and belief, Koch assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Koch obtained while employed by Fiskars including, but not limited to, the POS data.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

233.    As a result, upon information and belief, Koch breached the terms of the Koch Fiskars Non-Compete Agreement.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

234.    Upon information and belief, Koch's breach resulted in harm to Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

## COUNT XII - Breach of Contract
### (Against Cota)

235.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

236.    On June 4, 2018, Cota entered into the Fiskars Non-Compete Agreement with Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies. The Non-Compete Agreement between Ms. Cota and Fiskars Brands Inc. that appears as Exhibit C to the Complaint is not dated June 4, 2018.

237.    A true and correct copy of the Cota Fiskars Non-Compete Agreement is attached as **Exhibit C.**

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Upon information and belief, Defendant admits that Exhibit C appears to be a Non-Compete Agreement between Ms. Cota and Fiskars Brands Inc.

238.    As part of the Cota Fiskars Non-Compete Agreement, Cota agreed to the terms set forth in Paragraphs 44-46 of the Complaint.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant refers to a copy of the agreement for its full terms, and denies any allegations inconsistent therewith.

239.    In February 2022, Cota left Fiskars and purportedly began working at Lumino.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

240.    Upon information and belief, Cota was actually working for or to the benefit of Woodland Tools.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

241.    Upon information and belief, Cota assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Cota obtained while employed by Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

242.    As a result, upon information and belief, Cota breached the terms of the Cota Fiskars Non-Compete Agreement.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

243.    Upon information and belief, Cota's breach resulted in harm to Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

### COUNT XIII - Breach of Contract
### (Against Cota)

244.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

245.    In February 2022, Cota entered into a Separation Agreement and General Release with Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

246.    As part of the Cota Separation Agreement, Cota agreed to certain post- employment obligations. Specifically, Cota acknowledged and agreed that customers, business connections, customers lists and other similar sensitive information that was generated by Fiskars was done so at great expense to Fiskars and protected by Fiskars as confidential information.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

247.    Cota also agreed in the Cota Separation Agreement that for twenty-four months after her separation from Fiskars she would not directly or indirectly in any capacity use or disclose or cause to be disclosed such confidential information in a manner that could harm Fiskars' existing or potential business interests.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

248.    In February 2022, Cota left Fiskars and purportedly began working at Lumino.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

249.    Upon information and belief, Cota was actually working for or to the benefit of Woodland Tools.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

250.    Upon information and belief, Cota assisted Woodland Tools in the manufacture and sale of hand powered gardening tools using confidential information Cota obtained while employed by Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

251.    As a result, upon information and belief, Cota breached the terms of the Cota Fiskars Non-Compete Agreement.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

252.    Upon information and belief, Cota's breach resulted in harm to Fiskars.

**RESPONSE:** This claim is brought against a different Defendant and does not require a response from Defendant. To the extent a response is deemed to be required: Defendant denies.

### COUNT XIV - Tortious Interference With Contract And Business Relationship
### (Against Woodland Tools and Lumino)

253.    Fiskars incorporates by reference the allegations above as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference the responses set forth above as if fully set forth herein.

254.    Fiskars had contractual relationships with Ex-Fiskars Employees.

**RESPONSE:** Defendant lacked knowledge or information at the relevant times sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

255.    Woodland Tools and Lumino interfered with Fiskars contractual relationships by targeting and hiring the Ex-Fiskars Employees to perform work in contravention of the Fiskars' Ex-Employees obligations under the terms of the Fiskars Non-Compete Agreements.

**RESPONSE:** Defendant denies.

256.    Woodland Tools and Lumino intended to interfere with Fiskars contractual relationship by its hiring of the Ex-Fiskars Employees so that they could benefit from the

Ex-Fiskars Employees knowledge and information that they are obligated not to share under the terms of the Fiskars Non-Compete Agreements.

**RESPONSE:** Defendant denies.

257.    As a result of Woodland Tools and Lumino's hiring of the Ex-Fiskars Employees, Fiskars has been damaged in an amount to be proven with specificity at trial, because they have been deprived the benefits of the Fiskars Non-Compete Agreements with the Ex-Fiskars Employees.

**RESPONSE:** Defendant denies.

258.    Woodland Tools and Lumino are not justified or privileged to interfere with Fiskars agreements with the Ex-Fiskars Employees.

**RESPONSE:** Defendant denies as stated and phrased by Plaintiffs.

## **AFFIRMATIVE DEFENSES**

Defendant Woodland Tools, Inc. ("Defendant") alleges and asserts the following defenses in response to Plaintiffs' allegations. Defendant specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery. Defendant incorporates herein by reference the admissions and denials contained in its Answer above and below as if fully set forth herein.

1.    Defendant does not infringe and has not infringed any valid claim of the '969 Patent literally, directly, indirectly, contributorily, by way of inducement, or under the doctrine of equivalents.

2.    Defendant does not infringe and has not infringed any valid claim of the '828 Patent literally, directly, indirectly, contributorily, by way of inducement, or under the doctrine of equivalents.

3.    Defendant does not infringe and has not infringed any valid claim of the '882 Patent literally, directly, indirectly, contributorily, by way of inducement, or under the doctrine of equivalents.

4.      Defendant does not infringe and has not infringed any valid claim of the '635 Patent literally, directly, indirectly, contributorily, by way of inducement, or under the doctrine of equivalents.

5.      Defendant's Accused Product (Woodland Tools Co. Super Duty Pruner), does not infringe and has not infringed any valid claim of the '635 Patent literally, directly, indirectly, contributorily, by way of inducement, or under the doctrine of equivalents.

6.      The claims of the '969 Patent are invalid for failing to meet one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*, including, but not limited to, sections 102 and 103.

7.      The claims of the '828 Patent are invalid for failing to meet one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*, including, but not limited to, sections 102, 103, 115, and 116.

8.      The claims of the '882 Patent are invalid for failing to meet one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*, including, but not limited to, sections 102, 103, 115, and 116.

9.      The claims of the '635 Patent are invalid for failing to meet one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*, including, but not limited to, sections 102, 103, and 112. Notably, but not exclusively, at least claim 1 of the '635 Patent is invalid under the "on-sale" bar of 35 U.S.C. Sec. 102(a)(1), as anticipated by, among other things, Fiskars' own prior sales of its own products.

10.     The claims of the '635 Patent are invalid under § 102(a)(1) as anticipated by prior art or, in the alternative, invalid under § 103 as obvious over prior art.

11.     Plaintiffs are estopped from construing any valid and enforceable claim of the '969 Patent to cover or include, either literally or by application of the doctrine of equivalents, devices

manufactured, used, sold, offered for sale, or imported by Defendant, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '969 Patent and/or because of the language in the specification and/or limitations in the claims of the '969 Patent.

12.     Plaintiffs are estopped from construing any valid and enforceable claim of the '828 Patent to cover or include, either literally or by application of the doctrine of equivalents, devices manufactured, used, imported, sold, or offered for sale, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '828 Patent and/or because of the language in the specification and/or limitations in the claims of the '828 Patent.

13.     Plaintiffs are estopped from construing any valid and enforceable claim of the '882 Patent  to cover or include, either literally or by application of the doctrine of equivalents, devices manufactured, used, sold, offered for sale, or imported by Defendant, or methods used by Defendant, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '882 Patent and/or because of the language in the specification and/or limitations in the claims of the '882 Patent.

14.     Plaintiffs are estopped from construing any valid and enforceable claim of the '635 Patent to cover or include, either literally or by application of the doctrine of equivalents, devices manufactured, used, sold, offered for sale, or imported by Defendant, or methods used by Defendant, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '635 Patent  and/or because of the language in the specification and/or limitations in the claims of the '635 Patent.

15.     Plaintiffs' claims are barred in whole or in part by 35 U.S.C. § 286.

16.     Plaintiffs' claims are barred in whole or in part by one or more of the doctrines of waiver, unclean hands, laches, estoppel, and/or acquiescence.

17.     Plaintiffs' claims are barred in whole or in part by 35 U.S.C. § 252 because Defendant has acquired intervening rights (absolute and/or equitable).

18.     Plaintiffs are not entitled to injunctive relief because, among other reasons, any alleged injury to Plaintiffs are not immediate or irreparable, and Plaintiffs have an adequate remedy at law.

19.     Plaintiffs have failed to take reasonable action to mitigate the loss, injury, or damage allegedly suffered, if any, and any recovery must be barred or diminished by reason thereof.

20.     To the extent Plaintiff, or any assignee, failed to properly mark any of its relevant products as required by 35 U.S.C. § 287 or otherwise give proper notice that Defendant's actions allegedly infringed any claim of the asserted patent, Defendant is not liable to Plaintiff for the acts alleged to have been performed before Defendant received notice that it was allegedly infringing the asserted patent.

21.     Some or all of Plaintiffs' claims for damages are statutorily barred, in whole or in part, based on 35 U.S.C. § 273.

22.     Plaintiffs are barred by 35 U.S.C. § 288 from recovering any costs associated with this action.

23.     Plaintiffs have failed to state a claim upon which relief can be granted.

24.     Plaintiffs' claims based on the Fiskars Brands Non-Compete Agreements [Dkts. 1-1, 1-2, and 1-3; Dkts. 33-2, 33-3, 33-4] are invalid and barred because the contracts are invalid and unenforceable under Wisconsin law, including under Wis. Stat. § 103.465.

25.     Plaintiffs' claims relating to or relying upon the validity and enforceability of the Fiskars Brands Non-Compete Agreements [Dkts. 1-1, 1-2, and 1-3; Dkts. 33-2, 33-3, 33-4],

including Plaintiffs' causes of action for tortious interference with a contract, are void and must be dismissed because the contracts are invalid and unenforceable under Wisconsin law, including under Wis. Stat. § 103.465.

26.     Plaintiffs' claims for misappropriation of purported trade secrets are asserted in violation of Wis. Stat. § 134.90(4)(c), and on that basis Plaintiffs may be held liable for Defendant's fees and costs incurred in defending this action.

27.     Plaintiffs' attempt to enforce restrictive covenants they know to be unenforceable is frivolous under Wis. Stat. § 895.044, Wis. Stat. § 802.05, and/or Fed. R. Civ. P. 11.

28.     Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

**WHEREFORE**, Defendant Woodland Tools, Inc. ("Defendant") respectfully requests an order as follows:

A.     dismissing all of Plaintiffs' claims with prejudice and denying all relief requested by Plaintiff;

B.     determining that the '969, '828, '882, and '635 Patents are not infringed by any products of Defendant;

C.     Determining that the claims of the '969, '828, '882, and '635 Patents are invalid;

D.     Determining that Plaintiffs are not entitled to any damages, and any claim by Plaintiffs to damages is additionally barred or limited by the provisions of 35 U.S.C. § 287, 35 U.S.C. § 273, and/or one or more of other affirmative defenses;

54

E.  Determining that the Complaint was brought without adequate pre-filing investigation and without a reasonable basis as to the allegations against Defendants;

F.  Denying all of Plaintiffs' requests for injunctive relief;

G.  Awarding Defendant its reasonable attorney's fees and costs; and

H.  Awarding Defendant such other and further relief as the Court deems just and proper.

<b><u>COUNTERCLAIMS</u></b>

Without admitting any of the allegations of the First Amended Complaint other than those expressly admitted herein, and without prejudice, Defendant hereby asserts the following counterclaims against Plaintiffs and Counterclaim Defendants Fiskars Finland Oy Ab and Fiskars Brands, Inc.:

<b><u>PARTIES</u></b>

1.  Defendant and Counterclaimant Woodland Tools, Inc. ("Woodland Tools") is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business at 709 Post Road, Madison, Wisconsin 53713.

2.  Plaintiff and Counterclaim-Defendant Fiskars Finland Oy Ab is a Finnish Joint Stock Company with its principal place of business located at Keilaniementie 10, P.O. Box 91, FI-02151 Espoo, Finland.

3.  Plaintiff and Counterclaim-Defendant Fiskars Brands Inc. is a Wisconsin corporation with its principal place of business located at 7800 Discovery Drive, Middleton, Wisconsin 53562.

4.    Collectively, Fiskars Finland and Fiskars Brands will be referred to as "Plaintiffs" or "Fiskars" for the purposes of these Counterclaims.

5.    By filing its Complaint, Fiskars has consented to the personal jurisdiction of this Court.

6.    In view of the filing by Fiskars of this suit and Woodland Tools' defenses, there exists an actual and justiciable controversy between the parties regarding the validity and alleged infringement of United States Design Patent Numbers D720,969 (the "'969 Patent"), D684,828 (the "'828 Patent"), and D764,882 (the "'882 Patent"), and United States Utility Patent Number 10,321,635 (the "'635 Patent"). (The '969 Patent, '828 Patent, and '882 Patent will be collectively referred to herein as the "Asserted Patents").

7.    Subject matter jurisdiction is proper under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, concerning action related to patents, and 28 U.S.C. § 1331 and 1338.

8.    Venue is proper in this Court, including under 28 U.S.C. § 1391(c) and §1400(b)

9.    Woodland Tools makes and sells various gardening tools, including but not limited to hedge shears, loppers, pruners, saws, snips and shears.

10.    Woodland Tools maintains a publicly-available website at the following web address: https://woodlandtools.com/ (the "Woodland Tools Website").

11.    For years, Woodland Tools has strived to create gardening tools that work with the user, not against the user, and to make yard work accessible and enjoyable.

12.    Woodland Tools employs a simple, no-nonsense approach to designing and making gardening tools that are efficient, versatile, and tough.

13.    Woodland Tools believes in and practices responsible product design and donates a portion of all sales to create a better world in partnership with 1% for the Planet.

14.     Woodland Tools created designs for approximately 20 different products that were part of its initial product portfolio.

15.     Woodland Tools' designs were independently created and were not based on prior designs from Plaintiffs or any other entity selling gardening tools; rather, Woodland Tools worked to create its own designs to create a better experience for the end user.

16.     Woodland Tools sourced and paid for tooling to manufacture each of the approximately 20 products in this initial portfolio.

17.     Woodland Tools identified and established relationships with numerous suppliers to provide the materials and services necessary to make Woodland Tools' products and bring them to market.

18.     This initial product portfolio from Woodland Tools has been well-received by the market.

19.     This positive reception in the market is reflected in numerous 5-star reviews for Woodland Tools' initial portfolio of products.

**Plaintiffs' Letters to Woodland Tools' Suppliers**.

20.     Plaintiffs have sent multiple separate letters to known suppliers of Woodland Tools.

21.     On or about July 27, 2022, Plaintiffs sent a letter to Shang Gu Enterprise Co., Ltd. ("Shang Gu"), a Woodland Tools Supplier.

22.     A true and correct copy of Plaintiffs' letter to Shang Gu is attached to these Counterclaims as **Exhibit 1**.

23.     Plaintiffs' letter dated July 27, 2022, to Shang Gu states, in relevant part, as follows:

While Fiskars appreciates Shang Gu's manufacturing capabilities and would like to continue its partnership, **Fiskars must demand that Shang Gu immediately stop supplying Woodland with garden tools that compete with Fiskars' Products or Improvements** (as defined within the Supply Agreement). Fiskars has spent millions of dollars across the globe in developing, designing, promoting, and

57

protecting Fiskars garden tool products. Fiskars is a pioneer in garden tool creation and sales and these products are the lifeblood of our company which we will vigorously protect.

**Please confirm in writing within seven (7) days of receipt of this letter that Shang Gu has ceased supplying all such garden tool products to Woodland**. In addition, Fiskars asks that Shang Gu provide Fiskars with copies of any supply agreements, purchase orders, or other contracts that Shang Gu has with Woodland regarding Shang Gu's supply of garden tools to Woodland and that a meeting is scheduled between Shang Gu and Fiskars within fourteen (14) days of receipt of this letter to discuss Shang Gu's actions as they relate to Woodland.

Ex. 1, p. 2 (emphasis added).

24.     On or about October 18, 2022, Plaintiffs sent another letter to Shang Gu, a Woodland Tools Supplier.

25.     A true and correct copy of Plaintiffs' letter dated October 18, 2022, to Shang Gu is attached to these Counterclaims as **Exhibit 2**.

26.     Plaintiffs' letter dated October 18, 2022, to Shang Gu states, in relevant part, as follows:

It is our understanding that Shang Gu Enterprise Co., Ltd. ("Shang Gu") has been manufacturing the Woodland Tools Compact Bypass and Woodland LeverAction Hedge Shears. These garden tools have adopted major aspects of the designs in Fiskars garden tools and have an overall appearance that is confusingly similar and substantially the same as in the corresponding Fiskars garden tools. […] Fiskars has serious concerns that Shang Gu is potentially contributing to Woodland's infringement of Fiskars' intellectual property rights by using Fiskars' intellectual property rights and proprietary and confidential information in the manufacturing of Woodland's garden tools—actions that are also prohibited under the Supply Agreement.

While Fiskars appreciates Shang Gu's manufacturing capabilities and would like to continue its partnership, Fiskars must demand that Shang Gu immediately stop supplying Woodland with the Woodland Compact Bypass and Woodland LeverAction Hedge Shears and honours its agreement with Fiskars. Failing to do so will have severe consequences to the business relationship between Fiskars and Shang Gu.

Ex. 2, pp. 1-2.

27.     There has been no determination that any of Woodland Tools' products infringe any of Plaintiffs' purported intellectual property.

28.     On or about October 18, 2022, Plaintiffs sent a letter to Rhinoceros Manufacturing (Zhongshan) Ltd. ("Rhinoceros"), a Woodland Tools Supplier.

29.     A true and correct copy of Plaintiffs' letter dated October 18, 2022, to Rhinoceros is attached to these Counterclaims as **Exhibit 3**.

30.     Plaintiffs' October 18, 2022 letter states in part as follows:

It is our understanding that Rhinoceros Manufacturing (Zhongshan) Ltd. ("Rhinoceros") has been manufacturing the Woodland Tools Super Duty Bypass Pruner. At a minimum, Woodland Tools Super Duty Bypass Pruners meet every limitation in claim 1 of the Patent No. 10,321,635 and is therefore infringing. As communicated earlier on, Fiskars is not only concerned about the supply of competing products to Woodland in contravention of the Frame Supply Agreement between Fiskars and Rhino dated August 8, 2019 ("Supply Agreement"), but Fiskars has serious concerns that Rhino is potentially contributing to Woodland's infringement of Fiskars' intellectual property rights by using Fiskars' intellectual property rights and proprietary and confidential information in the manufacturing of Woodland's garden tools—actions that are also prohibited under the Supply Agreement. […]

Fiskars must demand that Rhinoceros immediately stop supplying Woodland with the Woodland Tools Super Duty Bypass Pruner and honours its agreement with Fiskars. Failing to do so will have severe consequences to the business relationship between Fiskars and Rhinoceros. Please confirm in writing within seven (7) days of receipt of this letter that Rhinoceros has ceased manufacturing and supplying the disputed garden tool to Woodland. Should you fail to respond to this letter and cease manufacturing the disputed garden tool, legal proceedings may be commenced against Rhinoceros without further notice.

Ex. 3, pp. 1-2.

31.     Upon information and belief, Plaintiffs have directed similar additional letters and/or similar communications to other suppliers of Woodland Tools, including but not limited to a similar letter to a Woodland Tools supplier called United Jumbo Co. LTD. ("United Jumbo"), separate from and in addition to those described above.

32.     Upon information and belief, Plaintiffs have made multiple attempts to get Shang Gu, Rhinoceros, United Jumbo, (and other entities) to end their business relationships with Woodland Tools.

33.     Upon information and belief, Plaintiffs have made multiple attempts to get Shang Gu, Rhinoceros, United Jumbo, (and other entities) to stop supplying goods and/or services to Woodland Tools.

34.     Upon information and belief, Plaintiffs have made multiple attempts to obtain confidential information relating to Woodland Tools through Shang Gu, Rhinoceros, United Jumbo, and others, including pressuring Shang Gu, Rhinoceros, and/or United Jumbo, among others to produce, among other things, the confidential supply agreements with Woodland Tools, confidential purchase agreements with Woodland Tools, and other contracts relating to the manufacture and supply of garden tools.

**Facts Related to Plaintiffs' False Claims as to Where Plaintiffs' Products Were Designed.**

35.     Upon information and belief, one or more of Plaintiffs' products falsely represent to consumers that the product(s) were designed in the USA, when in fact the products were designed outside of the United States.

36.     Plaintiffs' original Complaint expressly states that: "The first set of pruners above (Fiskars Pruner 9109) was designed by Fiskars in Finland over 40 years ago." *See* Dkt. 1, ¶ 95.

37.     Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 9109 Pruners:




38.    As shown above, Plaintiffs state on the packaging for the Fiskars 9109 Pruners: "DESIGNED BY FISKARS IN USA."

39.    This statement by Plaintiffs on the packaging for the Fiskars 9019 Pruners that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' express allegation that the Fiskars 9109 Pruners, "[were] designed by Fiskars in Finland over 40 years ago."

40.    Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9109 Pruners are false and misleading.

41.    Upon information and belief, the Fiskars 9109 Pruners were actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9109 Pruners falsely represents that the product was designed in the USA.

42.    Plaintiffs' original Complaint expressly states that: "The second set of pruners above (Fiskars Bypass Pruner 9688) was originally <u>designed</u> by a Chinese manufacturer in China and innovated upon by Fiskars in Finland over 14 years ago." *See* Dkt. 1, ¶ 96 (emphasis in original).

43.    Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 9688 Pruners:



44.    As shown above, Plaintiffs state on the packaging for the Fiskars 9688 Pruners: "DESIGNED BY FISKARS IN USA."

45.     This statement by Plaintiffs on the packaging for the Fiskars 9688 Pruners that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' express allegation that the Fiskars 9688 Pruners, "[were] originally <u>designed</u> by a Chinese manufacturer in China and innovated upon by Fiskars in Finland over 14 years ago."

46.     Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9688 Pruners are false and misleading.

47.     Upon information and belief, the Fiskars 9688 Pruners were actually designed in China, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9688 Pruners falsely represents that the product was designed in the USA.

48.     Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 7936 Pruners:



49.     As shown above, Plaintiffs state on the packaging for the Fiskars 7936 Pruner: "DESIGNED BY FISKARS IN USA."

63

50.     U.S. Patent No. 5,697,159 indicates that the Fiskars 7936 Pruner was designed in Finland over 25 years ago, including because the inventor, Erkki Olavi Linden, is located in Billinas, Finland.

51.     The statement by Plaintiffs on the packaging for the Fiskars 7936 Pruner that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' representations to the U.S.P.T.O. that the Fiskars 7936 Pruners were designed and invented in Finland.

52.     Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 7936 Pruners are false and misleading.

53.     Upon information and belief, the Fiskars 7936 Pruners were actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 7936 Pruners falsely represents that the product was designed in the USA.

54.     Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 9189 Hedge Shears:



55.     As shown above, Plaintiffs state on the packaging for the Fiskars 9189 Hedge Shears: "DESIGNED BY FISKARS IN USA."

56.     U.S. Utility Patent No. 6,789,888 indicates that the 9189 Hedge Shears were designed in Finland, including because the inventor, Erkki Olavi Linden, is located in Billinas, Finland.

57.     The statement by Plaintiffs on the packaging for the Fiskars 9189 Hedge Shears that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' representations to the U.S.P.T.O. that the Fiskars 9189 Hedge Shears were designed and invented in Finland.

58.     Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9189 Hedge Shears are false and misleading.

59.     Upon information and belief, the Fiskars 9189 Hedge Shears were actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9189 Hedge Shears falsely represents that the product was designed in the USA.

60.     Below are true and correct photographs of Plaintiffs' marketing materials and the packaging for the Fiskars 9286 Hedge Shears:





61.    As shown above, Plaintiffs state on the packaging for the Fiskars 9286 Hedge Shears: "DESIGNED BY FISKARS IN USA."

62.    U.S. Utility Patent No. 6,789,324 indicates that the 9286 Hedge Shears were designed in Finland, including because the inventor, Erkki Olavi Linden, is located in Billinas, Finland.

63.    The statement by Plaintiffs on the packaging for the Fiskars 9286 Hedge Shears that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' representations to the U.S.P.T.O. that the Fiskars 9286 Hedge Shears were designed and invented in Finland.

64.    Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9286 Hedge Shears are false and misleading.

65. Upon information and belief, the Fiskars 9286 Hedge Shears were actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9286 Hedge Shears falsely represents that the product was designed in the USA.

66. Below are true and correct photographs of the actual packaging for the Fiskars 9117 Pruners:



67. As shown above, Plaintiffs state on the packaging for the Fiskars 9117 Pruners: "DESIGNED BY FISKARS IN USA."

68. U.S. Patent No. D716,115 indicates that the Fiskars 9117 Pruners were designed in Finland, including because the named applicants, named inventors, and the listed assignee are all located in Finland.

69. The statement by Plaintiffs on the packaging for the Fiskars 9117 Pruners that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs' representations to the U.S.P.T.O. that the Fiskars 9117 Pruners were designed and invented in Finland.

70.     Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9117 Pruners are false and misleading.

71.     Upon information and belief, the Fiskars 9117 Pruners were actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9117 Pruners falsely represents that the product was designed in the USA.

72.     Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 9132 Lopper:



73.     As shown above, Plaintiffs state on the packaging for the Fiskars 9132 Lopper: "DESIGNED BY FISKARS IN USA."

74.     U.S. Patent No. 5,570,510 indicates that the Fiskars 9132 Lopper was designed in Finland, including because the named inventor, Erkki Olavi Linden, is located in Billinas, Finland.

75.     The statement by Plaintiffs on the packaging for the Fiskars 9132 Lopper that the product was "designed by Fiskars in USA" is directly inconsistent and incompatible with Plaintiffs'

68

representations to the U.S.P.T.O. that the Fiskars 9132 Lopper was designed and invented in Finland.

76.　　Upon information and belief, the statement or statements made by Plaintiffs on the packaging for the Fiskars 9132 Lopper are false and misleading.

77.　　Upon information and belief, the Fiskars 9132 Lopper was actually designed in Finland, but Plaintiffs' packaging and/or marketing materials for the Fiskars 9132 Lopper falsely represents that the product was designed in the USA.

**Plaintiffs' False Claims About the Characteristics and Performance of Its Products**.

78.　　Upon information and belief, the packaging and/or marketing materials for one or more of Plaintiffs' products falsely represent to consumers the features and characteristics of Plaintiffs' products.

79.　　Plaintiffs represent on the packaging and/or marketing materials for the Fiskars 7936 Pruners that the product, "Cuts 3X easier," and has, "3X More Power, Less Effort," as shown in the photograph in Paragraph 48 of these Counterclaims, above.

80.　　The text that Plaintiffs drafted that appears on the product page for the Fiskars 7936 Pruners on Amazon.com contains at least the following representations about the Fiskars 7936 Pruner: (i) "Patented gearing technology makes cutting three times easier!"; (ii) "This makes every cut three times easier than traditional single-pivot tools."; (iii) "PowerGear non-circular gearing technology multiplies leverage to make cutting up to three times easier than single-pivot tools," including as shown on the following web site: https://www.amazon.com/Fiskars-79366939J-PowerGear-Pruner/dp/B00004SD72.

81.　　Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 7936 Pruner, the Fiskars 7936 Pruners do not provide three

times more power than earlier versions of Fiskars' similar pruners or than other competitive pruners on the market.

82.     Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 7936 Pruner, the Fiskars 7936 Pruners do not provide three times more power than a typical single-pivot pruner on the market.

83.     Upon information and belief, the Fiskars 7936 Pruners provide less than twice the amount of cut force than earlier versions of Fiskars' similar pruners or than other competitive pruners on the market.

84.     Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 7936 Pruners do not provide "three times more power" than other similar and/or competitive pruners on the market.

85.     Upon information and belief, Plaintiffs' statements and representations that the Fiskars 7936 Pruners "Cuts 3X easier," and delivers "3X More Power, Less Effort," and similar statements, are false and misleading.

86.     Upon information and belief, Plaintiffs make similar false and misleading claims on its packaging and/or marketing materials for various products listed below, among others, that the respective products provide, "four times more power," "3x more power" and/or "2x more power."

87.     Upon information and belief, Plaintiffs also make false and misleading claims on its packaging and/or marketing materials for various products listed below, including, among others, that the products have "titanium blade coating."

88.     Plaintiffs' packaging and/or marketing materials for the 9154 Lopper (as sold to Menards under product number 9154) represents that the product "Cuts 3X Easier."

89.    Plaintiffs' own webpage for the 9154 Lopper represents that the product, "multiplies your leverage **to give you up to three times more power** on every cut," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/loppers/powergear-lopper-32-391541-1002.

90.    Plaintiffs' packaging and marketing materials for the 9154 Lopper do not identify what product Plaintiffs compared the 9154 Lopper against to substantiate its claim that the 9154 Lopper provides three times more power.

91.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the 9154 Lopper, the 9154 Lopper does not provide three times more power than earlier versions of Fiskars' similar loppers or than other competitive loppers on the market.

92.    Upon information and belief, independent testing by a third-party lab would confirm that the 9154 Lopper does not provide "three times more power" than other similar and/or competitive loppers on the market.

71

93.     Upon information and belief, Plaintiffs' statements and representations that the 9154 Lopper provides "3X More Power," and similar statements, are false and misleading.

94.     Plaintiffs' packaging and/or marketing materials for the Fiskars 9480 Lopper (as sold to Home Depot, Lowes, and through Amazon.com under product number 9480) represents that the product provides "3X More Power," and represents that the product has "Titanium Blade Coating," including as shown in the text that Plaintiffs drafted that appears on the following websites:

    a.  https://www.homedepot.com/p/32-in-PowerGear2-Bypass-Titanium-Lopper-394802-1001/2G5667346?ITC=AUC-141294-23-12140#overlay; and

    b.  https://www.amazon.com/Fiskars-32-lnch-PowerGear2-Lopper/dp/B00QMWETPM/ref=sr_1_6?crid=2EU6R4FVNKJZJ&keywords=fiskars+powergear+2&qid=1664427656&qu=eyJxc2MiOilxLjQ0liwicXNhljoiMS41MSIslnFzcCI6ljEuNDUifQ%3D%3D&sprefix=fiskars+powergear+2%2Caps%2C116&sr=8-6.

95.     Plaintiffs' own webpage for the Fiskars 9480 Lopper represents that the product, "provid[es] up to **3x more power on every cut**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/loppers/powergear2-lopper-32-394801-1004.

96.     Plaintiffs created and posted a video available to the public on YouTube representing that various Fiskars products including the Fiskars 9480 Lopper provide "up to 3x more cutting power"; the video is available at the following web address: https://www.youtube.com/watch?v=LEJuO3ShFcU.

97.     Plaintiffs' packaging and marketing materials for the Fiskars 9480 Lopper do not identify what product Plaintiffs compared the Fiskars 9480 Loppers against to substantiate its claim that the Fiskars 9480 Lopper provides three times more power.

98.     Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9480 Lopper, the Fiskars 9480 Lopper does not provide three times more power than earlier versions of Fiskars' similar loppers or than other competitive loppers on the market.

99.     Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 9480 Lopper does not provide "three times more power" than other similar and/or competitive loppers on the market.

100.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9480 Lopper, the product does not have titanium blade coating.

101.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 9480 Lopper provides "3X More Power," and has "Titanium Blade Coating," and similar statements, are false and misleading.

102.    Plaintiffs' packaging and/or marketing materials for the Fiskars 9279 Hand Pruners (as sold to Home Depot, Lowes, and through Amazon.com under product number 9279) represents that the product provides "3X More Power," "give you up to 3X more power on every cut," and

73

represents that the product has "Titanium Blade Coating," including as shown in the text that Plaintiffs drafted that appears on the following websites:

    a.  https://www.homedepot.com/p/Fiskars-3-4-in-Cut-Capacity-Titanium-Coated-Blade-PowerGear-2-Bypass-Pruner-392792-1001/205667349;

    b.  https://www.lowes.com/pd/Fiskars-Ultrasharp-Steel-Bypass-Hand-Pruner-with-Standard-Handle/1001459812; and

    c.  https://www.amazon.com/Fiskars-391043-1001-PowerGear2-UltraBladePruner/dp/B00SJEUKHW/ref=sr_1_6?crid=24HMD2TMZ3TK4&keywords=fiskars%2Bpowergear%2B2&qid=1664427809&qu=eyJxc2MiOilxLjQ0Iiwic XNhljoiMS41MSIslnFzcCI6ljEuNDUifQ%3D%3D&sprefix=fiskars%2Bpowerg ear%2B2%2Caps%2C114&sr=8-6&th=lW

103.    Plaintiffs' own webpage for the Fiskars 9279 Hand Pruners represents that the product, "provid[es] up to **3x more power on every cut**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/pruning-shears/powergear2-softgrip-pruner-392791-1001.

104.    Plaintiffs created and posted a video available to the public on YouTube representing that various Fiskars products including the 9279 Hand Pruners provide "up to 3x more cutting power"; the video is available at the following web address: https://www.youtube.com/watch?v=LEJuO3ShFcU.

105.    Plaintiffs' packaging and marketing materials for the 9279 Hand Pruners do not identify what product Plaintiffs compared the 9279 Hand Pruners against to substantiate its claim that the 9279 Hand Pruners provide three times more power.

106.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the 9279 Hand Pruners, the 9279 Hand Pruners do not provide three times more power than earlier versions of Fiskars' similar pruners or than other competitive pruners on the market.

107.    Upon information and belief, independent testing by a third-party lab would confirm that the 9279 Hand Pruners do not provide "three times more power" than other similar and/or competitive pruners on the market.

108.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the 9279 Hand Pruners, the product does not have titanium blade coating.

109.    Upon information and belief, Plaintiffs' statements and representations that the 9279 Hand Pruners provide "3X More Power," "give you up to 3X more power on every cut," and has "Titanium Blade Coating," and similar statements, are false and misleading.

110.    Plaintiffs' packaging and/or marketing materials for the Fiskars 9286 Hedge Shears (as sold to Home Depot, Lowes, and through Amazon.com under product number 9286) represents that the product provides "3X More Power," and represents that the product has "Titanium Blade Coating," including as shown in the text that Plaintiffs drafted that appears on the following websites:

    a.  https://www.homedepot.com/p/Fiskars-Titanium-Coated-Blades-23-in-PowerGear-2-Hedge-Shears-392862/205667362;

    b.  https://www.lowes.com/pd/Fiskars-10-in-Standard-Hedge-Shears/1001459994

    c.  https://www.amazon.com/Fiskars-Garden-392861-1002-Powergear2-Shears/dp/B00LY5IX40/ref=sr_1_2?crid=3P662993XIY6&keywords=fiskars+powergear+hedge+shear&qid=1669154262&sprefix=fiskars+powergear+hedge+shea%2Caps%2C114&sr=8-2

111.    Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 9286 Hedge Shears:



112.    Plaintiffs' own webpage for the Fiskars 9286 Hedge Shears represents that the product, "provid[es] up to **3x more power on every cut**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/hedge-shears/powergear2-hedge-shears-23-392861-1006.

113.    Plaintiffs created and posted a video available to the public on YouTube representing that various Fiskars products including the Fiskars 9286 Hedge Shears provide "up to 3x more cutting power"; the video is available at the following web address: https://www.youtube.com/watch?v=LEJuO3ShFcU.

114.    Plaintiffs' packaging and marketing materials for the Fiskars 9286 Hedge Shears do not identify what product Plaintiffs compared the Fiskars 9286 Hedge Shears against to substantiate its claim that the Fiskars 9286 Hedge Shears provide three times more power.

115.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9286 Hedge Shears, the Fiskars 9286 Hedge Shears do not provide three times more power than earlier versions of Fiskars' similar loppers or than other competitive loppers on the market.

116.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 9286 Hedge Shears do not provide "three times more power" than other similar and/or competitive loppers on the market.

117.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9286 Hedge Shears, the product does not have titanium blade coating.

118.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 9480 Lopper provides "3X More Power," and has "Titanium Blade Coating," and similar statements, are false and misleading.

119.    Plaintiffs' packaging and/or marketing materials for the Fiskars 7972 Lopper (as sold to Home Depot and Lowes under product number 7972) represents that the product provides "3X More Power" and "give[s] you up to four times more power on every cut," including as shown in the text that Plaintiffs drafted that appears on the following websites:

   a.   https://www.homedepot.com/p/Fiskars-1-1-4-in-Cut-Capacity-Titanium-Coated-Steel-Blade-15-in-PowerGear-Anvil-Lopper-379722-1007/202589054

   b.   https://www.lowes.com/pd/Fiskars-PowerGear-10-9-in-Carbon-Steel-Compound-Anvil-Lopper/1001026602.

120.    Plaintiffs' own webpage for the Fiskars 7972 Lopper represents that the product, "multiplies your leverage to give you **up to three times more power on every cut**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/loppers/powergear-super-prunerlopper-15-379721-1005.

121.    Plaintiffs' packaging and marketing materials for the Fiskars 7972 Lopper do not identify what product Plaintiffs compared the Fiskars 7972 Lopper against to substantiate its claim that the Fiskars 7972 Lopper provides three times more power.

122.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 7972 Lopper, the Fiskars 7972 Lopper does not provide three times more power than earlier versions of Fiskars' similar loppers or than other competitive loppers on the market.

123.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 7972 Lopper does not provide "three times more power" than other similar and/or competitive loppers on the market.

124.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 7972 Lopper provides "3X More Power" and "give[s] you up to four times more power on every cut," and similar statements, are false and misleading.

125.    Plaintiffs' packaging and/or marketing materials for the Fiskars 9398 Tree Pruners (as sold to Home Depot, Lowes, and Menards under product number 9398) represents that the product provides "2X More Power," including as shown in the text that Plaintiffs drafted that appears on the following website: https://www.homedepot.com/p/Fiskars-PowerLever-1-1-8-in-Cut-Capacity-Steel-Saw-Blade-15-in-Fiberglass-Pole-14-ft-Tree-Pruner-393981-1002/300412758#overlay.

126.    Plaintiffs' own webpage for the Fiskars 9398 Tree Pruners represents that the product, "increases leverage to give you up to **two times more power**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/tree-pruners/power-lever-extendable-pole-saw-pruner-714-393981-1003.

127.     Plaintiffs' packaging and marketing materials for the Fiskars 9398 Tree Pruners do not identify what product Plaintiffs compared the 9398 Tree Pruners against to substantiate its claim that the 9398 Tree Pruners provide two times more power.

128.     Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9398 Tree Pruners, the Fiskars 9398 Tree Pruners do not provide two times more power than earlier versions of Fiskars' similar tree pruners or than other competitive tree pruners on the market.

129.     Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 9398 Tree Pruners do not provide two times more power than other similar and/or competitive tree pruners on the market.

130.     Upon information and belief, Plaintiffs' statements and representations that the Fiskars 9398 Tree Pruners provide "2X More Power," and similar statements, are false and misleading.

131.     Plaintiffs' packaging and/or marketing materials for the Fiskars 394732 Tree Pruners (as sold to Home Depot under product number 394732) represents that the product "Cuts up to 3X easier," and "gives you up to 3 times more cutting power," including as shown in the text that Plaintiffs drafted that appears on the following website: https://www.homedepot.com/p/Fiskars-1-25-in-Cut-Capacity-Steel-Titanium-Coated-Cutting-Blade-15-in-Fiberglass-Alum-Pole-Chain-Drive-16-ft-Tree-Pruner-394732/314912738.

132.     Plaintiffs' own webpage for the Fiskars 394732 Tree Pruners represents that the product, "gives you up to **3X more cutting power**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/tree-pruners/chain-drive-extendable-pole-saw-pruner-716-394731-1001.

133.    Plaintiffs' packaging and marketing materials for the Fiskars 394732 Tree Pruners do not identify what product Plaintiffs compared the Fiskars 394732 Tree Pruners against to substantiate its claim that the Fiskars 394732 Tree Pruners provide three times more cutting power.

134.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 394732 Tree Pruners, the Fiskars 394732 Tree Pruners do not provide three times more cutting power than earlier versions of Fiskars' similar tree pruners or than other competitive pruners on the market.

135.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 394732 Tree Pruners do not provide three times more cutting power than other similar and/or competitive tree pruners on the market.

136.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 394732 Tree Pruners provide "Cuts up to 3X easier," and "gives you up to 3 times more cutting power," and similar statements, are false and misleading.

137.    Plaintiffs' packaging and/or marketing materials for the Fiskars 9440 Tree Pruners (as sold to Costco under product number 9440) represents that the product "Cuts up to 2X easier."

138.    Plaintiffs' packaging and marketing materials for the Fiskars 9440 Tree Pruners do not identify what product Plaintiffs compared the Fiskars 9440 Tree Pruners against to substantiate its claim that the Fiskars 9440 Tree Pruners cut up to two times easier.

139.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 9440 Tree Pruners, the Fiskars 9440 Tree Pruners do not cut up to two times easier than earlier versions of Fiskars' similar tree pruners or than other competitive pruners on the market.

140.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 9440 Tree Pruners do not cut up to two times easier than other similar and/or competitive tree pruners on the market.

141.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 9440 Tree Pruners "Cut[s] up to 2X easier," and similar statements, are false and misleading.

142.    Plaintiffs' packaging and/or marketing materials for the Fiskars 9110 Hand Pruners (as sold to Home Depot under product number 9110) represents that the product provides "2X More Power," including as shown in the text that Plaintiffs drafted that appears on the following website: https://www.homedepot.com/p/Fiskars-5-8-in-Cut-Capacity-Titanium-Coated-Steel-Blade-Anvil-Hand-Pruner-391102-1004/206397842#overlay.

143.   Plaintiffs' packaging and marketing materials for the 9110 Hand Pruners do not identify what product Plaintiffs compared the 9110 Hand Pruners against to substantiate its claim that the Fiskars 9110 Hand Pruners provide two times more power.

144.   Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the 9110 Hand Pruners, the 9110 Hand Pruners do not provide two times more power than earlier versions of Fiskars' similar tree pruners or than other competitive pruners on the market.

145.   Upon information and belief, independent testing by a third-party lab would confirm that the 9110 Hand Pruners do not provide two times more power than other similar and/or competitive tree pruners on the market.

146.   Upon information and belief, Plaintiffs' statements and representations that the 9110 Hand Pruners provide "2X More Power," and similar statements, are false and misleading.

147.   Plaintiffs' packaging and/or marketing materials for the Fiskars 23 in. Power-Lever Softgrip Hedge Shears represents that the product provides "gives you 2X more cutting power," including as shown in the text that Plaintiffs drafted that appears on the following websites:

    a.   https://www.homedepot.com/p/Fiskars-23-in-Power-Lever-Softgrip-Hedge-Shears-391814-1009/203263954
    b.   https://www.homedepot.com/p/Fiskars-9-in-Power-Lever-Steel-Blade-Telescoping-Steel-Handle-Hedge-Shears-391690/205617374
    c.   https://www.amazon.com/Fiskars-Power-8-Inch-Shears-Handle/dp/B000OZ51U0/ref=sr_1_2?crid=1TD0M1M74AVSL&keywords=fiskars+power+lever+hedge+shear&qid=1669154553&sprefix=fiskars+power+lever+hedge+shea%2Caps%2C100&sr=8-2

148.   Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 23 in. Power-Lever Softgrip Hedge Shears:



149.     Plaintiffs' own webpage for the Fiskars 23 in. Power-Lever Softgrip Hedge Shears represents that the product, "multiplies your leverage to give you up to **two times more cutting power**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/hedge-shears/power-lever-softgrip-hedge-shears-23-391814-1009.

150.    Plaintiffs' packaging and marketing materials for Fiskars 23 in. Power-Lever Softgrip Hedge Shears do not identify what product Plaintiffs compared the Fiskars 23 in. Power-Lever Softgrip Hedge Shears against to substantiate its claim that the Fiskars 23 in. Power-Lever Softgrip Hedge Shears provide two times more cutting power.

151.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 23 in. Power-Lever Softgrip Hedge Shears do not provide two times more power than earlier versions of Fiskars' similar hedge shears or than other competitive tree pruners on the market.

152.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 23 in. Power-Lever Softgrip Hedge Shears do not provide two times more power than other similar and/or competitive hedge shears on the market.

153.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 23 in. Power-Lever Softgrip Hedge Shears provide "2X more cutting power," and similar statements, are false and misleading.

154.    Plaintiffs' packaging and/or marketing materials for the Fiskars 28 in. Power-Lever Bypass Lopper represents that the product provides "gives you 2X more cutting power," including as shown in the text that Plaintiffs drafted that appears on the following websites:

a.   https://www.homedepot.com/p/Fiskars-28-in-Power-Lever-Bypass-Lopper-391381-1004/203273598#overlay
b.   https://www.lowes.com/pd/Fiskars-Power-Lever-25-in-Extendable-Steel-Bypass-Lopper/1001459896
c.   https://www.lowes.com/pd/Fiskars-Power-Lever-21-25-in-Steel-Compound-Bypass-Lopper/3822427
d.   https://www.homedepot.com/p/Fiskars-25-in-37-in-Telescoping-Bypass-Lopper-391681/202256828

155.    Below are true and correct photographs of the actual packaging and Plaintiffs' marketing materials for the Fiskars 28 in. Power-Lever Bypass Lopper:



156.    Plaintiffs' own webpage for the Fiskars 28 in. Power-Lever Bypass Lopper represents that the product, "multiplies your leverage to give you up to **two times more cutting power**," as shown below and as available at the web address listed below:



https://www.fiskars.com/en-us/gardening-and-yard-care/products/loppers/power-lever-lopper-28-391381-1001.

157.    Plaintiffs' packaging and marketing materials for the Fiskars 28 in. Power-Lever Bypass Lopper do not identify what product Plaintiffs compared the Fiskars 28 in. Power-Lever Bypass Lopper against to substantiate its claim that the Fiskars 28 in. Power-Lever Bypass Lopper provide two times more cutting power.

158.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars 28 in. Power-Lever Bypass Lopper, the Fiskars 28 in. Power-Lever Bypass Lopper do not provide two times more power than earlier versions of Fiskars' similar loppers or than other competitive loppers on the market.

159.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars 28 in. Power-Lever Bypass Lopper do not provide two times more power than other similar and/or competitive loppers on the market.

160.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars 28 in. Power-Lever Bypass Lopper provide "2X more cutting power," and similar statements, are false and misleading.

161.    Plaintiffs' packaging and/or marketing materials for the Fiskars Chain Drive Extendable Pole Saw & Pruner represents that the product "Cuts up to 3X easier," including as shown in the text that Plaintiffs drafted that appears on the following website: https://www.amazon.com/Fiskars-Chain-Drive-Extendable-Pruner/dp/B01N5610H6/ref=sr_1_4?crid=22ADA4EF3ECWB&keywords=fiskars+tree+pruner&qid=1669153943&sprefix=fiskars+tree+prune%2Caps%2C173&sr=8-4.

162.    Below is a true and correct photograph of the actual packaging and Plaintiffs' marketing materials for the Fiskars Chain Drive Extendable Pole Saw & Pruner:



163.    Plaintiffs' packaging and marketing materials for the Fiskars Chain Drive Extendable Pole Saw & Pruner does not identify what product Plaintiffs compared the Fiskars Chain Drive Extendable Pole Saw & Pruner against to substantiate its claim that the Fiskars Chain Drive Extendable Pole Saw & Pruner cuts up to three times easier.

164.    Upon information and belief, contrary to Plaintiffs' statements on the packaging and marketing materials for the Fiskars Chain Drive Extendable Pole Saw & Pruner, the Fiskars Chain Drive Extendable Pole Saw & Pruner does not cut up to three times easier than earlier versions of Fiskars' similar tree pruners or than other competitive pruners on the market.

165.    Upon information and belief, independent testing by a third-party lab would confirm that the Fiskars Chain Drive Extendable Pole Saw & Pruner do not cut up to three times easier than other similar and/or competitive tree pruners on the market.

166.    Upon information and belief, Plaintiffs' statements and representations that the Fiskars Chain Drive Extendable Pole Saw & Pruner "Cut[s] up to 3X easier," and similar statements, are false and misleading.

**Facts related to Invalidity of the Asserted Patents**.

167.    Fiskars filed the application that matured into United States Design Patent D720,969 (the "'969 Patent") on April 16, 2014.

168.    Upon information and belief, Fiskars sold or offered for sale products encompassed by the claims of the '969 Patent at least one year before the effective filing date of the '969 Patent.

169.    Upon information and belief, Fiskars described products encompassed by the claims of the '969 Patent in a printed publication at least one year before the effective filing date of the '969 Patent.

170.    Fiskars filed the application that matured into United States Design Patent D764,882 (the "'882 Patent") on August 19, 2014.

171.    Upon information and belief, Fiskars sold or offered for sale products encompassed by the claims of the '882 Patent at least one year before the effective filing date of the '882 Patent.

172.     Upon information and belief, Fiskars described products encompassed by the claims of the '882 Patent in a printed publication at least one year before the effective filing date of the '882 Patent.

173.     With respect to the '882 Patent, upon information and belief, Fiskars failed to name the true inventors and failed to file a declaration naming the true inventors. Plaintiff claims that the products at issue were designed in the United States, but the only named inventors reside in Finland. Products falling within the scope of the '882 Patent cannot have been designed in the United States when the inventors are residents and citizens of Finland.

174.     Fiskars filed the application that matured into United States Design Patent D684,828 ("'828 Patent") on June 12, 2012.

175.     Upon information and belief, Fiskars sold or offered for sale products encompassed by the claims of the '828 Patent at least one year before the effective filing date of the '828 Patent.

176.     Upon information and belief, Fiskars described products encompassed by the claims of the '828 Patent in a printed publication at least one year before the effective filing date of the '828 Patent.

177.     With respect to the '828 Patent, upon information and belief, Fiskars failed to name the true inventors and failed to file a declaration naming the true inventors. Plaintiff claims that the products at issue were designed in the United States, but the only named inventors reside in Finland. Products falling within the scope of the '828 Patent cannot have been designed in the United States when the inventors are residents and citizens of Finland

178.     Fiskars filed the application that matured into United States Patent Number 10,321,635 (the "'635 Patent") on April 18, 2017.

179.     The application filed April 18, 2017, ultimately claims priority to provisional application Serial Number 61/906,754, filed November 20, 2013 (the "effective filing date").

180.    Upon information and belief, Fiskars sold or offered for sale products encompassed by the claims of the '635 Patent at least one year before the effective filing date of the '635 Patent.

181.    Upon information and belief, Fiskars described products encompassed by the claims of the '635 Patent in a printed publication at least one year before the effective filing date of the '635 Patent.

182.    The claims of the '635 Patent lack adequate written description, lack enablement, and are insufficiently definite.

**COUNTERCLAIM ONE**
**TORTIOUS/INTENTIONAL INTERFERENCE WITH CONTRACT**.

183.    Woodland Tools incorporates the facts and allegations in each of the paragraphs of these Counterclaims, above, as if fully set forth herein.

184.    Woodland Tools had a contractual relationship with various suppliers and other third-party entities related to the manufacture and sale of Woodland Tools' products, including but not limited to Shang Gu, Rhinoceros, and United Jumbo.

185.    Fiskars interfered with the contractual relationship Woodland Tools had with various suppliers and other third-party entities related to the manufacture and sale of Woodland Tools' products, including but not limited to Shang Gu, Rhinoceros, and United Jumbo.

186.    Among other things, Fiskars improperly sought to pressure various suppliers and other third-party entities related to the manufacture and sale of Woodland Tools' products, including but not limited to Shang Gu, Rhinoceros, and United Jumbo, to refrain from dealing with Woodland Tools and from fulfilling their obligations to Woodland Tools.

187.    Fiskars' interference, as outlined above, was intentional, Fiskars intended the natural and probable consequences of its acts, and Fiskars knew or should have known that such interference was substantially certain to occur as a result of its conduct.

188.    Fiskars' interference damaged Woodland Tools in an amount to be determined at trial.

189.    Fiskars' conduct was a substantial factor and had a substantial influence in producing the damages claimed by Woodland Tools.

190.    Fiskars was not justified or privileged to interfere with the contractual relationship between Woodland Tools and its various suppliers and other third-party entities related to the manufacture and sale of Woodland Tools' products, including but not limited to Shang Gu, Rhinoceros, and United Jumbo.

**COUNTERCLAIM TWO**
**FALSE ADVERTISING**
**(False Representations of Country of Product Design)**.

191.    Woodland Tools incorporates the facts and allegations in each of the paragraphs of these Counterclaims, above, as if fully set forth herein.

192.    As outlined in part above, Fiskars made false and misleading statements in commercial advertisements about at least the design and origins of at least the following products: (a) Fiskars 9109 Pruners, (b) Fiskars 9688 Pruners, (c) Fiskars 7936 Pruners, (d) Fiskars 9189 Hedge Shears, (e) Fiskars 9286 Hedge Shears, (f) Fiskars 9117 Pruners, and (g) Fiskars 9132 Lopper.

193.    In particular, Fiskars falsely represented that each of the products listed above were designed in the USA, when in fact these products were designed outside of the United States, as confirmed by Fiskars' own statements and representations in this lawsuit and to the U.S.P.T.O.

194.    These statements misrepresent the nature, characteristics, and/or qualities of the design and origins the products listed above, and are expressly false, impliedly false, or both.

195.    The nature, characteristics, and qualities of the design and origins of each of the products listed above are material factors that impact consumer purchasing decisions.

196.    Fiskars' false and misleading statements constitute false advertising in violation of 15 U.S.C. § 1125(a).

197.    Fiskars has knowingly induced and/or caused third parties, including retailers, to engage in additional acts of false advertising by repeating Fiskars' false statements.

198.    Fiskars knew or should have known that its advertising activities were false, misleading, and deceptive.

199.    These statements were made in interstate commerce, appeared in commercial advertising or promotion by Fiskars, and have a tendency to deceive a substantial segment of Fiskars' audience. The statements are also likely to influence the purchasing decision of the consumer.

200.    Woodland Tools has been damaged, continues to be damaged, and is likely to be damaged in the future by Fiskars' false advertising by reason of diversion of prospective purchasers.

201.    Fiskars has unfairly profited from the false advertising alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

202.    Woodland Tools is likely to succeed on the merits of its false advertising claim pursuant to 15 U.S.C. § 1125(a).

203.    Woodland Tools has been, and continues to be, irreparably harmed as a result of Fiskars' false advertising. Woodland Tools' immediate, irreparable injuries have no adequate remedy at law, and Woodland Tools is entitled to injunctive relief and up to three times its actual damages and/or an award of Fiskars' profits, as well as costs and Fiskars' reasonable attorney fees under 15 U.S.C. §§ 1116-17.

204.    The public interest lies in truthful advertising.

## COUNTERCLAIM THREE
## FALSE ADVERTISING
### (False Representations of Product Characteristics and Capabilities).

205.    Woodland Tools incorporates the facts and allegations in each of the paragraphs of these Counterclaims, above, as if fully set forth herein.

206.    As outlined in part above, Fiskars made false and misleading statements in commercial advertisements about at least the nature, characteristics, qualities and/or capabilities of at least the following products: (a) Fiskars 7936 Pruners, (b) Fiskars 9480 Lopper, (c) Fiskars 9279 Hand Pruners, (d) Fiskars 7972 Lopper, (e) Fiskars 9398 Tree Pruners, (f) Fiskars 394732 Tree Pruners, (g) Fiskars 9440 Tree Pruners, (h) Fiskars 9110 Hand Pruners, (i) Fiskars 9286 Hedge Shears, (j) Fiskars 9181 23 in. Power-Lever Softgrip Hedge Shears, (k) Fiskars 9138 28 in. Power-Lever Bypass Lopper, and (l) Fiskars 9473 Chain Drive Extendable Pole Saw & Pruner.

207.    In particular, Fiskars falsely represented that various of these products provide a certain quantifiable amount of "power," and/or cut quantifiably easier than other products, as outlined above.

208.    Further, Fiskars falsely represented that various of these products have "titanium blade coating," as outlined above.

209.    These statements misrepresent the nature, characteristics, and/or qualities of the design and origins the products listed above, and are expressly false, impliedly false, or both.

210.    The nature, characteristics, and qualities of the design and origins of each of the products listed above are material factors that impact consumer purchasing decisions.

211.    Fiskars' false and misleading statements constitute false advertising in violation of 15 U.S.C. § 1125(a).

212.    Fiskars has knowingly induced and/or caused third parties, including retailers, to engage in additional acts of false advertising by repeating Fiskars' false statements.

213.   Fiskars knew or should have known that its advertising activities were false, misleading, and deceptive.

214.   These statements were made in interstate commerce, appeared in commercial advertising or promotion by Fiskars, and have a tendency to deceive a substantial segment of Fiskars' audience. The statements are also likely to influence the purchasing decision of the consumer.

215.   Woodland Tools has been damaged, continues to be damaged, and is likely to be damaged in the future by Fiskars' false advertising by reason of diversion of prospective purchasers.

216.   Fiskars has unfairly profited from the false advertising alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

217.   Woodland Tools is likely to succeed on the merits of its false advertising claim pursuant to 15 U.S.C. § 1125(a).

218.   Woodland Tools has been, and continues to be, irreparably harmed as a result of Fiskars' false advertising. Woodland Tools' immediate, irreparable injuries have no adequate remedy at law, and Woodland Tools is entitled to injunctive relief and up to three times its actual damages and/or an award of Fiskars' profits, as well as costs and Fiskars' reasonable attorney fees under 15 U.S.C. §§ 1116-17.

219.   The public interest lies in truthful advertising.

**COUNTERCLAIM FOUR**
**DECLARATION OF INVALIDITY OF '969 PATENT**

220.   Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated.

221.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Woodland Tools requests a declaration from the Court that each and every asserted claim of the '969 Patent is invalid for failure to meet one or more provisions of the United States patent laws, 35 U.S.C. §§ 100 *et seq.*, including but not limited to, one or more of 35 U.S.C. §§ 102 and 103.

## COUNTERCLAIM FIVE
## DECLARATION OF INVALIDITY OF '828 PATENT

222.     Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

223.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Woodland Tools requests a declaration from the Court that each and every claim of the '828 Patent is invalid for failure to meet one or more provisions of the United States patent laws, 35 U.S.C. §§ 100 *et seq.*, including but not limited to, one or more of 35 U.S.C. §§ 102, 103, 115, and 116.

## COUNTERCLAIM SIX
## DECLARATION OF INVALIDITY OF '882 PATENT

224.     Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

225.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Woodland Tools requests a declaration from the Court that each and every claim of the '882 Patent is invalid for failure to meet one or more provisions of the United States patent laws, 35 U.S.C. §§ 100 *et seq.*, including but not limited to, one or more of 35 U.S.C. §§ 102, 103, 115 and 116.

## COUNTERCLAIM SEVEN
## DECLARATION OF INVALIDITY OF '635 PATENT

226.     Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

227.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Woodland Tools requests a declaration from the Court that each and every asserted claim of the '635 Patent is invalid for failure to meet one or more provisions of the United States patent laws, 35 U.S.C. §§ 100 *et seq.*, including but not limited to, one or more of 35 U.S.C. §§ 102, 103, and 112.

**COUNTERCLAIM EIGHT**
**DECLARATION OF NON-INFRINGEMENT OF '969 PATENT**

228.    Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

229.    Woodland Tools has not infringed and is not infringing any claim of the '969 Patent, either literally or under the doctrine of equivalents. Additionally, Woodland Tools is not contributing to or inducing the infringement of any claim of the '969 Patent, and has not done so in the past.

**COUNTERCLAIM NINE**
**DECLARATION OF NON-INFRINGEMENT OF '828 PATENT**

230.    Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

231.    Woodland Tools has not infringed and is not infringing any claim of the '828 Patent, either literally or under the doctrine of equivalents. Additionally, Woodland Tools is not contributing to or inducing the infringement of any claim of the '828 Patent, and has not done so in the past.

**COUNTERCLAIM TEN**
**DECLARATION OF NON-INFRINGEMENT OF '882 PATENT**

232.    Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

233.   Woodland Tools has not infringed and is not infringing any claim of the '882 Patent, either literally or under the doctrine of equivalents. Additionally, Woodland Tools is not contributing to or inducing the infringement of any claim of the '882 Patent, and has not done so in the past.

## COUNTERCLAIM ELEVEN
## DECLARATION OF NON-INFRINGEMENT OF '635 PATENT

234.   Woodland Tools incorporates by reference each of the paragraphs above as though fully repeated here.

235.   Woodland Tools has not infringed and is not infringing any claim of the ''635 Patent, either literally or under the doctrine of equivalents. Additionally, Woodland Tools is not contributing to or inducing the infringement of any claim of the '635 Patent, and has not done so in the past.

## EXCEPTIONAL CASE

236.   This is an exceptional case under 35 U.S.C. § 285, and Woodland Tools is entitled to recover its attorneys' fees and costs incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, Defendant-Counterclaimant Woodland Tools, Inc. prays for relief as follows:

A.   For a Declaratory Judgment that the '969, '828, '882, and '635 Patents, and each and every asserted claim thereof, is invalid, and not infringed;

B.   That Plaintiffs' Complaint be dismissed with prejudice, with Plaintiffs taking nothing;

C.   That the Court declare this an exceptional case and, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, or other applicable authority, Plaintiffs be

ordered to pay all of Woodland Tools' reasonable attorney's fees and costs incurred in defending against Plaintiffs' claims;

D.      That the Court award Woodland Tools damages to compensate it for the harm it suffered as a result of Plaintiffs' tortious interference with Woodland Tools' contracts and business relationships;

E.      A preliminary and permanent injunction prohibiting Plaintiffs and Plaintiffs' officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from falsely advertising the design and origin of its products, including but not limited to the products specifically identified in these Counterclaims, above;

F.      A preliminary and permanent injunction requiring Plaintiffs to engage in corrective advertising to advise all customers who have purchased any products that Plaintiffs have falsely advertised, as outlined in these Counterclaims, above, about the true and accurate nature, characteristics, and qualities of the design and origins of such products; and

G.      That Woodland Tools be awarded such other relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Defendant and Counterclaimant Woodland Tools, Inc. hereby demands a trial by jury on all issues triable of right by jury in this action.

Dated this 20th day of January, 2023.

DeWitt LLP

By: __/s/ Elijah B. Van Camp__
    Stephen A. DiTullio (#1019446)
    Joseph T. Leone (# 1018149)
    Elijah B. Van Camp (#1100259)
    Laura M. Davis (#1100008)
    C. Kai Hovden (#1106888)
    Two East Mifflin Street, Suite 600
    Madison, WI 53703-2865
    Tel: 608-255-8891
    Fax: 608-252-9243
    sad@dewittllp.com
    jtl@dewittllp.com
    evc@dewittllp.com
    lmd@dewittllp.com
    ckh@dewittllp.com

ATTORNEYS FOR DEFENDANT-
COUNTERCLAIMANT WOODLAND TOOLS, INC.