# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

FISKARS FINLAND OY AB, and
FISKARS BRANDS INC.,

        Plaintiffs,

   v.

WOODLAND TOOLS INC., LUMINO,
INC., ROSS GUNDLACH, VANCE
KOCH, and STEPHANIE COTA,

        Defendants.

Case No. 3:22-cv-540-JDP

## BRIEF IN SUPPORT OF DEFENDANTS STEPHANIE COTA AND ROSS GUNDLACH'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF UNDISPUTED FACTS ...........................................................3

I.   FACTS RELATED TO THE RESTRICTIVE COVENANT.............................3

    A.   The Restrictive Covenant Requires that "Fiskars Brands, Inc." Includes Fiskars Brands' Parents, Affiliates, and Subsidiaries. ...................................4

    B.   The Restrictive Covenant Applies to a Vast Array of "Competitors" Unrelated to the Moving Defendants' Actual Jobs. ............................................6

    C.   The Territorial Limits of the Restrictive Covenant are Vast. ....................8

    D.   The Scope of Prohibited Conduct under the Restrictive Covenant is Extremely Broad......................................................................................8

    E.   The Non-Solicitation Provision of the Restrictive Covenant is Unreasonably Broad...............................................................................9

II.  FACTS RELATED TO COTA'S SEPARATION AGREEMENT . ...................9

ARGUMENT .......................................................................................................10

I.   FISKARS FINLAND'S CLAIMS MUST BE DISMISSED ON SUMMARY JUDGMENT BECAUSE IT IS NOT A PARTY TO THE AGREEMENTS ..................12

II.  FISKARS' RESTRICTIVE COVENANT MUST BE CLOSELY SCRUTINIZED UNDER WIS. STAT. § 103.465. ..........................................................12

III. FISKARS' RESTRICTIVE COVENANT BROADLY ENCOMPASSES THE GLOBAL PARENT, AFFILIATE, AND SUBSIDIARY ENTITIES OF FISKARS BRANDS .......................................................................................................20

IV.  THE NON-COMPETITION PROVISION DOES NOT PROVIDE A REASONABLE TERRITORIAL LIMIT..............................................................17

    A.   There is No Dispute that the Non-Competition Provision Prohibits the Moving Defendants from Working Anywhere in the United States...........................18

    B.   The Non-Competition Provision Blocks the Moving Defendants from Working in 100 Countries...........................................................................18

**V.    THE RESTRICTIVE COVENANT IS NOT REASONABLY NECESSARY FOR FISKARS' PROTECTION, IN VIOLATION OF WIS. STAT. § 103.465....................20**

    A.    The Non-Competition Provision Violates Wis. Stat. § 103.465 Because it Prevents the Moving Defendants from Working for an Overbroad List of Purported Competitors....................................................20

    B.    The Non-Competition Provision Improperly Restricts the Moving Defendants From Working in Any Capacity for a Competitor .........................................21

    C.    Even Under Fiskars' Narrow Interpretation, the Non-Competition Provision is Not Reasonably Necessary for Fiskars' Protection.........................................23

**VI.  THE NONSOLICITATION PROVISION OF THE RESTRICTIVE COVENANT VIOLATES WISCONSIN LAW...................................................................26**

    A.    The Non-Solicitation Clause Contains an Unenforceable No-Hire Provision ............26

    B.    The Non-Solicitation Provision is Not Enforceable Because There is No Limitation of the Definitions of "customer," "supplier," or "person which has a business relationship with Fiskars Brands...................................................27

    C.    The Solicitation Provision Prohibits Contact with Any "Customer", "Supplier" or "Employee", Regardless of Whether the Defendants Worked with Those Customers or Suppliers...................................................................29

    D.    The Non-Solicitation Provision is Unenforceable Because It Has an Unlimited Look-Back Period....................................................................29

    E.    Even Under Fiskars' Narrow Interpretation, the Non-Solicitation Provision is Overbroad and Not Necessary for Fiskars' Protection ..................................30

**VII. FISKARS' CLAIM FOR COTA'S VIOLATION OF THE SEPARATION AGREEMENT SHOULD BE DISMISSED ON SUMMARY JUDGMENT..................31**

**CONCLUSION ...........................................................................33**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................... 11

*Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 235 N.W.2d 690 (1975)………………………………18

*Bess v. Bothman*, 257 N.W.2d 791 (Minn. 1977) .......................................................................... 14

*Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, 289 Wis. 2d 795, 714 N.W.2d
    582 .............................................................................................................................................. 31

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 10

*Corp. Express Off. Prods., Inc. v. Brown*, No. 00-C-608-C, 2001 WL 34381111 (W.D. Wis. July
    18, 2001) ..................................................................................................................................... 11

*Danaher Corp. v. Lean Focus, LLC*, No. 19-CV-750-WMC, 2020 WL 4260487
    (W.D. Wis. July 24, 2020).................................................................................................. 2, 13, 17

*Diamond Assets LLC v. Godina*, 2022 WI App 47, 404 Wis. 2d 404, 979 N.W.2d 586 .............. 14

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No 14-cv-748-WMC, 2016 WL 845341 (W.D.
    Wis. Mar. 2, 2016) ................................................................................................................. 10, 11

*Equity Enters. v. Milosch*, 2001 WI App 186, 247 Wis. 2d, 633 N.W.2d 662 .................. 13, 18, 20

*Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 309 N.W.2d 125 (Ct. App. 1981) ............. 29

*Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985 (W.D. Wis. 2010) .................................... 11

*Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 267 N.W.2d 242 ............................... 13

*Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 302 N.W.2d 76 (Ct. App. 1981)....12, 13

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852 (7th Cir. 2005) .......................................... 33

*Heyde Cos. v. Dove Healthcare, LLC*, 2001 WI App 278, 249 Wis. 2d 32, 637 N.W.2d 437 ....... 26

*Jones v. Jenkins*, 88 Wis. 2d 712, 277 N.W.2d 815 (1979) .......................................................... 16

*JT Packard & Assocs. v. Smith*, 429 F. Supp. 2d 1052 (W.D. Wis. 2005) ......................... 19, 23, 29

*Kozlovich v. S. Abraham & Sons, Inc.*, No. 04-C-910-C, 2005 WL 1075003 (W.D. Wis. May 5,
    2005) ............................................................................................................................... 11, 18, 23

*Manitowoc Co. v. Lanning*, 2018 WI 6, 379 Wis. 2d 189, 906 N.W.2d 130 ......................... passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 11

*Medtronic, Inc. v. Hughes*, No. A10-998, 2011 WL 134973 (Minn. Ct. App. Jan. 18, 2011) ....... 14

*Milwaukee Police Supervisors Org'n v. City of Milwaukee*, 2023 WI 20, 406 Wis. 2d 279, 986 N.W.2d 801 ........................................................................................................................15

*Pagoudis v. Keidl*, 2023 WI 27, 406 Wis. 2d 542, 988 N.W.2d 606 ............................................31

*Priority Int'l. Animal Concepts, Inc. v. Bryk*, No. 12-c-150, 2012 WL 1995113 (E.D. Wis. June 01, 2012) ...............................................................................................................................30

*Share Corp. v. Momar Inc.*, No. 10-CV-109, 2011 WL 284273 (E.D. Wis. Jan. 26, 2011) ....23, 29

*Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010) ....................................................................11

*Star Direct Inc. v. Dal Pra*, 2009 WI 76, 319 Wis. 2d 274, 767 N.W.2d 898 .......................passim

*Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (1984) .....................13, 17

*Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039 (E. D. Wis. 2006) .....13, 14

*Wiemerslage v. Astec, Inc.*, No. 11-CV-383-WMC, 2012 WL 12995758 (W.D. Wis. May 7, 2012) .......................................................................................................................................11, 14

*Worth v. Kelley Co.*, 22 Wis. 2d 318, 126 N.W.2d 75 (1964) ......................................................16

*Zimmermann v. Brennan*, 78 Wis. 2d 510, 254 N.W.2d 719 (1977) .............................................13

**Statutes**

Minn. Stat. Ann. § 181.988 ............................................................................................................14
Wis. Stat. § 103.465 ...............................................................................................................passim

**Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................................10, 11
Federal Rule of Civil Procedure 56 ................................................................................................1

iv

Pursuant to Federal Rule of Civil Procedure 56, Defendants Stephanie Cota ("Cota") and Ross Gundlach ("Gundlach") (collectively, the "Moving Defendants"),[1] hereby submit the following brief in support of their Motion for Summary Judgment ("Motion").

## INTRODUCTION

In this lawsuit, Plaintiffs Fiskars Brands Inc. ("Fiskars Brands") and Fiskars Finland Oy Ab ("Fiskars Finland") (collectively, "Fiskars" or "Plaintiff") seek to enforce a restrictive covenant that violates black-letter Wisconsin law. Because Fiskars' restrictive covenant is plainly invalid under Wisconsin law, its claims in this lawsuit based on that restrictive covenant must be dismissed on summary judgment.

There is no dispute that Wisconsin law, specifically Wis. Stat. § 103.465, governs the enforceability of the restrictive covenants entered into by both Cota and Gundlach, Wisconsin residents, with Fiskars Brands, a Wisconsin corporation. In Wisconsin, these types of restrictive covenants are "prima facie suspect as restraints of trade that are disfavored at law". *Star Direct Inc. v. Dal Pra*, 2009 WI 76, ¶ 19, 319 Wis. 2d 274, 767 N.W.2d 898. They must be construed in favor of the employee and can only be upheld if they "withstand close scrutiny as to their reasonableness." *Id*. Fiskars' restrictive covenant, at issue in this case, does not withstand even the slightest scrutiny.

To be enforceable under Wis. Stat. § 103.465, Fiskars must show that the restrictive covenant satisfies five "prerequisites"; namely that the restrictive covenant must:

(i)     be necessary for the protection of the employer; that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee;

(ii)    provide a reasonable time restriction;

(iii)   provide a reasonable territorial limit;

---

[1] Defendants Vance Koch ("Koch"), Woodland Tools, Inc. and Lumino, Inc. do not join in this Motion for Summary Judgment filed by the Moving Defendants, as they anticipate that they will need to file a Motion for Summary Judgment on the Patent and other claims, and expressly preserve their ability to do so.

      (iv)      not be harsh or oppressive to the employee; and
      (v)       not be contrary to public policy.

*Danaher Corp. v. Lean Focus, LLC*, No. 19-CV-750-WMC, 2020 WL 4260487, at *5 (W.D. Wis. July 24, 2020); *Manitowoc Co. v. Lanning*, 2018 WI 6, ¶ 40, 379 Wis. 2d 189, 906 N.W.2d 130 (citing *Star Direct*, 2009 WI 76, ¶ 20). If Fiskars cannot meet every prerequisite, its restrictive covenant is unenforceable. After over a year of discovery in this case, Fiskars has failed to come forward with evidence showing that its restrictive covenant meets all the requirements of Wis. Stat. § 103.465, despite bearing the burden.

        Wisconsin courts have consistently struck down covenants that impose nationwide restrictions. Here, even under Fiskars' narrow and incorrect interpretation of the restrictive covenant, the covenant would undisputedly prohibit the Moving Defendants from working in certain capacities anywhere in the United States. And the *actual* territorial prohibition, based on how Fiskars drafted its restrictive provision, would bar the Moving Defendants from working in at least 29 countries all across the globe. Fiskars cannot possibly show that this type of country-wide or global prohibition on employment is "reasonably necessary" for its protection, and indeed it has not. This is only one example of the ways in which Fiskars' restrictive covenant is overbroad and violates Wis. Stat. § 103.465. These issues are explored in depth in the body of this brief. Each of Fiskars' claims against the Moving Defendants based on its restrictive covenant should be dismissed as a matter of law.

        In addition, Fiskars has maintained a separate claim against Cota, alleging that she violated a "Separation Agreement" that she signed with Fiskars Brands. However, Fiskars has never articulated how Cota allegedly violated any provision in this separate agreement, let alone provided any evidence to support this undefined claim. Accordingly, this claim against Cota should be dismissed, as a matter of law, based on the undisputed factual record.

Finally, this motion is ripe for determination on summary judgment and will serve to narrow the issues in the case prior to later patent-related dispositive motions and trial. Defendants believe that Fiskars filed this lawsuit not because it had meritorious claims, but rather as a means to shut down a new competitor. Lacking meritorious claims, Fiskars took a "throw everything at the wall and hope something sticks" approach to the lawsuit. Fiskars' meritless claims have already started to fall away, as evidenced by Fiskars' abandonment of half of its patent claims when the time came to submit an expert report supporting those claims. [*See* Dkt. 64]. This motion serves to further remove discrete claims that never should have been part of the case. Fiskars' counsel was informed five months ago that the individual defendants would be filing an early motion for summary judgment on the employment related claims due to their meritless nature. [PFOF 19]. They were further informed that given the advance notice of the motion, Plaintiffs should not attempt to delay resolution of the motion. [PFOF 19]. Fiskars has known this motion was coming for a long time, and any attempt to delay should be disregarded.

**STATEMENT OF UNDISPUTED FACTS**

The Moving Defendants incorporate in full herein their Proposed Findings of Undisputed Fact filed in support of this Motion.

**I.    FACTS RELATED TO THE RESTRICTIVE COVENANT.**

Fiskars' breach of contract claims against the Moving Defendants are based on a "Confidentiality, Assignment and Non-Compete Agreement" that the individual Defendants signed with Fiskars Brands Inc. [PFOF 20-23, 26-29, 36-39, 40 citing Dkt. 33-2 (the "Gundlach Non-Compete Agreement"); 33-3 (the "Koch Non-Compete Agreement"); 33-4 (the "Cota Non-Compete Agreement."). Each Non-Compete Agreement contains an identical Restrictive Covenant, that provides as follows:

3. Non-Compete. For purposes of this paragraph, the term "Fiskars Brands" includes Fiskars Brands, Inc., its parent, its subsidiaries and affiliated companies. Employee acknowledges that during his/her employment, Employee will acquire knowledge of and have access to trade secrets and other Confidential Information of Fiskars Brands, and its respective products and product lines, which knowledge would, in the event Employee were to become associated with a competitor of Fiskars Brands in certain capacities, become available and provide invaluable benefits to such competitor and cause irreparable harm to Fiskars Brands. Therefore, Employee shall not, for a period of two years following termination of his/her employment with Fiskars Brands for any reason, directly or indirectly, assist, render services to, participate in the affairs of, any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands within two (2) years prior to the termination of his/her employment, in any capacity which either (i) would utilize Employee's services with respect to such manufacture or sale, or (ii) would reasonably be expected to utilize any of the trade secrets or other Confidential Information referenced in this paragraph, with respect to such manufacture or sale, within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment. During this period of non-competition, Employee agrees not to directly or indirectly, (i) solicit, induce, or influence any customer, supplier, or any other person which has a business relationship with Fiskars Brands to reduce or discontinue such relationship with Fiskars Brands, or (ii) recruit, solicit, or otherwise influence any employee or agent of Fiskars Brands to change their employment relationship with Fiskars Brands. Further recognizing the specialized nature of the business and the product lines of Fiskars Brands and the national and international scope of competition, Employee acknowledges the geographic scope of this covenant not to compete to be reasonable.

[PFOF 41 (the "Restrictive Covenant")].

The only Fiskars entity that is a party to the Restrictive Covenant is Fiskars Brands, Inc. [PFOF 21-23, 27-29, 37-39]. Fiskars Finland is not a party to the Restrictive Covenant. [PFOF 22, 28, 38].

### A. The Restrictive Covenant Requires that "Fiskars Brands, Inc." Includes Fiskars Brands' Parents, Affiliates, and Subsidiaries.

In its Restrictive Covenant, Fiskars Brands makes clear its employees' non-compete obligations extend far beyond Fiskars Brands itself. The plain text of Fiskars' Restrictive Covenant states that, "'Fiskars Brands' includes Fiskars Brands, Inc., its parent, its subsidiaries and affiliated companies." [PFOF 42]. It is undisputed that this broad definition of "Fiskars Brands" includes over 40 separate global entities. [PFOF 51-52].

4

It is undisputed that both Fiskars Brands and Fiskars Finland each have one or more parent companies, one or more affiliated companies, and one or more subsidiary companies. [PFOF 44]. Although Fiskars has refused to identify each of its parent companies, it has confirmed through discovery that, "Fiskars Oyj Abp is the ultimate parent company of both Fiskars Finland Oy AB and Fiskars Brands, Inc. Fiskars Brands, Inc. is a cousin to Fiskars Finland Oy AB." [PFOF 45-46]. Later, in its response to a Motion to Compel,[2] Fiskars confirmed that:

- Fiskars Brands is fully owned by Fiskars Americas Holding Oy Ab, and ultimately by Fiskars Oyj Abp.; and

- Fiskars Finland is fully owned by Fiskars Europe Holding Oy Ab, and ultimately by Fiskars Oyj Abp.

[PFOF 50].

Although Fiskars has refused to identify each of its "affiliated companies," Fiskars confirmed that, "Fiskars Brands is a distinct legal entity affiliated with *over* 40 other Fiskars-related entities. [PFOF 47, 51 (emphasis added)]. Fiskars' admissions to date, albeit incomplete, confirm the vast scope of its Restrictive Covenant, applying to 100 countries and to products as diverse as dinnerware and luxury crystal. In its response to Defendant's Motion to Compel, Fiskars provided the following admissions about its "Affiliates":

- Fiskars' Affiliates are the global home of design-driven brands for indoor and outdoor living.

- [Fiskars' Affiliates'] many brands are present in 100 countries across Europe, Asia, and the Americas.

---

[2] The Moving Defendants filed a Motion to Compel [PFOF 49 (citing Dkts. 49-50)] certain discovery from Plaintiffs relating to the enforceability of Fiskars' Restrictive Covenant. Plaintiffs provided some additional facts related to their deficient discovery responses in their response brief [PFOF 50-52, 67, 83, 95], but the Motion to Compel is still pending. Although Plaintiffs' discovery responses are still deficient, there is more than sufficient evidence based on the current record to determine on summary judgment that Fiskars' Restrictive Covenant is unenforceable pursuant to Wis. Stat. § 103.465. Resolution of the pending Motion to Compel is not necessary to grant summary judgment for the Moving Defendants.

- [Fiskars' Affiliates'] brands include the iconic British dinnerware brand, Wedgwood, and luxury crystal brand Waterford.

- Fiskars Affiliates sell a wide and varying range of products throughout the world including home décor, glass, porcelain, and tableware.

- Including the Plaintiffs and the Fiskars Affiliates, the companies employ over 6,500 people in 29 countries through over 40 distinct legal entities.

[PFOF 52].

### B. The Restrictive Covenant Applies to a Vast Array of "Competitors" Unrelated to the Moving Defendants' Actual Jobs.

The Restrictive Covenant purports to block the Moving Defendants from working for, "any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands within two (2) years prior to the termination of his/her employment." [PFOF 41]. Fiskars admits that "the vast majority of competitors relevant to Plaintiffs' entire corporate structure are not businesses engaged in the manufacture or sale of garden tools []." [PFOF 69]. This admission is important in that the Moving Defendants' jobs at Fiskars Brands related to garden tools. [PFOF 134]. Further, Fiskars admitted that "**all competitors would be very difficult, if not impossible, to quantify**." [PFOF 83] (emphasis added).

In response to discovery requests requiring Fiskars to identify all categories of products that the relevant Fiskars' entities manufacture or sell, Fiskars confirmed that: "Categories of products designed, manufactured, and/or sold by Fiskars Finland Oy Ab and Fiskars Brands, Inc. include: (a) outdoor multitools and knives; and (b) garden hand tools, manual or powered, including shears, pruners, axes, stick tools, loppers, saws, digging tools and striking tools. [PFOF 60-61]. Fiskars also confirmed that, Brands brought to market by Fiskars Brands, Inc. for those categories of products include:

- Gerber,

- Fiskars,
- Gingher,
- Schoolworks,
- Fiskars – Cobrand,
- Cutworks, and
- Winchester

[PFOF 62]. However, Fiskars has refused to provide the full list of all categories of products that its entities, including its parents, affiliates and subsidiaries, manufacture or sell. [PFOF 68]. Thus, the Restrictive Covenant's scope is even broader than Fiskars has revealed to date.

However, even Fiskars' improperly narrowed admissions are more than sufficient to show that the scope of the Restrictive Covenant plainly violates Wis. Stat. § 103.465. The fact that Fiskars refuses to identify the full scope of the competitive companies and products subject to the Restrictive Covenant only reinforces that violation. Fiskars admits that its affiliates sell numerous products globally, "including crystal, glass, tableware, home décor, and gardening, among others." [PFOF 67]. Thus, Fiskars attempted to prevent the Moving Defendants, who were employed related to garden tools, from obtaining completely unrelated jobs in areas as far afield as home décor.

In discovery, Fiskars was required to identify all entities that "manufacture or sell" products competitive with any made or sold by Fiskars, including its parents, affiliates, and subsidiaries. [PFOF 70]. Although improperly limited to only Fiskars Brands (as opposed to its affiliates, parents and subsidiaries), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [PFOF 71-73]. Fiskars has not provided a list of "Competitive Brands" for other divisions. [PFOF 71-73].

### C.  The Territorial Limits of the Restrictive Covenant are Vast.

The Restrictive Covenant blocks the Moving Defendants from working: "within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment." [PFOF 41].

This is plainly a prohibition that spans the globe. Apparently recognizing the unreasonableness of its Restrictive Covenant, Fiskars has simply refused to identify where else beyond the United States Fiskars Brands sold or attempted to sell products, or where its parent companies, affiliated companies, and subsidiary companies sold or attempted to sell products. [PFOF 84-88]. Nevertheless, Fiskars admits that even when limited to Fiskars Brands (as opposed to the parents, affiliates and subsidiaries required under the Restrictive Covenant), the geographic scope is the entire United States. [PFOF 84].

### D.  The Scope of Prohibited Conduct under the Restrictive Covenant is Extremely Broad.

In terms of prohibited conduct, the Restrictive Covenant prohibits the Moving Defendants from, "directly or indirectly, assist[ing], render[ing] services to, participat[ing] in the affairs of, any [competitive business], in any capacity which [] would utilize Employee's services with respect to such manufacture or sale." [PFOF 41].

In response to discovery requests requiring Fiskars to identify all persons, companies and entities that "render [or rendered] services to" or "participate [or participated] in the affairs" of Fiskars (as defined in the Restrictive Covenant), Fiskars identified a list of the suppliers for Fiskars Brands only—not for its parent companies, affiliates, or subsidiaries as required under the Restrictive Covenant. [PFOF 90-94]. Nevertheless, even as improperly narrowed, Fiskars admits

that "persons, companies or entities that rendered services to or participated in the affairs of Fiskars

[] Affiliates **would be in the thousands**." [PFOF 95 (emphasis added)].

### E. The Non-Solicitation Provision of the Restrictive Covenant is Unreasonably Broad.

The Restrictive Covenant also has a Non-Solicitation Provision that provides as follows:

> During this period of non-competition, Employee agrees not to directly or indirectly, (i) solicit, induce, or influence any customer, supplier, or any other person which has a business relationship with Fiskars Brands to reduce or discontinue such relationship with Fiskars Brands, or (ii) recruit, solicit, or otherwise influence any employee or agent of Fiskars Brands to change their employment relationship with Fiskars Brands.

[PFOF 41]. Thus, the Moving Defendants are purportedly prohibited from even "influencing" "any

other person which has a business relationship with [Fiskars Brands, Inc., its parent, its subsidiaries

and affiliated companies]" to "reduce" such relationship. Again, apparently recognizing the plain

unreasonableness of this provision, Fiskars simply refused to provide full discovery that would

reveal the full scope of this prohibition. [*See* PFOF 96-112]. Nevertheless, the plain language of

the provision clearly violates Wis. Stat. § 103.465.

## II.    FACTS RELATED TO COTA'S SEPARATION AGREEMENT.

Fiskars also sued Cota for allegedly violating a separate agreement entitled the "Separation

Agreement." [PFOF 117-119]. After Cota left her employment with Fiskars, she began working

as the Director of Sales, Marketing and Product Development at Lumino, which sells window

treatment products. [PFOF 121-122]. These window treatment products are not similar to or

competitive with any of the watering or gardening products that Cota was exposed to during her

employment with Fiskars. [PFOF 123]. Contrary to Fiskars' baseless accusations in its Complaint,

Cota does not work for Woodland Tools in any capacity, does not have an employment agreement

with Woodland Tools, and does not provide any services for Woodland Tools. [PFOF 124-126].

Fiskars has not identified evidence to the contrary.

Fiskars' allegations against Cota for breach of the Separation Agreement are based on the allegation that ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ [PFOF 119]. ████████████

████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

[PFOF 35 (emphasis added).]

It cannot be disputed that Cota has not used or disclosed *any* confidential or proprietary information from Fiskars upon leaving the company, and indeed, Fiskars has not identified any evidence to the contrary. [PFOF 128-133].

## ARGUMENT

This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the party seeking summary judgment bears the initial burden of showing that there is no genuine issue of material fact, once this burden is met on an issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party "must 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No 14-cv-748-WMC, 2016 WL 845341, at *24 (W.D. Wis. Mar. 2, 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 3224 (1986)). The Court construes

the facts in the light most favorable to the nonmoving party; however, the nonmoving party may not "simply show some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must produce 'evidence … such that a reasonable jury could return a verdict for the nonmoving party.'" *Epic Sys.*, 2016 WL 845341, at *24 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If it does not, the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

This Court has not hesitated to grant summary judgment to defendants on claims for violation of a restrictive covenant on occasions where the former employer could not demonstrate that the covenant at-issue met the requirements of Wis. Stat. § 103.465. *Wiemerslage v. Astec, Inc.*, No. 11-CV-383-WMC, 2012 WL 12995758, at *6 (W.D. Wis. May 7, 2012) (granting summary judgment to defendant and finding that the noncompetition covenant was "per se invalid," and stating that, "the territorial limit in this case—if it can even be called that—is unreasonable under the circumstances as a matter of law."); *Corp. Express Off. Prods., Inc. v. Brown*, No. 00-C-608-C, 2001 WL 34381111, at *8 (W.D. Wis. July 18, 2001) (finding certain restrictive covenants unenforceable as a matter of law on summary judgment); *Kozlovich v. S. Abraham & Sons, Inc.*, No. 04-C-910-C, 2005 WL 1075003, at *1 (W.D. Wis. May 5, 2005) (granting plaintiff-employee summary judgment because "the non-competition agreement is invalid under Wis. Stat. § 103.465 because it imposes an overly broad restriction on the territory within which plaintiff could compete with defendant and restricts plaintiff unreasonably from taking any job in any capacity with a competitor.").

Notably, this is not the first time this Court has had to address the unenforceability of one of Fiskars Brands' employment agreements under Wis. Stat. § 103.465. *See Friemuth v. Fiskars*

*Brands, Inc.*, 681 F. Supp. 2d 985, 991 (W.D. Wis. 2010) ("Because the provisions lack any time limitation, I agree with plaintiff that the covenants are unenforceable. There is no need for additional development of the record to conclude as much."). The same result is appropriate here.

## I. FISKARS FINLAND'S CLAIMS MUST BE DISMISSED ON SUMMARY JUDGMENT BECAUSE IT IS NOT A PARTY TO THE AGREEMENTS.

As an initial housekeeping matter, it is undisputed that Fiskars Finland is not a party to the Gundlach Non-Compete Agreement, the Cota Non-Compete Agreement, or the Separation Agreement. Nevertheless, Fiskars Finland makes the same breach of contract claims based on these agreements as Fiskars Brands, and claims that it has suffered harm related to these claims. [Dkt. 33, pp. 35-39]. Because Fiskars Finland is not a party to those agreements, its claims must be dismissed on summary judgment.

## II. FISKARS' RESTRICTIVE COVENANT MUST BE CLOSELY SCRUTINIZED UNDER WIS. STAT. § 103.465.

Fiskars asks this Court to enforce the terms of a Restrictive Covenant that it drafted and required the Moving Defendants to sign. Wisconsin Statute § 103.465 governs the enforceability of restrictive covenants in employment agreements. *Manitowoc Co.*, 2018 WI 6, ¶ 7; *Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 388, 302 N.W.2d 76 (Ct. App. 1981).

Wis. Stat. § 103.465 states:

A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Fiskars, as the employer, bears the burden of showing that the restrictive covenant is reasonably necessary for its protection. *Manitowoc Co.*, 2018 WI 6, ¶ 55; *Star Direct Inc. v. Dal Pra*, 2009

WI 76, ¶ 20, 319 Wis. 2d 274, 767 N.W.2d 898; *Geocaris*, 100 Wis. 2d at 388; *Equity Enters. v. Milosch*, 2001 WI App 186, ¶ 15 n.4, 247 Wis. 2d at 172, 633 N.W.2d 662.

Thus, to be enforceable under Wis. Stat. § 103.465, Fiskars must show that the Restrictive Covenant satisfies five required "prerequisites"; namely that the Restrictive Covenant must:

(i)     be necessary for the protection of the employer; that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee;

(ii)    provide a reasonable time restriction;

(iii)   provide a reasonable territorial limit;

(iv)    not be harsh or oppressive to the employee; and

(v)     not be contrary to public policy.

*Danaher*, 2020 WL 4260487, at *5; *Manitowoc Co.*, 2018 WI 6, ¶ 40 (citing *Star Direct*, 2009 WI 76, ¶ 20).

In applying the terms of Wis. Stat. § 103.465, courts use the following principles to guide their analysis: (1) restrictive covenants are to be viewed as "prima facie suspect"; (2) restrictive covenants must withstand close scrutiny to pass legal muster as being reasonable; (3) restrictive covenants will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) restrictive covenants are to be construed in favor of the employee. *Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 610-11, 348 N.W.2d 505 (1984) (citing *Zimmermann v. Brennan*, 78 Wis. 2d 510, 514, 515, 254 N.W.2d 719 (1977); *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218-19, 267 N.W.2d 242). *See also Star Direct*, 2009 WI 76, ¶ 19 ("Restrictive covenants in Wisconsin are prima facie suspect as restraints of trade that are disfavored at law, and must withstand close scrutiny as to their reasonableness."). Critically, "an employer is not entitled to protection from 'legitimate and ordinary competition of the type that a stranger could give.'" *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1044 (E. D. Wis. 2006) (citation omitted).

Unlike other states, Wisconsin's statute expressly prohibits blue-penciling an overbroad restrictive covenant to make it compliant under Wis. Stat. § 103.465 ("Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable **even as to any part of the covenant or performance that would be a reasonable restraint**.") (emphasis added); *Wiemerslage*, 2012 WL 12995758, at ** 4, 7 (quoting Wis. Stat. § 103.465);[3] *Sysco Food Services of Eastern Wisconsin, LLC v. Ziccarelli*, 445 F. Supp. 2d at 1053.

## III.  FISKARS' RESTRICTIVE COVENANT BROADLY ENCOMPASSES THE GLOBAL PARENT, AFFILIATE, AND SUBSIDIARY ENTITIES OF FISKARS BRANDS.

As a threshold matter, Fiskars purposely chose to draft its Restrictive Covenant broadly, by defining "Fiskars Brands" to include its many parents, affiliates, and subsidiaries. The Restrictive Covenant expressly states that, "For purposes of this paragraph, the term 'Fiskars Brands' includes Fiskars Brands, Inc., **its parent, its subsidiaries and affiliated companies**." (emphasis added). These are the specific words that Fiskars purposely chose to include in its Restrictive Covenant. Fiskars could have chosen more limited and reasonable language but did not do so. These broad words chosen by Fiskars have consequences when it comes to the enforceability of the Restrictive Covenant.  The broad language unequivocally expands the analysis of the entire Restrictive Covenant, because each time the Covenant uses the phrase "Fiskars Brands," it expressly refers to Fiskars Brands' parent(s), subsidiaries, and affiliated companies.

These words are clear and unambiguous and must be given their plain and ordinary meaning. *Diamond Assets LLC v. Godina*, 2022 WI App 47, ¶ 21, 404 Wis. 2d 404, 979 N.W.2d 586, 593 (holding that restrictive covenants are contract terms, that "[t]he standard rules of contract

---

[3] *Cf.* Minn. Stat. Ann. § 181.988 (allowing blue penciling prior to July 1, 2023); *Medtronic, Inc. v. Hughes*, No. A10-998, 2011 WL 134973, at *6 (Minn. Ct. App. Jan. 18, 2011); *Bess v. Bothman*, 257 N.W.2d 791, 794-95 (Minn. 1977).

interpretation apply," and that restrictive covenants must be interpreted "in favor of the employee"); *Star Direct*, ¶¶ 19, 62 ("It is only within [the] framework" of giving contractual language its plain meaning, reading the contract as a whole, while avoiding absurd results, "that we interpret restrictive covenants in favor of the employee"); *Manitowoc Co.*, 2018 WI 6, ¶ 45 (holding that restrictive covenant must be, "interpreted in a reasonable way to give the words their plain meaning, to give effect where possible to the entire provision, and to avoid absurd results."); *Milwaukee Police Supervisors Org'n v. City of Milwaukee*, 2023 WI 20, ¶ 16, 406 Wis. 2d 279, 986 N.W.2d 801.

Thus, each time the Restrictive Covenant refers to "Fiskars Brands," the Restrictive Covenant necessarily covers the following levels of Fiskars entities:

(1) Fiskars Brands itself;

(2) the parent companies of Fiskars Brands, including Fiskars Americas Holding Oy Ab (parent), and Fiskars Oyj Abp (parent);

(3) the affiliated companies of Fiskars Brands, including the 40 other Fiskars-related entities that Fiskars has already confirmed exist; and

(4) all subsidiaries of Fiskars Brands, for which Fiskars has failed to provide any information.

Each reference to Fiskars Brands must encompass all four levels above. For example, the Restrictive Covenant prohibits the Moving Defendants from working in any "political subdivision" where Fiskars "sold or actively attempted to sell" products within the past two years. Based on the definition of "Fiskars Brands," this language necessarily includes all political subdivisions where *Fiskars Brands* sold or attempted to sell products, all political subdivisions where its *parent entities* sold or attempted to sell products, all political subdivisions where its *affiliates* sold or attempted

to sell products, and all political subdivisions where its *subsidiaries* sold or attempted to sell products. As outlined below, when properly viewed through this full scope of information as drafted by Fiskars, there is effectively no territorial limit to the Restrictive Covenant at all. The Moving Defendants are barred from working not only anywhere in the United States, but also in at least 29 countries (or as many as 100 countries). Fiskars cannot come close to meeting its burden of showing that this sort of expansive prohibition is necessary for its protection. The same is true for the other purported limitations in the Restrictive Covenant.

Rather than apply the clear and unambiguous words of its own definition, Fiskars has attempted to limit its analysis exclusively to Fiskars Brands in Middleton, Wisconsin by claiming that "the reasonable scope for discovery is limited to named party, Fiskars Brands." [Dkt. 52, p. 11]. Fiskars is not permitted to ignore the language of its own contract in this way. The agreement is interpreted as it is written, not as is convenient for Fiskars in this lawsuit.

In addition, Fiskars' argument would eliminate the entire first sentence of the Restrictive Covenant ("For purposes of this paragraph, the term 'Fiskars Brands' includes Fiskars Brands, Inc., its parent, its subsidiaries and affiliated companies."). This violates well-settled Wisconsin law that prohibits blue-penciling a restrictive covenant, and well-settled law on interpretation of contracts. Wis. Stat. § 103.465 (prohibiting blue-penciling); *see also Manitowoc Co.*, 2018 WI 6, ¶ 45; *Worth v. Kelley Co.*, 22 Wis. 2d 318, 324, 126 N.W.2d 75 (1964); *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979).

The Restrictive Covenant is a clear, unambiguous contract that must be enforced as Fiskars expressly drafted it. As a result of the Restrictive Covenant including Fiskars Brands' parents, affiliates, and subsidiaries, it is beyond dispute that the Covenant is overbroad and violates Wis. Stat. § 103.465.

16

## IV.    THE NON-COMPETITION PROVISION DOES NOT PROVIDE A REASONABLE TERRITORIAL LIMIT.

One of the black-letter requirements of Wis. Stat. § 103.465 is that a restrictive covenant must provide a reasonable territorial limit. *Danaher*, 2020 WL 4260487, at *5; *Manitowoc Co.*, 2018 WI 6, ¶ 40 (citing *Star Direct,* 2009 WI 76, ¶ 20).

The Non-Competition Provision from the Restrictive Covenant provides as follows:

> Therefore, Employee shall not, for a period of two years following termination of his/her employment with Fiskars Brands for any reason, directly or indirectly, assist, render services to, participate in the affairs of, any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands within two (2) years prior to the termination of his/her employment, in any capacity which either (i) would utilize Employee's services with respect to such manufacture or sale, or (ii) would reasonably be expected to utilize any of the trade secrets or other Confidential Information referenced in this paragraph, with respect to such manufacture or sale, within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment.

(the "Non-Competition Provision"). This is a single sentence containing 147 words, 12 commas, and 15 uses of the word "or". Because this covenant is a single, indivisible provision, this Court must invalidate all of it if any part of it fails to meet the requirements of Wis. Stat. § 103.465. *See Streiff*, 118 Wis. 2d at 611–12 (concluding that two separate sections of a restrictive covenant were intertwined and indivisible because the two clauses were "not distinct, mutually exclusive, independent provisions that [came] into play in totally different fact situations so that the restraints [would be] divisible").

As relevant here, the Non-Competition Provision purports to block the Moving Defendants from providing various services to qualifying employers "within any state of the United States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment." The Restrictive Covenant thus blocks employment throughout the entire

17

United States, as well as in at least 29 countries.

### A. There is No Dispute that the Non-Competition Provision Prohibits the Moving Defendants from Working Anywhere in the United States.

As noted above, Fiskars attempts to improperly limit the scope of the Restrictive Covenant to the United States. While this is plainly incorrect, even if the Non-Competition Provision were limited to "just" the entire United States (it is not), this alone would be an overbroad and unenforceable restriction. *Behnke*, 70 Wis. 2d at 820, 824 (holding that a non-compete restricting an employee from working for any car rental competitor in the city of Milwaukee for one year was not a reasonable territorial limit); *Equity Enters., Inc.*, 2001 WI App 186 at ¶ 15 (finding that a restrictive covenant that implied at least a nationwide restriction was unenforceable under Wis. Stat. § 103.465); *Kozlovich v. S. Abraham & Sons, Inc.*, No. 04-C-910-C, 2005 WL 1075003, at *4 (W.D. Wis. May 5, 2005) (finding "that the non-competition agreement is invalid under Wis. Stat. § 103.465 because it imposes an overly broad restriction on the territory within which plaintiff could compete," when the agreement restricted employment in at least seven states).

Since Fiskars has conceded that its Non-Competition Provision imposes a country-wide ban, preventing the Moving Defendants from working in competitive capacities anywhere in the United States, the Non-Competition Provision fails to specify a reasonable territorial limitation. On this basis alone the Court should find the Restrictive Covenant unenforceable.

### B. The Non-Competition Provision Blocks the Moving Defendants from Working in 100 Countries.

As set forth above, the *actual* scope of the territorial prohibition in the Non-Competition Provision is far broader than just the United States.

Specifically, the Non-Competition Provision prohibits the Moving Defendants from working for defined competitive employers in certain capacities, "within any state of the United

States, or any substantially comparable political subdivision of any other country wherein Fiskars Brands sold or actively attempted to sell such products within two (2) years prior to the termination of his/her employment."

To determine the geographic range of this provision, the first step is determining all "political subdivisions" in which Fiskars Brands, its parents, affiliates, and subsidiaries "sold or actively attempted to sell" products within two years. Fiskars has steadfastly refused to provide this information in discovery, but its website provides the answers. Its website makes clear that:

- Fiskars has "approximately 350 stores,"

- Fiskars has a presence in "29 countries,"

- Fiskars' "brands are present in 100 countries across Europe, Asia, and the Americas"; and

- Fiskars' "diverse 7000-strong team is based in 29 countries."

[PFOF 57-59].

As discussed above Fiskars has admitted in this lawsuit that the affiliate companies of Fiskars Brands "are present in **100 countries** across Europe, Asia, and the Americas," and that its affiliates "employ 6,500 people in **29 countries**." [PFOF 52] (emphasis added). At a minimum, this confirms that Fiskars has likely "sold or actively attempted to sell" products in at least 29 countries or as many as 100 countries.

This restriction is not narrowly tailored to protect Plaintiff Fiskars' interests and invalidates the agreement. *JT Packard & Assocs. v. Smith*, 429 F. Supp. 2d 1052, 1055-56 (W.D. Wis. 2005) (refusing to enforce a restrictive covenant barring a former employee from competing within an area as large as the entire United States); *Equity Enters.*, 2001 WI App 186 at ¶ 15 (refusing to enforce nationwide restrictive covenant).

Fiskars has never and could never provide any legitimate justification for prohibiting former employees of Fiskars Brands who only worked from its location in Middleton, Wisconsin from working not only anywhere in the United States, but in at least 29 countries (and as many as 100 countries) or how such a broad territorial restriction is reasonably necessary for its protection. For this reason alone—failure to specify any reasonable territorial limitation—the entire Non-Competition Provision is invalid and unenforceable as a matter of law.

## V.   THE RESTRICTIVE COVENANT IS NOT REASONABLY NECESSARY FOR FISKARS' PROTECTION, IN VIOLATION OF WIS. STAT. § 103.465.

Even aside from the lack of a territorial limit, the Non-Competition Provision fails to comply with Wisconsin law because Fiskars cannot show that its restrictions are reasonably necessary for the protection of legitimate business interests. The Non-Competition Provision is unreasonable in at least the following ways.

### A.   The Non-Competition Provision Violates Wis. Stat. § 103.465 Because it Prevents the Moving Defendants from Working for an Overbroad List of Purported Competitors.

The Non-Competition Provision is overbroad because it prevents the Moving Defendants from working for a long list of purported "competitors," including numerous entities that have no connection whatsoever to the Moving Defendants' former work for Fiskars Brands. Specifically, the Restrictive Covenant purports to block the Moving Defendants from providing various services to "any business engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands [and its parents, affiliates, and subsidiaries]."

Under this provision, the necessary first step is to identify what products Fiskars Brands and its parents, affiliates, and subsidiaries "manufacture and sell." [PFOF 60]. In its discovery responses, Fiskars only provided information for products manufactured or sold by Fiskars Brands and Fiskars Finland. [PFOF 61-63, 68]. The requested information is missing for all other parent

companies (including Fiskars Oyj Abp), all affiliated companies, and all subsidiary companies of Fiskars Brands. [*Id.*].

Despite knowing that Cota and Gundlach's work related to garden tools, Fiskars has admitted that "the vast majority of competitors relevant to Plaintiffs' entire corporate structure are not businesses engaged in the manufacture or sale of garden tools []." [PFOF 69, 134]. Fiskars has basically conceded that it should not have drafted its Restrictive Covenant so broadly to encompass any entity that manufactures or sells *any* product competitive with *any* Fiskars entity.

Even when just limited to the entities that Fiskars has confirmed are competitors of Fiskars Brands (which represents a small fraction of the actual competitors), the list is overbroad and not reasonably necessary for Fiskars' protection. ████████████████████

████████████████████████████████████

██████████████████████ [PFOF 73]. These represent off-limits employers for whom the Moving Defendants are prohibited from working under the language of Fiskars' Non-Competition Provision. ██████████████████████████

██████████████████████ [PFOF 77].

### B. The Non-Competition Provision Improperly Restricts the Moving Defendants From Working in Any Capacity for a Competitor.

The Non-Competition Provision is also overbroad because it improperly prevents the Moving Defendants from working in many capacities that pose no threat to Plaintiffs. In relevant part, the Non-Competition Provision states as follows:

> Employee shall not, [] directly or indirectly, assist, render services to, participate in the affairs of, any [competitive business …] in any capacity which either
> > (i) would utilize Employee's services with respect to such manufacture or sale, or
> > (ii) would reasonably be expected to utilize any of the trade secrets or other Confidential Information referenced in this paragraph, with respect to such manufacture or sale […].

(Indentation added for ease of reference). More directly stated, the Non-Competition Provision states that: "Employee shall not, [] directly or indirectly, assist, render services to, participate in the affairs of, any [competitive business …] in any capacity which [] would utilize Employee's services with respect to such manufacture or sale."

There are two components of this provision that are overbroad and violate the requirements of Wis. Stat. § 103.465. First, the Non-Competition Provision prohibits the following activities by the Moving Parties: they cannot "assist," "render services to," or "participate in the affairs of" a competitive employer. Each of these phrases is extremely broad. The dictionary definition of "assist" as a verb is to "to give aid or help." [PFOF 89]. This would encompass any services from the Moving Defendants that provide *any* aid or help to a new employer, regardless of what job they were performing. The phrase "render services to" contains no limitation—it would again bar the Moving Defendants from doing *any* job for a competitor. The same is true for the prohibition from "participat[ing] in the affairs of" a competitive employer. *Any* participation, regardless of the task or the job position, is off limits for any competitor.

The second part of this sentence states that the Moving Defendants are prohibited from performing the list of activities discussed in the preceding paragraph if they perform such activities "in any capacity which [] would utilize Employee's services with respect to such manufacture or sale." The problem is that virtually *any* services that an employee could provide assists an employer with respect to the employer's manufacture or sale of its products. Custodial staff assist an employer in manufacturing products by, among other things, keeping the workspace clean. Human resources personnel assist an employer in manufacturing products by, among other things, hiring and maintaining a workforce. The same can be said for effectively *any* job position

for an employer. Thus, the plain text of the Non-Competition Provision would bar the Moving Defendants from working in effectively *any* capacity for any competing business.

In Wisconsin, a covenant not to compete is void for overbreadth if it prohibits a person from taking *any job* at a competitor of his former employer. *See, e.g.*, *JT Packard*, 429 F. Supp. 2d at 1055-56 (holding a non-compete is overbroad and completely unenforceable when it "bars [employee] from associating in any way with any competing employer in any geographical area in which [employee] provided services while working for [employer]," and restriction that prohibited solicitation of any potential customer that the employee had solicited in the prior year was void and unenforceable); *Kozlovich*, 2005 WL 1075003, at *1 (declaring non-competition agreement "is invalid under Wis. Stat. § 103.465 because it … restricts plaintiff unreasonably from taking any job in any capacity with a competitor"); *Share Corp. v. Momar Inc.*, No. 10-CV-109, 2011 WL 284273, at *6 (E.D. Wis. Jan. 26, 2011) (Stadtmueller, J.) ("Wisconsin courts find 'janitor clauses' [i.e. 'any capacity' restrictions] to be overly broad and therefore, unreasonable.");

Fiskars chose to draft its Non-Competition Provision in a manner that prohibits Cota and Gundlach from providing virtually *any* services to any entity that falls under the extremely broad umbrella of a competitor. For this reason alone, the entire Non-Competition Provision is unenforceable. All of Plaintiffs' claims based on alleged breaches of the Non-Competition Provision should be dismissed as a matter of law.

### C. Even Under Fiskars' Narrow Interpretation, the Non-Competition Provision is Not Reasonably Necessary for Fiskars' Protection.

Fiskars has admitted that identifying all competitors "would be very difficult, if not impossible, to quantify." [PFOF 83]. This is effectively an admission that the Restrictive Covenant is overbroad. That is, when the Restrictive Covenant takes into account just the products manufactured or sold by Fiskars' affiliates (excluding for the moment its parents and subsidiaries),

the list of competitors off-limits to the Moving Defendants would be nearly impossible to quantify. Fiskars cannot provide any legitimate basis as to why it would be reasonably necessary for its protection to ban its Wisconsin employees from working for a vast list of competitors that even it cannot quantify.

As discussed above, Fiskars improperly limited its identification of its "competitors" in discovery. However, even Fiskars' own limited admissions show that the list of competitive employers for which the Moving Defendants cannot work is exceptionally broad. Fiskars provided a list of "Competitive Brands" that are or were engaged in the manufacture or sale of products competitive with those manufactured or sold by Fiskars Brands produced as FISKARS0001539–1541." [PFOF 72-75]. 

[PFOF 73-78]. Based on this undisputed list, the Moving Defendants cannot provide services (in any capacity) for at least the following entities at the following locations which Fiskars identified as competitors of its "Gerber" division, among numerous others:



[PFOF 77].

24

Further, based on this undisputed list, the Moving Defendants cannot provide services (in any capacity) for at least the following entities at the following locations which Fiskars identified as competitors of its "Terra" division, among numerous others:



[PFOF 78].

As shown above, the list of off-limits employers includes everything from well-known, global brands like ███████████ to smaller outfits that appear to only have one location. It includes entities located all over the globe, ████████████████████████████ ████████████ Fiskars cannot provide any legitimate explanation as to why it is necessary for Fiskars' protection to prohibit its former employees who only worked for Fiskars Brands in Middleton, Wisconsin, from ██████████████████████████

## VI.　THE NON-SOLICITATION PROVISION OF THE RESTRICTIVE COVENANT VIOLATES WISCONSIN LAW.

The Restrictive Covenant contains a non-solicitation covenant that purports to block the Moving Defendants from soliciting Fiskars' employees, customers, and others for a period of two years. That provision reads as follows:

> During this period of non-competition, Employee agrees not to directly or indirectly,
>
> > (i) solicit, induce, or influence any customer, supplier, or any other person which has a business relationship with Fiskars Brands to reduce or discontinue such relationship with Fiskars Brands, or
> >
> > (ii) recruit, solicit, or otherwise influence any employee or agent of Fiskars Brands to change their employment relationship with Fiskars Brands.

(the "Non-Solicitation Provision") (indentation added for ease of reference). The Non-Solicitation Provision violates well-settled Wisconsin law and should be invalidated as a matter of law.

### A.　The Non-Solicitation Clause Contains an Unenforceable No-Hire Provision.

In Wisconsin, no-hire agreements, whereby one entity agrees not to hire an individual employed by another entity, are unenforceable. *See Heyde Cos. v. Dove Healthcare, LLC*, 2001 WI App 278, 249 Wis. 2d 32, 637 N.W.2d 437, *aff'd*, 2002 WI 131, 258 Wis. 2d 28, 654 N.W.2d 830; *Manitowoc Co., Inc. v. Lanning*, 2018 WI 6, ¶¶ 60-63.

Fiskars' Non-Solicitation Provision does just that, by stating that: "Employee agrees not to directly or indirectly, […] recruit, solicit, or otherwise influence **any employee or agent of Fiskars Brands** to change their employment relationship with Fiskars Brands." (Emphasis added). Thus, the Non-Solicitation Provision would block the Moving Defendants from attempting to hire "*any* employee or agent of Fiskars Brands" under any circumstances. This is true regardless of, among other factors:

- *Which* Fiskars entity the targeted employee worked or works for; the targeted employee could be, for example, an employee of Fiskars Oyj Abp in Finland, and would still be off-limits, under the text of this provision;

- Which *department* or *division* within Fiskars for which the targeted employee works; for example, the targeted employee could work in Fiskars' "Vita" division, which offers tableware, drinkware and interior products having nothing to do with the garden tools at issue in this lawsuit;

- The targeted employees' status or position within the Fiskars' hierarchy; that is, even if the targeted employee was an entry-level position making minimum wage, that employee would be off-limits under the terms of this Provision.

If Fiskars wanted to provide an enforceable non-solicitation term regarding its employees, it easily could have done so by limiting the scope to just those employees with whom the Moving Defendants had regular and/or substantive contact in carrying out their jobs for Fiskars. This is the precise type of unenforceable non-solicitation provision that the Wisconsin Supreme Court invalidated in *Manitowoc Co., Inc. v. Lanning*. Fiskars purposely chose to cover every Fiskars Brands' employee, the vast majority of whom the Moving Defendants never met or interacted with in carrying out their jobs while employed by Fiskars. Based on Wis. Stat. § 103.465, the entire Non-Solicitation Provision of the Restrictive Covenant is void based on this provision alone.

### B. The Non-Solicitation Provision is Not Enforceable Because There is No Limitation of the Definitions of "customer," "supplier," or "person which has a business relationship with Fiskars Brands."

As outlined above, the Non-Solicitation Provision blocks the Moving Defendants from directly or indirectly "solicit[ing], induc[ing], or influenc[ing] *any* **customer**, **supplier**, or **any other person which has a business relationship with Fiskars Brands** to reduce or discontinue

such relationship with Fiskars Brands […]." (emphasis added). None of the bold underlined terms are defined. This, without more, makes the scope of the Non-Solicitation Provision impermissibly overbroad.

First, as drafted, this provision applies without limitation to 100% of Fiskars' Brands customers, suppliers, and any person or entity with whom Fiskars Brands has a "business relationship." Even a single, individual customer who purchased a single product from Fiskars Brands is off-limits under this provision, *regardless* of where that customer is located, what that customer purchased, when the purchase took place (as further outlined below), or whether the Moving Defendants ever worked with that customer (as described below). Because Fiskars failed to reasonably limit the scope of the Non-Solicitation Provision to comply with the clear requirements of Wis. Stat. § 103.465, this provision is unenforceable as a matter of law.

Second, the Non-Solicitation Provision is made even broader by the express definition of "Fiskars Brands," which includes, "Fiskars Brands, Inc., its parent, its subsidiaries and affiliated companies." That is, not only does the provision apply to 100% of the customers, suppliers, and others of Fiskars Brands in Wisconsin, it *also* applies to the customers, suppliers, and others of Fiskars' Brands' parents, subsidiaries and affiliated companies.

Third, in addition to the problems set forth above, the scope of prohibited conduct is overbroad and not reasonably necessary for Fiskars' protection. The provision blocks the Moving Defendants from ""solicit[ing], induc[ing], or influenc[ing] *any* [customer/supplier] to **reduce or discontinue** such relationship with Fiskars Brands […]." (emphasis added). As drafted, it is nearly impossible to tell what types of activities are prohibited. For example, it prohibits the Moving Defendants from even "influenc[ing]" a customer or supplier from "reduc[ing]" its relationship

28

with Fiskars Brands. These types of vague and overbroad prohibitions are prohibited under Wis. Stat. § 103.465.

C. **The Solicitation Provision Prohibits Contact with Any "Customer", "Supplier" or "Employee", Regardless of Whether the Defendants Worked with Those Customers or Suppliers.**

Nothing in the Non-Solicitation Provision limits its scope to solely "customers" or "suppliers" with whom the Moving Defendants worked while at Fiskars. To the contrary, the provision applies to *any and all* Fiskars "customers" and *any and all* Fiskars "suppliers." Restrictions like this have been uniformly rejected in Wisconsin. *See, e.g.*, *JT Packard*, 429 F. Supp. 2d at 1055-56 (invalidating restrictive covenant because it "restricts defendant Smith from servicing any customer he tried but failed to solicit while he was working for plaintiff, even if that potential customer went to defendant On Power while Smith was still working for plaintiff or refused to become a customer of plaintiff despite plaintiff's best efforts."); *Ziccarelli*, 445 F. Supp. 2d at 1051; *Share Corp.*, 2011 WL 284273, *4; *Fields Found., Ltd. v. Christensen,* 103 Wis. 2d 465, 473-74, 309 N.W.2d 125 (Ct. App. 1981).

The same is true with respect to Fiskars' "employees or agents." The Non-Solicitation Provision is improper because it prohibits the Moving Defendants from soliciting *any and all* "employee or agents" of Fiskars, including those with whom the Moving Defendants had no involvement with and about whom they knew no confidential information.

D. **The Non-Solicitation Provision is Unenforceable Because It Has an Unlimited Look-Back Period.**

The Non-Solicitation Provision is also unenforceable because it contains no limitation on the "look-back period."  Not only are the terms "customer," "supplier," and "employee or agent" undefined and extremely broad, but these terms also apply indefinitely back in time. Under the plain text of the Non-Solicitation Provision, the Moving Defendants would be barred from

soliciting, inducing or influencing any "customer" of Fiskars Brands, any of its parent companies, and of its affiliated companies and any of its subsidiary companies, regardless of what division within Fiskars that "customer" purchased from, regardless of what product that "customer" purchased (even if it had nothing to do with garden tools), and regardless of *when* the purchase took place. That is, even a customer that purchased tableware from Fiskars over 20 years ago would be off limits.

Likewise, under the plain text of the Non-Solicitation Provision, the Moving Defendants would be barred from soliciting, inducing or influencing any "supplier" of Fiskars Brands, any of its parent companies, and of its affiliated companies and any of its subsidiary companies. The same is true for literally any "employee or agent" of Fiskars, its parent companies, its affiliated companies, and its subsidiary companies. There is an unlimited look-back period on the "employees or agents" of Fiskars Brands that are off-limits. Because the actual Non-Solicitation Provision at issue here is overbroad, it must be stricken in its entirety. *Priority Int'l. Animal Concepts, Inc. v. Bryk*, No. 12-c-150, 2012 WL 1995113, *4 (E.D. Wis. June 01, 2012) (citing *Star Direct*, 2009 WI 76, ¶ 78).

### E. Even Under Fiskars' Narrow Interpretation, the Non-Solicitation Provision is Overbroad and Not Necessary for Fiskars' Protection.

In response to discovery requiring Fiskars to identify all "customers" and "suppliers" of Fiskars Brands (as defined in the Restrictive Covenant), Fiskars identified a list of suppliers of Fiskars Brands, produced as FISKARS0001536–1538. [PFOF 96-97]. ██████████████ ████████████████████████████████████ [PFOF 98].

Further, Fiskars admitted that the "'customers' of Fiskars Brands, Inc., as the quoted phrase is used in the Agreements[] are those companies or entities that are identified in [] FISKARS0001542–1631." [PFOF 100-101]. ████████████████████████

30

████████████████ [*Id.*]. ████████████████████

████████████████████████████████ [*Id.*]

Both of these lists—Fiskars' suppliers and its customers—are extremely broad. Fiskars has never provided any explanation or justification that preventing contact with at least 108 different entities across the entire globe and over 2,700 customers is "reasonably necessary" for Fiskars' protection.

## VII.   FISKARS' CLAIM FOR COTA'S VIOLATION OF THE SEPARATION AGREEMENT SHOULD BE DISMISSED ON SUMMARY JUDGMENT.

Fiskars asserts a separate claim against Cota, personally, for her purported breach of a document titled the "Separation Agreement and General Release." [Dkt. 33, ¶¶ 244-247 (the "Separation Agreement")]. This claim fails because Fiskars: 1) has not even alleged in the operative complaint that Cota violated the Separation Agreement—it instead points to her purported breach of the Restrictive Covenant; and 2) has never come forward with evidence sufficient to show that Cota breached the Separation Agreement.

The "elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages." *Pagoudis v. Keidl*, 2023 WI 27, ¶ 12, 406 Wis. 2d 542, 988 N.W.2d 606 (citing *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582). Fiskars' claim against Cota fails to meet those elements.

First, while Fiskars included a separate cause of action for breach of contract against Cota, which describes the "Separation Agreement and General Release" (Dkt. 33, ¶¶ 244-247), Fiskars does not even allege that Cota violated the Separation Agreement. [*Id.*, ¶¶ 250-252]. Instead, Fiskars alleged only that, "[a]s a result, upon information and belief, Cota **breached the terms of the Cota Fiskars Non-Compete Agreement**." [*Id.*, ¶ 251 (emphasis added)]. Fiskars provides

zero explanation as to how Cota's alleged violation of the Restrictive Covenant, which violates Wisconsin law and is not enforceable, somehow is *also* a violation of the Separation Agreement. For this reason alone, Fiskars' claim under the Separation Agreement should be dismissed as a matter of law.

Second, this claim should be dismissed because Fiskars has no admissible evidence supporting its claim against Cota. █████████████████████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████

[PFOF 35 (emphasis added).]

It is undisputed that Cota has not used or disclosed *any* confidential or proprietary information from Fiskars upon leaving the Company. [PFOF 128]. When required to identify its evidence supporting this claim, Fiskars stated that "Cota was recruited away from Fiskars to work not only publicly for Lumino, but secretly for Woodland Tools as well." [PFOF 120]. Contrary to Fiskars' baseless accusations, Cota does not work for or perform any services for Woodland Tools—she works for Lumino, which sells window treatments unrelated to any of the watering or gardening products that Cota was exposed to during her employment with Fiskars. [PFOF 121-126]. In addition, it cannot be disputed that Cota has not used or disclosed any confidential or proprietary information from Fiskars upon leaving the company. [PFOF 128-133]. Indeed, Fiskars has not identified any confidential or proprietary information that it contends Cota used or

disclosed, much less any such confidential or proprietary information that could harm Fiskars' existing or potential business interests. [*Id.*] *See Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (citation and internal quotation marks omitted).

## CONCLUSION

The Moving Defendants respectfully request that the Court grant their Motion for Summary Judgment by:

(1)  dismissing with prejudice Plaintiffs' Breach of Contract claims against the Moving Defendants for Breach of the Non-Compete Agreements (Counts X, XII);

(2) dismissing with prejudice Plaintiffs' Breach of Contract claim against Defendant Stephanie Cota for Breach of the Separation Agreement (Count XIII);

(3) declaring Plaintiffs' Non-Compete Agreements invalid.

Dated: December 29, 2023.

DEWITT LLP

By:   */s/ C. Kai Hovden*
Stephen A. DiTullio (#1019446)
Joseph T. Leone (# 1018149)
Elijah B. Van Camp (#1100259)
Laura M. Davis (#1100008)
C. Kai Hovden (#1106888)
Two East Mifflin Street, Suite 600
Madison, WI  53703-2865
Tel: 608-255-8891
Fax: 608-252-9243
jtl@dewittllp.com
lmd@dewittllp.com
evc@dewittllp.com
ckh@dewittllp.com

ATTORNEYS FOR DEFENDANTS