IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FISKARS FINLAND OY AB and FISKARS
BRANDS INC.,

              Plaintiffs,

v.                                               OPINION and ORDER

WOODLAND TOOLS INC., LUMINO, INC.,           22-cv-540-jdp
ROSS GUNDLACH, VANCE KOCH, and
STEPHANIE COTA,

              Defendants.

---

    This case arises from a dispute between competitors in the hand-held gardening tool industry. Plaintiffs Fiskars Finland Oy Ab and Fiskars Brands Inc. allege that defendants Woodland Tools Inc. and Lumino, Inc. poached Fiskars' employees and misappropriated Fiskars' trade secrets and confidential information to unfairly compete with Fiskars. Fiskars asserts claims for trade secret misappropriation, breach of contract, tortious interference, and breach of duty. Fiskars also asserts claims for false advertising and patent infringement. Defendants countersued, seeking to invalidate the two design patents at issue, and claiming tortious interference.[1]

    Before the court are Fiskars' four motions to compel defendants to produce a wide range of information. For the reasons below, the court will deny Fiskars' motion to compel production of source code and grant in part and deny in part each of the remaining three

---

[1] Unless otherwise specified, "defendants" refers to the two corporate defendants, Woodland and Lumino.

motions. The court will also reset certain case deadlines to allow the parties sufficient time to review and comply with these rulings.

ANALYSIS

**A. Fiskars' motion to compel source code, dkt. 98.**

Fiskars' first motion seeks to compel "source code, data sets, and other programming artifacts." Dkt. 98. The motion is ostensibly premised on 22 document requests, *id.* at 4, but Fiskars does not address the requests individually; rather, it takes a more all-encompassing approach. Essentially, Fiskars asks the court to compel defendants to provide all source code, data files, and other documentation that defendants use in connection with point of source (POS) data for 12 retailers. Fiskars provides a chart in its motion purporting to show the gaps between what it has requested and what defendants have provided. *Id.* at 4.

In a vacuum, the court would generally be receptive to this request for court intervention. This case is, in part, a trade secret case involving alleged misappropriation of source code, so requests seeking production of source code and related data are an expected part of discovery.[2] This is particularly true here, considering the specific (supported) allegations that defendant Vance Koch e-mailed Fiskars' POS source code and data to his personal e-mail account prior to leaving Fiskars and then downloaded that same source code and data to his work laptop after he began work with defendants. Dkt. 94-2, Koch Dep. Tr., at 152:20-153:23, 155:17-156:4.

---

[2] The court will grant motions to compel production of or access to source code in trade secret cases when the standard is met. *See e.g., Distefano v. Nordic Consulting Partners, Inc.*, No. 3:23-cv-00657-wmc, Dkt. 75, Order (W.D. Wis. May 17, 2024).

2

But Fiskars' request is not made in a vacuum. Fiskars brought this motion to compel late—over three months after the liability expert disclosure deadline. *Compare* Dkt. 33 at 6 (liability expert disclosures due October 20, 2023) *with* Dkt. 98 (motion filed February 7, 2024).[3] Fiskars concedes that the information it seeks to compel is the sort of information that requires expert analysis. Dkt. 98 at 12 (correspondence from Fiskars' counsel discussing how an expert would analyze the information). In fact, Fiskars' liability expert complained about the lack of source code information in his report. Dkt. 82-3 at 24–25. Fiskars seeks to remedy the situation by asking the court to order an inspection of defendants' computer systems, dkt. 98 at 2, but Fiskars did not notice an inspection until the filing of this motion, *id.* at 13 n.10—again, over three months after the liability expert disclosure deadline.[4]

So, Fiskars would need to supplement its liability expert's report for the information it now seeks to compel to have an impact on the case. And Fiskars would need leave from the court to do so—it conceded as much when it filed a motion seeking to amend the case schedule. Dkt. 76. But the court has already denied Fiskars that very relief. Dkt. 85 ("the court finds

---

[3] It appears from the filings that the parties moved the liability expert disclosure deadline from October 20, 2023 to November 2, 2023. Dkt. 76 at 1–2; Dkt. 82-3 at 28. The parties may move these types of disclosure deadlines by agreement without leave of court. The later agreed-upon deadline does not change the court's analysis.

[4] The parties informed the court in their status updates that this inspection did not go forward as noticed. Defendants seem to believe the appropriateness of the inspection rises and falls with Fiskars' motion. Dkt. 197 at 2–3. Fiskars disagrees, arguing the inspection is separate and apart. Dkt. 200 at 2. But it was Fiskars that proposed that the inspection act as a remedy for defendants' alleged lack of production. Dkt. 98 at 2, 13 n.10. The court will not decide whether the inspection should have progressed in the natural course, as Fiskars did not bring an independent motion to compel the inspection once properly noticed and conferred upon. Suffice to say, an inspection is not ordered as a remedy here.

that plaintiffs have not established good cause to justify another round of liability reports"). The court will not revisit this ruling via a belated motion to compel.

The bottom line is this: Even if the court were inclined to compel production of source code and related documents, that information would be unusable in this litigation absent a dramatic upheaval of the schedule. It is true that information need not be admissible to be discoverable, but there are other considerations at play, including "whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). Here, the burdens associated with the proposed discovery, including re-doing liability expert reports and depositions, are heavy; and the likely benefits, given the elapsed deadlines, are nil. The court will deny Fiskars' motion for this reason alone.

There are other problems with Fiskars' motion, which the court will discuss briefly for completeness. Fiskars asks the court to compel information missing from a 5x13 chart. The chart lists retailers on the y-axis and "steps" for which Fiskars "would have expected to receive" source code and data files on the x-axis. Dkt. 98 at 7. But that is not what the requests that Fiskars propounded on defendants seek. *Id.* at 4. For the most part, the requests were limited to information related to Python code that Koch and/or the defendants developed or used to analyze POS data.[5] This makes sense, because the Fiskars source code that Koch allegedly e-mailed himself was Python code used to analyze POS data. *See* Dkt. 94-2, Koch Dep. Tr., at 39:21-40:10. After receiving the requests, defendants produced the source code they used for POS data that was written in Python. Dkt. 111 at 4-5.

---

[5] The parties agree that Python is a human-readable programming language. Dkt. 98 at 2 n.4; Dkt. 111 at 2 n.2.

Fiskars is unsatisfied, now asking for all "POS source code, data files, and other programming artifacts" regardless of programming language. Dkt. 98 at 2. But Fiskars hasn't connected the dots between the alleged stolen trade secrets and this broader request. Perhaps it is possible, or even plausible, that the Python code and data that Koch allegedly stole could be helpful to developing code and data in other languages, but that point hasn't been explained or supported for this motion. And as far as the court can tell, Fiskars did not cite their liability expert in their motion, only in reply. *See* dkt. 116 at 5. Even so, it appears that Fiskars' liability expert did not review the Python source code that defendants did produce. *See* Dkt. 82-3 (Fiskars' liability expert's list of materials considered does not include any defendant materials, let alone code). All this to say, on top of being tardy, Fiskars has not explained how source code beyond that which has already been produced is both relevant and proportionate to the needs of this case, so the court will deny Fiskars' motion for these additional reasons.

Before turning to the next three motions, the court will pause to address some concerns it has with defendants' conduct. When defendants originally produced their Python source code, they converted the code from its native format into PDFs, depriving the code of its metadata and dynamic qualities. Dkt. 98 at 5–6. Also, despite being able to designate the code under the protective order entered in this case, defendants redacted swaths of information from the code. *Id.* Defendants claim that the PDF versions were meant to mimic the files Koch e-mailed himself, which were apparently HTML files. Dkt. 111 at 4–5. They also claim that the redactions were meant to address privacy concerns. *Id.* The court is skeptical. But, in any event, defendants course corrected and did provide native versions of the code with no redactions months before Fiskars filed its motion to compel.

5

The conduct on both sides as to this issue was less than exemplary. Given the points discussed directly above, and those yet to follow, the court will exercise its discretion and order each side to bear its own costs on this motion. *See* Fed. R. Civ. P. 37(a)(5)(B) (the court must not order payment if "other circumstances make an award of expenses unjust").

**B. Fiskars' motion to compel business-related documents, dkt. 99.**

Fiskars' second motion seeks to compel documents showing that Woodland and co-defendant Lumino "are one in the same company." Dkt. 99 at 1. The motion implicates two sets of requests for production (RFP 8 to both Woodland and Lumino, and RFP 38 and RFP 46 to Woodland and Lumino, respectively), which generally seek information concerning the relationship between Woodland and Lumino and corporate-level financial information. The court discusses each set of requests in turn:

   **1. Relationship between defendants (RFP 8).**

RFP 8 seeks "[d]ocuments sufficient to determine the relationship between Woodland Tools Inc., Lumino, Inc., and/or Kalena Ventures LLC." Dkt. 99-1 at 6. Fiskars alleges that Woodland and Lumino worked together to woo away Fiskars employees and misappropriate Fiskars' confidential information, so some modicum of information defining the relationship between the two corporate defendants is relevant to this business dispute. Kalena is not a party in this suit, but Fiskars alleges Woodland and Lumino rented office space at the same location from Kalena, so information showing the co-defendants' relationship to their alleged shared landlord is relevant insofar as it may bolster evidence of the co-defendants' cooperation.

Defendants objected to RFP 8 as vague and overbroad, unilaterally narrowed the request to seek "organizational charts or similar documents," and reported that they had no such documents. Dkt. 113 at 4. Fiskars takes issue with this unilateral limiting of the request

6

and now explains in its motion that "documents sufficient" is meant to encompass "any agreements, contracts, or leases between these entities, any accounting or financial documents reflecting transfers, debits, credits, etc. between these entities, any shared resources, any joint policies and procedures, and any e-mails discussing how these entities are connected." Dkt. 99 at 6–7. This stretches what was originally a reasonable request into an overbroad and unduly burdensome ask by seeking information well beyond what would be "sufficient" to establish the relationship between Woodland and Lumino as relevant to this case.

To find a way forward, the court will grant Fiskars' motion in part and modify the request to seek agreements, contracts, or leases between Woodland and Lumino, Woodland and Kalena, and/or Lumino and Kalena. These documents will better define the relationship between the companies and, because they are discrete documents, their production should not impose any undue burden on defendants. To the extent defendants have these documents in their possession, they must be produced. The court will not order "any accounting or financial documents reflecting transfers, debits, credits, etc. between these entities, any shared resources, any joint policies and procedures, and any e-mails discussing how these entities are connected" because the original request did not seek these specific documents. Moreover, "any" such documents are not tethered to the facts of the case (e.g., the specific ex-Fiskars employees, the accused products) and such a request is thus overbroad and not proportional to the needs of the case.

2. **Defendants' accounting structure (RFP 38/46).**

RFP 38/46 seeks "[d]ocuments sufficient to show the accounting structure of [Lumino/Woodland Tools], including but not limited to a general ledger chart of all [Lumino/Woodland Tools] accounts." Dkt. 99-1 at 6; dkt. 99-4 at 6. Defendants object to

this request as overbroad and not proportional to the needs of the case. The court agrees. Fiskars argues that documents showing a shared accounting structure between Woodland and Lumino may bolster its theory that Woodland and Lumino are playing a "shell game" with respect to the hiring of the ex-Fiskars employees. Dkt. 99 at 10. But Fiskars can make this point by pursuing less burdensome and less sensitive inquiries. In fact, it appears that Fiskars has already done so in depositions. *E.g.*, dkt. 99 at 1 (citing deposition testimony of Vance Koch). Moreover, while Fiskars' theory of defendants' "shell game" provides color for some of its claims, including its claim of tortious interference, the theory is not a claim in and of itself. Fiskars sought leave to add a "conspiracy" claim, but that request was denied, dkt. 188, so the "shell game" theory remains a peripheral point. Fiskars' motion is denied with respect to RFP 38/46.

**C. Fiskars' motion to compel supplier and manufacturer documents, dkt. 100.**

Fiskars' third motion seeks to compel documents related to defendants' suppliers and manufacturers.[6] Dkt. 100. It implicates five requests for production directed to both Woodland and Lumino (RFPs 11, 21-23, and 24), discussed here:

RFP 11 seeks "[a]ny documents or communications with Rhinoceros Manufacturing (Zhongshan) Ltd., Shang Gu Enterprise Co. Ltd., Jumbo Asia Investment Ltd., and any of their affiliates or related parties regarding the sourcing of products or manufacturing of products sold by Woodland Tools." Dkt. 100-1 at 8. Fiskars identifies the three named entities as

---

[6] Defendants represent in their status update that they have made "additional productions contain[ing] substantial amounts of documents from and related to Woodland's suppliers." Dkt. 197 at 3. It is unclear how those productions relate to this motion, so the court will proceed with its analysis on the original briefing. To the extent these productions fulfill an order, defendants can rely upon them to satisfy their obligations.

8

defendants' suppliers and argues the requested communications are relevant to Fiskars' patent infringement and trade secret misappropriation claim, as well as defendants' tortious interference counterclaim. Dkt. 100 at 2. The court generally agrees that communications defendants had with their suppliers concerning Fiskars, the accused products, and Fiskars' competing products are relevant to these claims and the counterclaim. But this request is not limited to those subjects.

Defendants objected to this request as overbroad, unilaterally limited the request, and produced communications defendants had with these suppliers that specifically referenced Fiskars. *Id.* at 4. This apparently yielded 14 documents. *Id.* Defendants ran queries for other communications that they had with these suppliers and represented that the queries returned approximately 17,000 results. *Id.* at 5; Dkt. 114 at 8–9. The court agrees that the work involved in reviewing and producing this number of documents related to these suppliers but not also to plaintiffs' claims is disproportionate to the needs of the case. It does not appear, however, that reasonable efforts were made on either side to winnow these results down to something reasonable. Defendants appear able to further cull the results,[7] and that is what the court will order: Defendants must search the results for (a) not just those communications that reference "Fiskars," but also those that reference (b) the accused products and (c) Fiskars' competing products from the date of the first communication up to the filing of the present lawsuit and produce those responsive, non-privileged communications.

---

[7] In response to Fiskars' third motion to compel, defendants give examples of "*numerous* ways that Fiskars could have directed RFP 11 to discovery relevant to [its] claims" and note that "the parties agreed to an ESI protocol in which the upper threshold for a proper ESI search term was one that yielded **1,000 documents or under**." Dkt. 114 at 15 (emphasis in original).

RFP 21 requests "[t]he schematics, designs, illustrations, and all other Documents that You provided to each and every third-party manufacturer that You approached regarding producing or manufacturing the Accused Products." Dkt. 100-14 at 6. The court views this request as a relative of RFP 11 and finds that it seeks information relevant to Fiskars' patent infringement and trade secret misappropriation claims, so long as the schematics, designs, illustrations, and documents defendants provided to the third parties reference (a) Fiskars, (b) the accused products or (c) Fiskars' competing products. Limiting the request in this manner and to the facts of this case should bring it into proportion to the case's needs. To the extent defendants have not, they are ordered to produce these documents.

RFP 22 requests "[d]ocuments sufficient to show the conception and development of each Accused Product, including but not limited to, those involved in the development of each Accused Product and their roles in the development or conception." *Id.* at 7. This request appears to seek relevant information about the accused products and is limited to "documents sufficient," so it also appears proportional. Yet, Fiskars does not explain what it believes is missing from defendants' productions, or otherwise what more it needs to understand the conception and development of the accused products. *See* dkt. 100 at 5–8. Regardless, defendants have indicated their willingness "to work with Fiskars to address any specific documents it believes it is still missing with respect to" this RFP. Dkt. 114 at 23–24. The court will accept defendants' statement at face value, and Fiskars' motion is denied with respect to RFP 22

RFP 23 requests "[y]our communications with each and every third-party manufacturer that You approached regarding producing or manufacturing the Accused Products." Dkt. 100-14 at 7. This request appears to seek defendants' communications with third parties regardless

10

of the subject matter of the communication. This is overbroad and thus disproportionate. The court has already re-fashioned RFP 11 and RFP 21 so that they seek relevant materials proportionate to the needs of the case. That should suffice. Fiskars' motion is denied with respect to RFP 23.

RFP 24 seeks "Documents sufficient to show the conception, development, and origin of Woodland Tools' Regular Bypass Pruner (with straight and angled handles), including but not limited to, those involved in the development of Woodland Tools' Regular Bypass Pruner (with straight and angled handles) and their roles in the development or conception." *Id.* Like RFP 22, this request appears proportional because it seeks relevant information about the specific product implicated in Fiskars' false advertising claim and is limited to "documents sufficient." Yet, again, Fiskars does not explain what it believes is missing from defendants' productions, or otherwise what more it needs to understand the conception and development of the accused products. And Woodland, the only defendant Fiskars accuses of false advertising, indicates that it is willing to work with Fiskars to resolve this dispute as well. Dkt. 114 at 23–24. The court therefore expects the parties to endeavor in good faith to do so, and Fiskars' motion is also denied with respect to RFP 24.

**D. Fiskars' motion to compel documents related to the accused products, dkt. 135.**

Fiskars' fourth motion seeks to compel "documents related to the accused products." Dkt. 135. The motion implicates fourteen requests for production (RFPs 13, 15, 16, 17, 18, 19, and 20 directed to Defendants and RFPs 25, 45, 52, 54, 55, 57, and 58 directed to Woodland). Fiskars has sorted these fourteen requests into three broader categories, discussed here:

11

**1. Promotional, Marketing, and Consumer Materials (RFPs 13, 25, 52, and 55).**

RFP 13 seeks "[r]epresentative samples of promotional materials, marketing documents, price lists, or other external facing advertising for the Accused Products." Dkt. 100-1 and Dkt. 100-2. Marketing materials, like those requested here, can be relevant to patent infringement cases like this one. *E.g.*, *Ropak Corp. v. Plastican, Inc.*, 2006 WL 1005406, at *3 (N.D. Ill. Apr. 17, 2006) (citing *Kori Corp. v. Wilco Marsh Buggie & Draglines*, 761 F.2d 649, 654–55 (Fed. Cir. 1985)). And this request is proportional to the needs of the case because it seeks only "representative samples." Defendants claim they have produced such samples, citing a few dozen pages of Woodland's production. Dkt. 140 at 7–8. Fiskars protests that the production is lacking, and further complains that defendants have attempted to answer the request by directing Fiskars to Woodland's public website. Dkt. 135 at 15. The court agrees that simply pointing to a public website does not satisfy defendants' obligations. Websites are ephemeral and subject to change. If defendants believe the website is responsive, they should take screen shots and produce them. Fiskars also notes that the website would provide only current information and thus is not a comprehensive compilation of the requested "representative samples." The court agrees. To the extent they have not already, defendants must supplement their productions to include representative samples of both current and historic marketing materials so that Fiskars can understand how the marketing of the Accused Products evolved over time.

RFP 25 seeks "[d]ocuments sufficient to show the marketing strategy for each Accused Product, including but not limited to, those involved in the marketing of each Accused Product, their roles in the marketing of the Accused Products, the customers approached or targeted as a buyer for each Accused Product." Dkt. 100-14 at 7. Documents related to marketing strategy

12

can be relevant to both patent infringement and trade secret misappropriation. *See, e.g., Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 2007 WL 9817867, at *2–3 (N.D. Ill. Oct. 9, 2007) (instructing defendants to produce documents of marketing and sales that relate to the accused products); *Alloc, Inc. v. Unilin Beheer B.V.*, 2006 WL 757871, at *4 (E.D. Wis. Mar. 24, 2006) (granting request to produce each advertisement prepared and used for the accused products). And this request is limited to documents "sufficient to show" discrete information, such as the individuals involved in marketing, their roles, and customers approached, so it is not unreasonably broad. That said, defendants aver that they do not have "marketing strategy" documents for the accused products. Dkt. 140 at 14. And the court will accept that at face value. Moreover, from what the court has gleaned from the parties' briefing, Fiskars has already discovered the individuals involved in marketing, their roles, and customers approached, so there is no need to compel additional, duplicative documents to uncover this information. Fiskars' motion is denied with respect to RFP 25.

RFP 52 seeks "[d]ocuments sufficient to show material factors that impact consumer purchasing decisions for the Accused Products and products competitive with Accused Products." Dkt. 99-4 at 7. Documents showing factors material to consumer purchasing decisions can be relevant to patent cases, including damages. *See, e.g., Wordtech Systems v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1319 (Fed. Cir. 2010) ("A reasonable royalty can be calculated from . . . the infringer's profit projections for infringing sales"). And this request is limited to documents "sufficient to show" these factors, making it reasonable in scope. Defendants claim they do not have any such documents, however, and further argue that Fiskers itself has withheld similar documents, on the basis that it did not understand the term "materiality." Dkt. 140 at 16. The second point is of no moment—two wrongs do not

13

make a right. But the first point has teeth—the court cannot order production of documents that do not exist. Fiskars' motion is denied with respect to RFP 52.

RFP 55 seeks "[a]ll documents relating to retail customer or end consumer satisfaction or dissatisfaction with any Accused Product, including but not limited to satisfaction or dissatisfaction with a specific aspect of any Accused Product." Dkt. 99-4 at 8. Documents speaking to customer satisfaction can be relevant to patent cases, including to prove damages. *See, e.g.*, *Abstrax, Inc. v. Dell, Inc.*, 2009 WL 10697691, at *2 (E.D. Texas Sept. 2, 2009) (expert's identification of benefits from a patent, including customer satisfaction and sales, are relevant to damages). This request seeks "all" such documents related to the accused products, which is too broad when read in conjunction with Fiskars' current view of the scope. *See* dkt. 135 at 17 (arguing the request covers "internal correspondence or discussions related to customer satisfaction or dissatisfaction"). Defendants state in response that they would be willing to produce consumer surveys about satisfaction with the accused products, if they exist. This is a reasonable compromise. This request is thus revised to seek consumer satisfaction surveys and defendants are ordered to produce any such surveys to the extent they exist.

**2. Vendor and Third-Party Designer Information (RFPs 16 and 58).**

RFP 16 seeks "[d]ocuments sufficient to identify each Entity, including Third Parties, involved in the manufacturing, sale, marketing, advertising and/or promoting of the Accused Products, and their respective roles." Dkt. 99-2 at 8–9. This case is centered on the design of the accused products, so the identity of any third parties involved in their manufacturing is a reasonable piece of information to request, as are the identities of any third parties involved in the accused products' marketing and sale. Defendants do not argue otherwise, but claim the

identities of the relevant third parties are already known in the lawsuit. Dkt. 140 at 10.[8] But Fiskars notes that it only recently learned of a third party that was involved in the design of the accused products. Dkt. 135 at 19.[9] Perhaps part of the problem is that requests for a production are a clunky way to create a discrete list of entities. So, the court will grant the request, with some options for compliance. Defendants must audit their productions and supplement them accordingly to ensure they have produced documents sufficient to reveal the identities of the relevant third parties. Or, if there are related interrogatories, defendants can supplement their responses to them.

RFP 58 seeks "[d]ocuments sufficient to show any third-party involvement in the design of the Accused Products, including but not limited to any amounts paid to third parties for the design of the Accused Products, any agreements reflecting terms related to the design of Accused Products, or any e-mails exchanged with third parties regarding the design of the Accused Products." Dkt. 99-4 at 8. Documents showing third-party involvement in the design of the accused products can be relevant to both patent infringement and trade secret misappropriation. Woodland does not argument otherwise. The essence of this request appears to be related to information that Fiskars learned in the deposition of Charlton Foster, who was responsible for designing the accused products. Dkt. 135, at 19; Dkt. 140, at 19–20. Fiskars claimed that the deposition revealed a universe of relevant documents that were not

---

[8] Specifically, Woodland asserts "Extensive documents have been produced by Woodland identifying its suppliers and manufacturers, whose identities have been known to all parties since prior to the lawsuit was filed." Dkt. 140 at 10. But the court needs a cite to a sworn declaration or some representative exhibits to accept such a broad assertion. Without a cite, this is bald attorney argument.

[9] Fiskars cites to deposition testimony to support this assertion, dkt. 135 at 19, which gives the court some pause as to whether the identities of the relevant third parties are known.

searched.  Woodland offers a reasonable explanation for why the documents were not searched—indeed, some appear to be in the custody of third-party directories (e.g., Mr. Foster's LLC and Mr. Foster's personal e-mail).  Woodland also offers that it is willing to work with Mr. Foster on collecting and producing responsive documents.  Given Woodland's cooperation, the court will deny Fiskars' motion with respect to RFP 58.

3. **Damages (RFPs 15, 17-20, 45, 54, 57).**[10]

RFP 15 and RFP 20 can be analyzed together.  RFP 15 seeks "[a]ny internal business plans, budgets, forecasts, sales or financial projections for each of the Accused Products." Dkt. 99-2 at 8.  RFP 20 seeks "[d]ocuments sufficient to show the advertising and marketing expenditure for the promotion of the Accused Products, including but not limited to digital advertisements, trade shows, events, promotions, and traditional advertising." *Id.* at 9.  These business and financial materials are arguably relevant to damages, and defendants do not argue otherwise.  *See* dkt. 140 at 9.  But defendants aver that Woodland is a small start-up that does not create these types of materials.  It submits declaration testimony in support.  Fiskars complains that defendants have not produced responsive documents, but, again, the court cannot compel what does not exist.  Fiskars' motion is denied with respect to these two requests; however, defendants must supplement their written responses accordingly and swear them under oath.

RFP 17, RFP 18, and RFP 54 can be analyzed together.  RFP 17 seeks "[d]ocuments sufficient to show the total quantity and value of each Accused Product made, assembled, used,

---

[10] Defendants represent in their status update that "counsel for the parties reached an agreement in principle about a procedure for providing mutual expanded production of damages/financial documents," dkt. 197 at 4, but terms were not yet finalized.  So the court is left unsure whether these RFPs are still in dispute.

licensed, sold, or offered for sale in the United States, or imported into the United States, on a monthly basis since the first date each Accused Product was manufactured or produced." Dkt. 99-2 at 9. RFP 18 seeks "[d]ocuments sufficient to show, for each Accused Product manufactured by or on behalf of Woodland Tools, on a monthly basis since the first date the respective accused product was manufactured, broken out by each accused product, the number of units sold of that product, the revenue attributable to each sale, the applicable gross and net profit margins, and the cost attributable to each such product." *Id.* RFP 54 seeks "[f]or each Accused Product, documents sufficient to show monthly supplier expenses, including but not limited to documents sufficient to show monthly units purchased, per-unit price paid, freight/shipping expenses, import expenses, and total cost." Dkt. 99-4 at 7–8.

There appears to be no dispute that information showing the requested financial information is relevant to damages—nor should there be. The dispute lies in the format in which defendants provided the information. Woodland provided two pages that break the information out year-by-year. Dkt. 135 at 21–23; Dkt. 140 at 11 and 17. Fiskars seeks a month-by-month breakdown, however, so that it can track trends in the data—e.g., whether value and expenses changed over time. Dkt. 135 at 22. Woodland states it is "willing to produce it if it is able to do so," Dkt. 140 at 11, and that is what the court will order: If defendants can generate reports with monthly breakdowns, they are ordered to do so.

RFP 19 seeks "[d]ocuments sufficient to determine the distribution channels of the Accused Products, including without limitation the stores and/or websites where the products are offered for sale to the public." Dkt. 99-2 at 9. Fiskars included this request in its motion to compel, but its briefing does not explain why Woodland's response is deficient. Defendants,

17

in contrast, explain how the information has already been provided in discovery. Fiskars' motion is therefore denied with respect to RFP 19.

RFP 45 seeks "[d]ocuments sufficient to show all revenue and expenses associated with the manufacture and sale of the Accused Products in any financial statements prepared by or on behalf of Woodland Tools, including any assignment or apportionment of any revenue/expense to Lumino or other third party." Dkt. 99-4 at 6. The court agrees with Woodland that this request is confusing. Dkt. 140 at 14. The first phrase—"[d]ocuments sufficient to show all revenue and expenses associated with the manufacture and sale of the Accused Products in any financial statements prepared by or on behalf of Woodland Tools" is duplicative of the requests above, and so the request is denied as to that portion. The second phrase—"any assignment or apportionment of any revenue/expense to Lumino or other third party" is unique. The court agrees with Fiskars that this could potentially bear on damages. So, to the extent Woodland has statements showing it directly passed revenues or expenses associated with the accused products onto Lumino, those statements should be produced.

Finally, RFP 57 seeks "[d]ocuments sufficient to show any license agreements or contracts related to or referring to any of the Accused Products." *Id.* at 8. Woodland objects to this request as seeking irrelevant information, but such information is relevant to damages at the very least. Woodland suggests it has already produced all requested agreements, dkt. 140 at 21, and if so, it is ordered to supplement its written response under oath. To the extent Woodland is withholding documents on a relevance objection, they must be produced.

To allow the parties sufficient time to review and comply with the court's rulings on plaintiffs' motions to compel, the court will reset certain case deadlines as specified below.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to compel production of source code, data sets, and other programming artifacts, dkt. 98, is DENIED.

2. Plaintiffs' motion to compel certain documents and information showing that Lumino, Inc. and Woodland Tools, Inc. are one in the same company, dkt. 99, is GRANTED in part and DENIED in part.

3. Plaintiffs' motion to compel (RFPs 11, 21-23, and 24), dkt. 100, is GRANTED in part and DENIED in part.

4. Plaintiffs' motion to compel production of documents related to the accused products, dkt. 135, is GRANTED in part and DENIED in part.

5. Each party will bear its own costs on plaintiffs' motions to compel.

6. The following deadlines are reset to allow the parties sufficient time to review and comply with the court's rulings on plaintiffs' motions to compel:

    a. Disclosure of damages experts: Proponent: July 3, 2024; Respondent August 20, 2024

    b. Discovery cutoff: August 23, 2024

    c. Rule 26(a)(3) disclosures and all motions in limine: September 6, 2024; Objections are due September 27, 2024.

Entered May 24, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge