IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FISKARS FINLAND OY AB and
FISKARS BRANDS INC.,

                  Plaintiffs,                OPINION and ORDER

    v.

                                         22-cv-540-jdp

WOODLAND TOOLS INC., *et al.*,

                  Defendants.

---

Defendant Woodland Tools Inc. has filed a motion to compel plaintiffs Fiskars Finland Oy Ab and Fiskars Brands Inc. to produce documents Woodland contends Fiskars is withholding based on "improper and overbroad privilege claims." Dkt. 270.[1]  The motion implicates 112 of Fiskars' 507 privilege log entries.  After reviewing the parties' arguments and conducting a line-by-line analysis of the logs, the court declines to order an *in camera* review and DENIES the motion in its entirety.

## BACKGROUND

This case arises from a dispute between competitors in the hand-held gardening tool industry.  Fiskars alleges that Woodland and its co-defendant, Lumino, Inc., poached Fiskars' employees and misappropriated Fiskars' trade secrets and confidential information.  Fiskars asserts claims for patent infringement, trade secret misappropriation, breach of contract, tortious interference, and breach of duty, among others.  Defendants countersued, asserting their own claim of tortious interference.  In support of its counterclaim, Woodland contends

---

[1] This opinion addresses "Part 2" of Woodland's motion.  "Part 1" of the motion has already been resolved.  Dkt. 277.

that Fiskars improperly interfered with its manufacturing operation by sending threats to the parties' shared suppliers.

During discovery, the parties agreed to a protocol for collecting and reviewing documents, which included negotiating custodians and search terms.  In completing its production of documents, Fiskars withheld certain documents based on attorney-client privilege and work-product protections and logged those documents in two privilege logs, served June 15, 2023 and October 12, 2023.  Dkt. 248-9 & Dkt. 272-2.  Combined, the two logs contain entries for 507 documents.

Since serving the logs, Fiskars has rethought some of its designations and produced some of the originally withheld documents or portions of the documents with redactions (the parties do not say how many).  Woodland filed the present motion on July 2, 2024.  The motion implicates 112 of the listed documents, which Woodland suspects relate to its tortious interference counterclaim.

## LEGAL STANDARDS

The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.  *See Upjohn Co. v. United States*, 449 U.S. 383, 394–99 (1981).  The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf.  *See United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006).  To determine if a communication falls within the protection of the attorney-client privilege, courts ask whether "legal advice of any kind [was] sought ... from a professional legal adviser in his capacity as such"; and whether the communication was "relat[ed] to that purpose" and "made in confidence ... by the client." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

2

The work-product doctrine protects documents prepared by an attorney in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). Unlike the attorney-client privilege, the attorney has an independent privacy interest in her work product and may assert the work-product doctrine on her own behalf; the doctrine's protection is not waived simply because the attorney shared the information with her client. *See Hobley v. Burge*, 433 F.3d 946, 949–50 (7th Cir. 2006). Work-product protection applies to attorney-led investigations when the documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996).

ANALYSIS

**A. Motion to Compel**

Woodland raises multiple challenges to Fiskars' privilege logs and the designation of 112 documents as privileged and/or protected by the work-product doctrine. The court addresses each of these challenges in turn:

**1. Fiskars' privilege logs**

The court first examines the sufficiency of Fiskars' privilege logs. When parties withhold documents based on attorney-client privilege or work product protections, they must list the documents in a privilege log, identify the basis of the privilege, and describe the nature of the documents with enough specificity to allow the other party to assess the claim. Fed. R. Civ. P. 26(b)(5); *Hobley*, 433 F.3d at 947. As applied to communications, like e-mails, this requires the party withholding the documents to identify the senders and receivers of the communications and explain their roles.

3

Woodland criticizes the descriptions in Fiskars' privilege logs, but it fails to point to any specific entries or explain how they are deficient. Dkt. 271 at 20-21. Rather, Woodland cites to the entirety of the two logs "generally" and asserts the logs contain "vague descriptions." *Id.* This broad assertion is not helpful to the court's analysis, particularly when the logs have hundreds of entries. Moreover, it is not entirely clear what Woodland wants the court to order with respect to these logs, as the logical form of relief for a vague description would be supplementation, not production.

Nonetheless, the court reviewed Fiskars' logs line-by-line. Each entry explains the senders, receivers, or creators of each document and explains those individuals' roles. The entries also contain descriptions of the documents. These descriptions are often difficult to craft because they are meant to describe the nature of the document without revealing its privileged contents. While Fiskars' descriptions could have been more detailed in some places, the court did not find any entries to be so deficient as to prevent the court from analyzing Fiskars' claims of privilege. The court sees no basis to compel Fiskars to either supplement the logs or to produce documents based on the logs' descriptions.

### 2. Fiskars' claims of privilege and protection

The court next examines Fiskars' claims of privilege and protection. Woodland's main argument is that Fiskars' then-in-house counsel, Anza D'Antonio, who appears as a sender or receiver on many of the contested documents, was not acting as a legal advisor, but rather as a business advisor, in the disputed communications. Dkt. 271 at 21-23. Woodland makes the same argument for Sami Kylmänen, in-house counsel for related nonparty Fiskars Oyj Abp.[2]

---

[2] Although Attorney Kylmänen was not an employee of either of the named plaintiffs, he was providing legal services to them through his relationship with Fiskars Oyj Abp, which is a

*Id.* But Woodland fails to appropriately evaluate the in-house counsel role and the work that Attorneys D'Antonio and Kylmänen were performing in the weeks leading up to this lawsuit.

The attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context. *S. Berwyn Sch. Dist.,* 600 F.3d at 621. When an attorney conducts a factual investigation in connection with the provision of legal services, any notes or memoranda documenting client interviews or other client communications in the course of the investigation are fully protected by the attorney-client privilege. *Id.* at 620.

A review of Fiskars' privilege logs reveals that from July through September 2022, Attorney D'Antonio was involved in dozens of communications concerning Fiskars' possible intellectual property claims against Woodland. *E.g.,* Dkt. 248-9, entries 124-125, 127, 162, 267, 286, 288, 305; Dkt. 272-2, entries 60-69, 73. She was also involved in dozens of communications concerning Fiskars' relationships with their suppliers, letters to which ultimately gave rise to Woodland's tortious interference counterclaim (those letters have been produced). *E.g.,* Dkt. 248-9, entries 149-161, 301-303; Dkt. 272-2, at 80, 83-88, 90-93, 118-120, 129, and 165.

Woodland points to deposition testimony that suggests some of the people Attorney D'Antonio communicated with did not have decision-making authority for the lawsuit or understand fully how they fit into the lawsuit. Dkt. 271 at 11-16. But this isn't surprising— few people beyond Attorney D'Antonio would have appreciated the big picture of her

---

related entity. Thus, his presence on communications does not destroy privilege. *Roberts v. Carrier Corp.,* 107 F.R.D. 678, 687 (N.D. Ind. 1985) ("inter-related corporate communications" between employees of two sister subsidiaries consulting with the companies' attorneys did not waive attorney-client privilege).

investigation.  Nor is it dispositive of whether communications are privileged.  *S. Berwyn Sch. Dist.*, 600 F.3d at 620–21.  Given the complexity of this lawsuit, which encompasses multiple patents and other proprietary information, Attorney D'Antonio would have needed to consult with a variety of Fiskars employees to understand the issues impacting this case.

Moreover, a number of the privilege log entries that Woodland complains about are communications with *outside* litigation counsel (*see, e.g.*, Dkt. 248-9, entries 124-125 and 127;[3] Dkt. 272-2, entries 80, 83-88, and 90-93), which further supports the conclusion that Attorney D'Antonio was conducting an investigation to inform the claims and defenses at-issue in this case.  Fiskars filed the complaint on September 21, 2022, Dkt. 1, which tracks with the flurry of work that Attorney D'Antonio was doing in the weeks prior.  Because Attorney D'Antonio was conducting a legal investigation with client employees, her internal communications are "fully protected by the attorney-client privilege."  *S. Berwyn Sch. Dist.*, 600 F.3d at 620.  Also, any projects she requested from client employees "with an eye toward" this litigation fall under the work-product doctrine.  *Id.* at 622.  None of Woodlands' arguments to the contrary have convinced the court otherwise.

### 3.  The crime-fraud exception

Woodland argues that, even if the disputed documents are privileged, the court should apply the crime-fraud exception.  Dkt. 271 at 27.  The parties brief this issue under different

---

[3] These are some of the communications over which Woodland claims Fiskars waived privilege because they involved a "startling number" of people.  Dkt. 271 at 27.  This is a complex case involving multiple claims of infringement and misappropriation, so the court is not startled by the number of lawyers or businesspeople involved.  Woodland needs a better reason to challenge privilege log designations beyond just pointing the number of people involved, particularly when some of those people are outside counsel retained to litigate this very case.

law—Fiskars cites federal cases, while Woodland cites Wisconsin authority.  Whatever the standard, Woodland has not met it.

Under both federal and Wisconsin law, a party seeking to invoke the crime-fraud exception must make a reasonable showing that the communications at-issue were in furtherance of a crime or fraud.  *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 769 (7th Cir. 2006) ("[A] party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof."); *Lane v. Sharp Packaging Systems, Inc.*, 2002 WI 28, ¶ 47, 251 Wis.2d 68, 640 N.W. 2d 788, 806 (stating "the test for invoking the crime-fraud exception is whether there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme').

Here, Woodland asserts that the disputed communications "relate to supplier communications," which Woodland notes "are exactly the type of conduct Woodland alleges supports its tortious interference claims."  Dkt. 271 at 28.  But that does not give the court any reason to believe that Fiskars engaged its attorneys to perpetuate some scheme to defraud. Rather, it gives the court reason to believe that Fiskars vetted its supplier communications with counsel.  That is good corporate hygiene. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (confidential legal advising promotes the public interest "by advising clients to conform their conduct to the law").

Woodland may yet prevail on its tortious interference claim, but there is a gulf between Fiskars' alleged tortious conduct and the type of criminal behavior courts rely upon to apply the crime-fraud exception.  The court finds no basis to apply the exception in this case.

### 4.  Woodland's claim of "substantial need"

Woodland argues that, even if certain of the disputed documents are protected by the work product doctrine, the court should still compel their discovery because Woodland needs them to support its counterclaim.  Dkt. 271 at 28-29.  A document that is protected by the work product doctrine can be discovered if the information is otherwise discoverable and the party seeking discovery demonstrates "a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

Woodland has not identified any specific entries with respect to this argument, so it is hard for the court to evaluate.  Per Woodland, it has been "unable to obtain internal communications sufficient to show what Fiskars was doing and discussing internally regarding its tortious interference activities, despite extensive efforts."  Dkt. 271 at 28.  But if it's communications that Woodland seeks, as discussed above, those are protected by the attorney-client privilege, which has no carve-out for substantial need.

To the extent that Woodland is seeking production of all of the disputed documents over which Fiskars has asserted solely work product protections, Woodland has not supported that request.  Woodland notes that it was unable to depose Willis Wang, a custodian in this case who made an in-person visit to Fiskars' suppliers, Dkt. 271 at 29, but that was one of the reasons that the court ordered the deposition of Nathalie Ahlström, Dkt. 249, whom Woodland argued was also present for the in-person visit.[4]

---

[4] Fiskars reports having taken this deposition in a subsequent filing to this motion to compel. Dkt. 300.

Because Woodland has not made a particularized showing of substantial need, the court declines to order production of otherwise protected work product.

### 5. *In camera* review

Woodland suggests that, to the extent the court is uncertain about any of the disputed documents' designations, the court should conduct an *in camera* review. Dkt. 271 at 4, 28. A party is not entitled to *in camera* review simply because it asks. *United States v. Zolin*, 491 U.S. 554, 572 (1989) (opponents of privilege should not be allowed to "engage[] in groundless fishing expeditions"). Rather, a party must make an initial showing that such a review is warranted. *Id.* (explaining standard for crime-fraud context); *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017) (applying principles to civil dispute).

Review may be warranted when the court cannot effectively evaluate a privilege claim vis-à-vis a privilege log, when there is evidence of bad faith, or when there is a factual basis to reasonably think the review will turn up evidence of crime or fraud. *Silets v. U.S. Dep't of Just.*, 945 F.2d 227, 229 (7th Cir. 1991) (FOIA context); *United States v. Boender*, 649 F.3d 650, 658 (7th Cir. 2011) (crime-fraud context). Even after an initial showing is made, the decision to conduct an *in camera* review is a discretionary one that turns on multiple factors, including the burden involved in reviewing the documents, *Zolin*, 491 U.S. at 572; *Am. Nat. Bank & Trust Co. v. Equitable Life Assurance Soc.*, 406 F.3d 867, 879-880 (7th Cir. 2005), and *in camera* review is more critical before compelled disclosure, *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001).

Here, the court was able to effectively evaluate Fiskars' claims of privilege, has no reason to suspect bad faith, and has no confidence the review would reveal a scheme to defraud.

Although the number of documents are not astronomical, the burden associated with reviewing them is not nothing, and the court does not see the need to conduct a review in light of all of the above.

**B. Request for Confirmation**

Woodland raises a specific concern with Fiskars' document productions, questioning whether Fiskars Finland has withheld documents based on European privacy laws.  Dkt. 271 at 30.  Woodland states that the parties had reached an understanding as to this issue but wants "confirmation" whether Fiskars Finland as withheld any documents other than those related to Willis Wang on the basis of European privacy laws.  Fiskars avers that it has not, Dkt. 294 at 21, and Woodland has not presented any evidence that Fiskars' report is untrue. Based on this record, the court finds Fiskars' prior representations sufficient and considers the matter settled.

ORDER

IT IS ORDERED that:

1.  The second part of Woodland Tools Inc.'s motion to compel, Dkt. 270, is DENIED. The entire motion is now resolved.

2.  Each party will bear its own costs on this motion.

Entered 16th day of August, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge