IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FISKARS FINLAND OY AB, and FISKARS
BRANDS INC.,

                    Plaintiffs,

    v.                                                           OPINION and ORDER

WOODLAND TOOLS INC., LUMINO, INC.,                    22-cv-540-jdp
ROSS GUNDLACH, VANCE KOCH, and
STEPHANIE COTA,

                    Defendants.

---

The parties in this case asserted numerous claims and counterclaims against each other. The court dismissed most claims at summary judgment. But Woodland Tools prevailed at trial on its claim against Fiskars for false advertising. Because Woodland Tools did not suffer or seek actual damages, the court decided the equitable remedies after a hearing. The court permanently enjoined Fiskars from making further misleading statements, Dkt. 485, and it ordered disgorgement of Fiskars's profits in the amount of $1,404,125.40, Dkt. 486.

Four post-trial matters are before the court. First, Fiskars renews its motion for judgment as matter of law on the false advertising claims. Dkt. 510. Second, Woodland Tools asks the court to deem the case exceptional and award attorney fees and prejudgment interest. Dkt. 490. Third, Woodland Tools submits a bill of costs. Dkt. 488. Fourth, Fiskars moves to stay enforcement of judgment pending appeal. Dkt. 523.[1]

---

[1] Fiskars also moves for leave to file a reply in support of its motion to stay execution of the judgment. Dkt. 528. Woodland Tools moves to supplement its motion for attorney fees. Dkt. 530. Woodland Tools also moves to order the imposition of its costs. Dkt. 512. Those motions are granted.

The court will deny the first two motions. As explained more fully below, the jury verdict against Fiskars was supported by substantial evidence. As for Woodland Tools's request for attorney fees, the case was aggressively litigated by both sides, with no more than the usual rancor and sharp tactics for cases of this complexity. Fiskars lost on all its claims, but they were not so substantively weak as to suggest an improper purpose in bringing the suit. The case is not exceptional, despite the jury's finding of willfulness on most of the false advertising claims.

The bill of costs is undisputed, so the court will award the requested costs to Woodland Tools. The court will grant the motion to stay enforcement of the judgment. The bond amount proposed by Fiskars is adequate.

**A. Fiskars's motion for judgment as a matter of law**

Fiskars moves under Rule 50(b) for judgment as a matter of law on Woodland Tools's false advertising claims. In reviewing a Rule 50 motion, the court does not make credibility determinations or reweigh the evidence. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). The court views the evidence, combined with reasonably drawn inferences from the evidence, in the light most favorable to the non-moving party, here Woodland Tools. *Id*. Judgment as a matter of law may be granted if the court concludes that a reasonable jury would not have a legally sufficient evidentiary basis to find for Woodland Tools.

Fiskars makes four arguments in support of its motion.

**1. Whether Woodland Tools has shown a likelihood of harm**

Fiskars contends that Woodland Tools presented no evidence that it suffered any actual harm or any likelihood of harm from Fiskars's false advertising. Dkt. 511 at 5–9.

The parties agree that Woodland Tools did not present any evidence of actual harm, such as any specific sale diverted from Woodland Tools. Fiskars is correct that there was no

2

evidence of any identified purchaser declining to purchase a Woodland Tools product because of Fiskars's misleading cutting power or false origin claims. Thus, Woodland Tools could not make out a case for damages. But that's not what Woodland Tools was required to show to make out a case for the equitable remedies of injunction and disgorgement.

As the Supreme Court put it:

> Even when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief under § 1116(a) (*assuming it can prove a likelihood of future injury*) or disgorgement of the defendant's ill-gotten profits under § 1117(a).

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135–36 (2014) (emphasis added). So, to demonstrate its entitlement to an injunction and disgorgement, the burden on Woodland Tools was only to show a likelihood of future injury. The likelihood of future injury is readily shown when the parties are direct competitors and the false statement implicates the plaintiff's product. Indeed, one of the cases cited by Fiskars held that under those circumstances, a likelihood of future injury is presumed. *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023) (Lanham Act "injury may be 'presumed' from a direct competitor's 'false comparative advertising claim' . . . .").

The trial evidence showed that Woodland Tools and Fiskars are direct competitors, with their tools appearing side-by-side on the shelves of some retailers, notably Menards. That point was not really disputed. The more significant question at trial was whether Fiskars's cutting power claims referred to its competitors. Woodland Tools's expert, Dr. Stephen M. Nowlis, testified that 14.5 percent of survey respondents construed Fiskars's "3X More Power" claim to be a comparison to competitive products. Dkt. 192 at 23 (Nowlis expert report). Fiskar's own expert, Dr. Keith A. Botner, testified that 43.9 percent of survey respondents

3

considered Fiskars' cutting power claims in making their purchases. Dkt. 195 (Botner expert report) at 16. A reasonable jury could find that Woodland Tools had shown a likelihood of future injury from this evidence.

The design origin claims got less attention at trial. Those claims were not addressed in the Nowlis report because, unlike the quantified cutting power claims, they were not ambiguous. One of Fiskars's witnesses, Jason Darnell, testified that the design origin claims didn't resonate with consumers. Dkt. 454-1 (deposition designation) at 60:7–61:4. But the design origin claims, implicitly at least, invite comparison to competitive products on the basis of where they were designed. And Botner's survey research found that 37.1 percent of survey respondents considered the design origin claim in making their purchase of Fiskars tools. *Id*. The court concludes that a reasonable jury could credit Botner's research, and could find a likelihood of future injury to Woodland Tools from Fiskars's false design origin claims.

### 2. Whether the false statements have an ascertainable meaning

Fiskars contends that the quantified cutting power claims are not actionable statements of fact because they have no ascertainable meaning. Dkt. 511 at 9–11.

The court ruled at trial the Fiskars had forfeited this defense by failing to disclose it in response to a Woodland Tools contention interrogatory. Dkt. 440 (trial transcript, second day, morning) 6:10–17, 11:11–21. The court stands by its ruling.[2]

But even if the matter had been contested, the verdict is supported by substantial evidence. A claim that Fiskars's cutting tools were "powerful," might well be the equivalent of

---

[2] Woodland Tools also contends that Fiskars forfeited the ascertainable meaning issue by failing to raise it in its Rule 50(a) motion. Dkt. 524 at 20. The court concludes that Fiskars preserved the issue during the argument on its Rule 50(a) motion. Dkt. 444 (trial transcript, second day, afternoon) at 96:16–24.

4

the term "local," which the Tenth Circuit found to have no ascertainable meaning in *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 647 (10th Cir. 2022). But "more power," implies a comparison with something else. That comparison could be tested and confirmed or disproven, even if the claim is ambiguous because the object of the comparison isn't stated. But "more power" isn't a completely vacuous or inherently subjective claim like "better," or even the resolutely ambiguous "local." Finally, adding the quantifier, as in "3X more power," suggests an even more specific comparison that has somehow been measured or calculated.

The Nowlis survey evidence showed that a substantial number of respondents took the cutting power claims to mean three times more power in comparison to competitive products. But Fiskars's tools weren't more powerful than competitive tools. That was shown by Buckner's testing. Dkt. 164 (Buckner expert report). And evidence from Fiskars showed that the original comparison was between Fiskars's mechanically advantaged tools and single-pivot tools. Trial Exh. 159 (Fiskars 2009 catalog). The trial evidence showed that the cutting power claims are ambiguous; that a significant number of prospective purchases interpret the cutting power claims to be a reference to competitive products; and, so construed, the claims are false. The cutting power claims are not mere puffery or devoid of ascertainable meaning.

### 3. Whether Woodland Tools presented sufficient evidence for all the accused products with cutting power claims

Fiskars contends that Woodland Tools failed to present sufficient evidence for nine of the accused products—various tree pruners, shears, and hand pruners—because Woodland Tools presented no testing of these tools. Dkt. 511 at 11–13. Woodland Tools's testing expert, Gregory D. Bucker, tested only loppers. Dkt. 164 (Buckner expert report). Thus, the argument

5

goes, Woodland Tools presented no evidence from which a jury could find that Fiskars's cutting power claims about the untested tools were false.

The testing evidence is a red herring. The trial evidence, including Buckner's findings and Fiskars's own witnesses, showed that the cutting tools with gears and lever mechanisms derived a mechanical advantage over single-pivot tools. According to Buckner, none of the Fiskars tools were two times or three times more powerful than mechanically advantaged tools by Woodland Tools or Corona, another competitor. Dkt. 164 at 14–15. There was documentary evidence that Fiskars's cutting power claims were originally intended as a comparison of the mechanical advantage of its geared and levered tools over its own single-pivot tools. For example, the Fiskars 2009 catalog introduced the PowerGear tool line with this:

> The goal of our design team was to increase power, reduce effort and minimize weight—in short, to make pruning easier. Their solution was a totally new gear mechanism that provides maximum leverage near the middle of the cut, when resistance is the greatest. That means a more compact tool can cut with a fraction of the effort required by larger single-pivot tools. In fact, our tests have proven up to 3X easier.

Trial Ex. 159; *see also* Trial Ex. 164 (Fiskars pruner packaging making the express comparison to single pivot tools). There was no evidence showing that Fiskars's mechanically advantaged tools were actually two or three times more powerful than the mechanically advantaged tools of its competitors.

A reasonable jury could accept Nowlis's survey evidence that an appreciable number of consumers would interpret Fiskars's cutting power claims as comparisons to competitive products. In light of all the evidence, a reasonable jury could conclude that all of Fiskars's cutting power claims were false or misleading.

6

### 4. Whether Woodland Tools showed that the false claims were material

Fiskars contends that Woodland Tools failed to prove that its "deception was material, in that it is likely to influence the purchasing decision," one of the requirements of a false advertising claim under the Lanham Act. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Dkt. 511 at 14–17. Fiskars makes three arguments on the materiality issue. None are persuasive.

First, Fiskars contends that the unrebutted testimony of Jason Darnell showed that neither the cutting power claims nor the design origin claims resonated with consumers. Dkt. 511 at 14–15. But, contrary to Fiskars's contention, Darnell's testimony did not stand unrebutted. There was ample testimony that Fiskars invested a lot in touting its cutting power claims. Fiskars's Kent Klagos testified about Menards's request for "aisle violators" promoting the 3X claims and that that suggests the cutting power claims were regarded as important. Dkt. 444 (trial transcript, second day, afternoon) at 75:20–76:18. Woodland Tools called three of its employees who had previously worked at Fiskars in the garden tool area: design engineer James Meiller; Stephanie Cota; and Keegan Nesvacil. Each of these witnesses had first-hand experience with the design and marketing of garden cutting tools at Fiskars, and they testified about the importance to Fiskars of the cutting power claims. They left Fiskars for Woodland Tools, which might have given the jury reason to question whether they were biased. But the court doesn't decide credibility or weigh evidence on a Rule 50 motion. The jury was entitled to credit Meiller, Cota, and Nesvacil and discount Darnell's testimony about whether Fiskars thought its cutting power claims were important to consumers.

7

Second, Fiskars contends that Woodland Tools did not put up its own survey evidence of materiality. That doesn't matter because Fiskars put up a survey expert on materiality, Keith Botner.

Third, Fiskars contends that Botner's testimony doesn't establish materiality, it undermines it. Dkt. 511 at 15–17. Fiskars's argument about Botner is conclusory and ultimately unpersuasive. Botner testified that that 43.9 percent of survey respondents considered Fiskars' cutting power claims in making their purchases and that 37.1 of respondents considered the design origin claim. Dkt. 195 (Botner expert report). Those numbers alone suggest that cutting power and design origin were factors in purchasing decisions. Fiskars cites no evidence that Botner's survey respondents dismissed or disregarded cutting power or design origin in their purchasing decision.

Botner also asked questions about what factors were important to the purchasing decision. He asked respondents to score nine survey-prompted factors by allocating 100 points among them. Cutting power scored an average of 7.7 points; design origin scored an average of 5.5 points. These scores are low, Fiskars contends, thus suggesting the cutting power and design origin didn't matter. But "manufacturer or brand name" was the factor ranked third highest among the nine options, and it only scored an average of only 10.1. Botner pointed out that factors other than cutting power and design origin accounted for an average of 86.8 points. But he did not say that cutting power and design origin were immaterial to purchase decisions. Ultimately, the weight to give Botner's survey data was within the purview of the jury. But Botner's survey is enough to allow a reasonable jury to find that the cutting power and design origin claims were material to a significant number of purchasers.

**B. Woodland Tools's motion for attorney fees and prejudgment interest**

Woodland Tools asks the court to deem this case exceptional and award attorney fees for the successful parts of its case: defending Fiskars's patent infringement claims and prevailing against Fiskars on its Woodland Tools's false advertising claims. Fiskars does not dispute that Woodland Tools is a prevailing party. And thus the court would have the authority to deem the case exceptional and award fees under 35 U.S.C. § 285 for the patent claims and under 15 U.S.C. § 1117(a) for the Lanham Act false advertising claims.

Under § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 554, 557–58 (2014). The standards are flexible, and the decision is within the discretion of the district court. The same flexible standard applies under the Lanham Act. *LHO Chicago River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019).

Woodland makes separate arguments for defeating Fiskars's patent claims and for its success on its own false advertising claims.

**1. Defense of Fiskars's patent claims**

Woodland Tools contends that Fiskars made little effort to investigate its claims and brought this case as an illegitimate effort to quash legitimate competition.[3] Woodland Tools cites statements by Fiskars employees made early in the case that it would go after Woodland Tools with "scorched earth" tactics using the world's largest law firm. The case had a David

---

[3] Woodland Tools presents this argument in two sections of its brief. Dkt. 490 at 33–35. The points are closely related, so the court deals with them as a single argument.

and Goliath feel to it, due mainly to the relative size of the parties. And there's no doubt that Fiskars pursued the case aggressively.

But Fiskars's outrage was understandable. Woodland Tools was founded by former Fiskars employees. And, at summary judgment, there was evidence that some of those employees were laying the groundwork for the new competitor while they were still working for Fiskars. Some of the employees left with Fiskars work product and software code. The court dismissed all Fiskars's claims at summary judgment, but that doesn't mean that the actions of Woodland Tools employees were unimpeachable, or that Fiskars pursued legal action out of pure spite. Part of Fiskars's goal was to impede competition from Woodland Tools, but that's an ordinary and lawful purpose of litigation over trade secrets and intellectual property.

The court is not persuaded by Woodland Tools's contention that Fiskars failed to conduct an adequate pre-filing investigation. Dkt. 490 at 33–34. The argument is undeveloped. Woodland Tools supports this contention with bulk citations to 266 proposed facts, *id*. at 33, but its substantive briefing is essentially two block quotes about a single attorney who wrote warning letters to Woodland Tools's suppliers. Fiskars responds that it had gotten pre-suit advice from outside counsel. Dkt. 516 at 32–33. That's a generic response, but it's all that was required to rebut Woodland Tools's generic argument. The patents at issue were all design patents, and assessing an initial accusation of infringement of a design patent doesn't take the extensive research and analysis that a utility patent would.

Woodland Tools's main argument is that Fiskars's patent claims were exceptionally weak on the merits. Fiskars voluntarily dismissed some of its patent claims and the court dismissed the rest on summary judgment. Woodland Tools says that "If no reasonable jury could find infringement, no reasonable litigant could either." Dkt. 490 at 26. But that's

10

nonsense: whether a reasonable jury could find infringement is, essentially, the summary judgment standard. The court found flaws in Fiskars's infringement evidence that warranted summary judgment in Woodland Tools's favor. But this is not exceptional. Neither is dropping some asserted claims or patents before expending the effort to commission an expert report. The court concludes that none of Fiskars's asserted patent claims were so weak on the merits that it suggests an improper purpose of the litigation.

### 2. Success on Woodland Tools's false advertising claims

Woodland Tools contends that its false advertising claims warrant fee-shifting because the jury found that 13 of the 14 violations of the Lanham Act were committed willfully. In light of the jury's willfulness finding, the court will consider whether the case ought to be deemed exceptional. But the willfulness finding does by itself not compel a finding that the case is exceptional. *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14 C 9442, 2019 WL 1454509, at *15 (N.D. Ill. Mar. 31, 2019).

The court declines to find this part of the case exceptional for three reasons. First, the court looks to the broader context of the case. As the court noted at summary judgment, both sides brought numerous claims against each other, and most of them missed the mark. Woodland Tools is the prevailing party on this part of the case. But its success in showing willful false advertising based on the 12 cutting power claims and one of the design origin claims is a small part of a much larger case.

Second, Fiskars's false advertising was willful, but it was not particularly egregious. The cutting power claims were not literally false—they were ambiguous, and false under some interpretations. Based on Nowlis's survey, only a minority of survey respondents interpreted

them as a comparison to competing products. And Botner's survey suggested that the claims were significant only to a minority of purchasers. The bottom line is that the false design origin claims and the misleading cutting power claims were not the secret to Fiskars's profitability in this product area, nor were those false claims a major impediment to Woodland Tools's success.

Third, the court does not find Fiskars's litigation conduct exceptional. Fiskars did try to introduce a new defense to the cutting power claims—that the statements were not statements of fact—at the beginning of trial. But that didn't get very far because the court deemed it waived. The case involved numerous motions to compel discovery, but both sides filed them, and both sides won and lost their share. Woodland Tools blames Fiskars for failing to make a settlement offer at a mediation shortly before trial, thereby forcing Woodland Tools to go to trial. But Fiskars's was not required to make a settlement offer, and it was entitled to go to trial.

The bottom line is that the case was hard fought, but it was not exceptional. Fee-shifting is not warranted.

### 3. Woodland Tools's request for prejudgment interest

Woodland Tools requests that the court award prejudgment interest on the disgorged profits. Under the Lanham Act, there is a presumption that "victims of violations of federal law" are awarded prejudgment interest, but the decision is ultimately committed to the discretion of the court. *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989).

If Woodland Tools had won an award of damages, the court would apply the *Gorenstein* presumption and award prejudgment interest. The theory underlying the *Gorenstein* presumption is that damages reflect a party's actual loss, which includes not only the principal

amount, but the time-value of that principal. Prejudgment interest compensates the party for the time-value of the money lost, running from the time the loss was incurred to the date of the judgment.

But that theory doesn't apply here, because Woodland Tools did not show actual damages. Woodland Tools showed a likelihood of injury, but it didn't show that it actually lost anything. To put it in the terms used in *Gorenstein*, Woodland Tools has not shown that it is a *victim* of a violation of federal law. The award of prejudgment interest is not necessary to make Woodland Tools whole. Awarding prejudgment interest here would not serve a compensatory purpose, it would simply be a penalty imposed on Fiskars.

Such a penalty would not be appropriate here. Fiskars's conduct was not so egregious as that of the defendants in *Gorenstein*. As the court explained above, Fiskar's conduct was willful, but it was not particularly egregious.

The court concludes that there is no reason to award prejudgment interest on the profits disgorged from Fiskars.

## C. Woodland Tools's bill of costs

Woodland Tools requests costs in the amount of $114,626.05, mostly for transcripts. Dkt. 488. The bill of costs is well supported, and Fiskars does not oppose it. Dkt. 518. The court will award the requested costs.

## D. Fiskars's motion for stay of enforcement

Fiskars moves to stay enforcement of the judgment pending appeal under Rule 62(b) of the Federal Rules of Civil Procedure. Fiskars is entitled to the stay, so long as it is supported by a bond or other security.

13

Fiskars submitted a proposed bond in the amount of $1,700,000, which it describes as approximately 120 percent of the judgment amount. Woodland objects that the bond is inadequate.

The court has denied Woodland Tools motion for attorney fees and prejudgment interest, so the bond amount need not account for that. The court agrees that Fiskars's proposed bond should account for the costs awarded to Woodland Tools. However, based on the court's calculation, the proposed bond amount would cover the judgment amount, costs, and post-judgment interest at 4.27 percent compounded annually for just short of three years. And the court is persuaded Fiskars poses a low risk of failure to pay the required amount at the conclusion of any appeals.

Accordingly, the court will grant the motion to stay and approve the proposed bond amount. Fiskars will need to correct the error in naming the party awarded the judgment.

ORDER

IT IS ORDERED that:

1. Fiskars's motion for leave to file a reply in support of its motion to stay execution of the judgment, Dkt. 528, is GRANTED.

2. Woodland Tools's motion to supplement its motion for attorney fees, Dkt. 530, is GRANTED.

3. Fiskars's renewed motion for judgment as matter of law on the false advertising claims, Dkt. 510, is DENIED.

4. Woodland Tools's motion to deem the case exceptional and award attorney fees and prejudgment interest, Dkt. 490, is DENIED.

5. Woodland Tools's bill of costs, Dkt. 488, is APPROVED, and Woodland Tools motion to tax costs, Dkt. 512, is GRANTED.

6. Fiskars's motion to stay enforcement of judgment pending appeal, Dkt. 523, is GRANTED.

Entered November 7, 2025.

                                                  BY THE COURT:

                                                  /s/

                                                _____
                                                JAMES D. PETERSON
                                                District Judge